**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**GILBERT JAMES,**

        **Plaintiff,**

v.                                        **Civil Action No. 3:11cv00221**

**ENCORE CAPITAL GROUP, INC.,** *et al.*

        **Defendants.**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants, Encore Capital Group, Inc. ("Encore"), Midland Funding, LLC ("Midland Funding"), and Midland Credit Management, Inc. ("Midland Credit Management") (with the latter two entities collectively referred to as "Midland," and when combined with Encore, the "Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), submit the following memorandum in support of their Motion to Dismiss all claims in Plaintiff's Complaint against defendant Encore, and Counts Three, Four, Six, Seven, and Eight against Midland Funding and Midland Credit Management.

**INTRODUCTION**

This matter arises out of Defendants' attempts to collect a consumer credit card debt from Plaintiff.[1]  (*See* Compl., at ¶¶ 15-18.)  Based on allegations that Midland created false affidavits

---

[1] Plaintiff's counsel has filed two additional actions containing similar allegations against Defendants. The first, *Rubio v. Midland Credit Management, Inc. and Midland Funding*, Civil Action No. 3:10cv464 (HEH), was a Class Action Complaint filed on July 7, 2010 that alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  Notably, despite alleging the same practices of filing false affidavits and pursuing claims based on incomplete account information, the *Rubio* complaint: (1) did not name Encore as a defendant; and (2) did not contain the RICO, civil conspiracy, or abuse of process claims present in this case.  The other related case, *Adkins, et al. v. Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*, Civil Action

to be used in underlying state court debt collection litigation, and that a Midland representative or agent falsely told Plaintiff that Midland would discontinue the state court litigation upon its receipt of a fraud affidavit, Plaintiff asserts claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Counts One through Five); the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count Six); and state law claims for civil conspiracy (Count Seven); and abuse of process (Count Eight).[2]

The Court should dismiss with prejudice all claims against Encore, as well as Counts Three, Four, Six, Seven, and Eight against Midland Funding and Midland Credit Management for the following reasons:

(1) All claims against Encore must be dismissed, because Plaintiff fails to allege facts in support of his conclusory statements that Encore directed or was otherwise involved in the alleged conduct;

(2) Count Three asserts a violation of § 1692e(11) of the FDCPA, which requires that debt collectors disclose in certain communications that they are attempting to collect a debt.  Plaintiff specifically claims that Defendants failed to identify themselves as debt collectors in affidavits and a "Summary Screen" attached to a Warrant-in-Debt filed in Richmond General District Court.  Section 1692e(11), however, explicitly exempts formal pleadings from its disclosure requirements.  Thus, these provisions of the FDCPA do not apply to the documents in question, which were attached to the state court Warrant-in-Debt;

(3) Plaintiff's claim in Count Four that Defendants failed to send a notice under 15 U.S.C. § 1692g(a) informing Plaintiff of his right to request verification of the debt is barred by the FDCPA's one-year limitations period;

(4) Plaintiff's claim for civil RICO damages must be dismissed because Plaintiff fails to allege that Defendants engaged in "racketeering activity," as required under 18 U.S.C. §§ 1962(a) and 1964(c);

---

No. 3:11cv334 (JRS), was filed on May 19, 2011 on behalf of 100 plaintiffs and alleges that Defendants violated the FDCPA and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*

[2] Plaintiff also asserts a violation of the Fair Credit Reporting Act against Equifax Information Services, LLC.

(5) Plaintiff's claim against Defendants for civil conspiracy must fail under the intracorporate immunity doctrine; and

(6) Plaintiff has failed to allege facts that would support a plausible claim for abuse of process under Virginia law.

Hence, these claims must be dismissed with prejudice by the Court.

## STATEMENT OF ALLEGATIONS[3]

### I.      The State Court Debt Collection Lawsuit Against Plaintiff.

Plaintiff alleges in late 2008 or early 2009 he discovered that, as a result of identity theft, a Capital One credit card account had been opened in his name (the "account").  (Compl., at ¶ 15.)  Plaintiff further alleges that Midland Credit Management, who is engaged in the business of debt collection, contacted him on behalf of Midland Funding and claimed to own the debt that had accrued on the account.  (*Id*. at ¶ 16.)  After Plaintiff allegedly denied ownership of the account, Midland, through a third party law firm, brought suit in Richmond General District Court.  (*Id*. at ¶ 18.)

Plaintiff also alleges that after he disputed the debt with Midland by way of an affidavit, a Midland representative (or one of its agents) "misrepresented" that Midland "would discontinue litigation against him."   Midland allegedly nonetheless obtained a default judgment against Plaintiff.  (*Id*. at ¶ 51.)  Plaintiff allegedly paid the default judgment after learning of it during the process of obtaining a mortgage.  (*Id*. at ¶¶ 52-54.)

### II.      Allegations of Defendants' Additional Misconduct.

Plaintiff asserts that Midland's employees repeatedly filed false affidavits in state courts claiming to have personal knowledge of debts that Midland purchased from third party creditors. (*See* Compl., at ¶¶ 9-11, 14, 21-22, 25.)   Midland allegedly acquired debt accounts without

---

[3]  The Statement of Allegations section is based on the allegations contained in the Complaint. Defendants do not agree with the allegations in the Complaint, but, for the limited purpose of this Motion and Memorandum, they are accepted as true.

obtaining full information on the debt and created these affidavits for use as evidence in state court.  (*Id*. at ¶¶ 10, 14, 25, 28-32.)  Plaintiff further claims the affidavits were mailed from Midland's offices to local debt collection law firms, and that Midland and unnamed third party collection law firms communicated by telephone and computer.  (*Id*. at ¶¶ 33-34, 37-40.)

### III.    Plaintiff's Claims.

Plaintiff makes the following claims against Defendants in eight different counts:

(1) In Count One of the Complaint, Plaintiff alleges that Defendants violated § 1692e of the FDCPA by using "false, deceptive and misleading representations or means in connection with the collection of the alleged debt from Plaintiff."  (*Id*. at ¶¶ 57-60.)

(2) In Count Two, Plaintiff alleges Defendants violated § 1692e(2) of the FDCPA in falsely representing "the character, amount and legal status of the alleged debt."  (*Id*. at ¶¶ 61-64.)

(3) In Count Three, Plaintiff alleges Defendants violated § 1692e(11) of the FDCPA in failing to disclose on three documents served on Plaintiff as part of the state court debt collection suit "that the Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose."  (*Id*. at ¶¶ 65-72.)

(4) In Count Four, Plaintiff alleges Defendants violated § 1692g(a) of the FDCPA in failing to notify him "of his right to request verification of the debt."  (*Id*. at ¶¶ 73-76.)

(5) In Count Five, Plaintiff alleges Defendants violated § 1692i of the FDCPA in bringing a state court debt collection action in a venue in which Plaintiff did not reside.  (*Id*. at ¶¶ 78-80.)

(6) In Count Six, Plaintiff alleges Defendants are liable under civil RICO.  (*Id*. at ¶¶ 81-86.)  Plaintiff claims that Defendants engaged in "racketeering activity" constituting: (1) mail fraud, (2) wire fraud, (3) obstruction of justice, and (4) witness tampering.  (*Id*. at 40.)  Plaintiff further claims that Defendants and their third party collection law firms constituted a criminal enterprise, and proceeds from the alleged racketeering activity were used in furtherance of the enterprise.  (*Id*. at ¶ 83.)

(7) In Count Seven, Plaintiff alleges that Defendants and their collection law firms engaged in a civil conspiracy under Virginia law.  (*Id*. at ¶¶ 87-90.)

(8) In Count Eight, Plaintiff alleges that Defendants committed abuse of process under Virginia law in attempting to obtain "a judgment on a debt that it could not confirm" and using service of process to serve false affidavits on Plaintiff. (*Id*. at ¶¶ 91-95.)

For Plaintiff's FDCPA claims, he requests actual damages, statutory damages, attorney's fees, and costs. (*Id*. at ¶¶ 60, 64, 72, 76, 80.)   Under his RICO claim, Plaintiff seeks treble damages, attorney's fees, and costs, as well as an injunction against Encore.   Under his civil conspiracy and abuse of process claims, Plaintiff seeks actual damages "unliquidated and noneconomic damages for the damage to his reputation, his time and his ongoing distress over the subject debt," and punitive damages.  (*Id*. at ¶¶ 89-90, 94-95.)

## STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of the plaintiff's initial pleading and does not resolve contests surrounding the facts or the merits of a claim.  *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).   When considering a motion to dismiss, the Court should accept as true all well-pleaded factual allegations and should view the complaint in a light most favorable to the plaintiff.  *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991).   Even under Fed. R. Civ. P. 8(a), however, the Court need not accept as true the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint.  *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'Ship,* 213 F.3d, 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   Furthermore, a "pleading that offers 'legal conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A claim is "factually plausible" when the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. If any factual allegations remain, the Court then should review them to determine if the plaintiff has stated a plausible claim for relief. *Id.*

Moreover, "acts of fraud pled as the basis of a RICO claim are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. Rule 9(b) requires a plaintiff to plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Vuyyuru v. Jadhav*, No. 3:10BCVB173, 2011 U.S. Dist. LEXIS 42254, at *61-62 (E.D. Va. Apr. 18, 2011) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Thus, "[w]ith respect to mail and wire fraud as predicate acts under RICO, the plaintiff must describe the time, place, and content of mail and wire communications, along with the parties to the communications." *Vuyyuru*, 2011 U.S. Dist. LEXIS 42254, at *61-62.

ARGUMENT

I.      **All Claims Against Encore, the Parent Company of Midland Funding and Midland Credit Management, Must be Dismissed.**

      A.      **Plaintiff Fails to Allege any Facts that Would Suggest Encore was Involved in the Alleged Conduct Giving Rise to this Action.**

Plaintiff names Encore, which he acknowledges is the parent corporation to Midland Funding and Midland Credit Management (*see* Compl., at ¶ 4), as a Defendant. Plaintiff fails to

allege, however, any facts that would give rise to liability on the part of Encore. Plaintiff alleges

the following facts relating to Encore:

(1) Plaintiff notified Encore that he was not responsible for the debt (*id*. at ¶ 17);

(2) Encore was aware that Plaintiff was not a Richmond resident (*id*. at ¶ 20);

(3) Profits from Midland Funding and Midland Credit Management, Encore's subsidiaries, were ultimately "funneled back" to Encore (*id*. at ¶¶ 22, 83); and

(4) Encore is a publicly traded company and "investors value its securities . . . by the amount of profits" it receives from the alleged conduct (*id at* ¶ 23).

These facts, even if true, do not demonstrate *any* wrongdoing on the part of Encore.

Encore's only alleged link to the conduct at issue is that Encore indirectly "profited" from

the challenged conduct through its ownership of Midland. *Id*. But, as the U.S. Supreme Court

has noted: "It is a general principle of corporate law deeply ingrained in our economic and legal

systems that a parent corporation (so-called because of control through ownership of another

corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524

U.S. 51, 61 (1998); *see also Beale v. Kappa Alpha Order*, 192 Va. 382, 396, 64 S.E.2d 789, 797

(1951) ("Before the corporate entity may be properly disregarded and the parent corporation held

liable for the acts of its subsidiary . . . it must be shown not only that undue domination and

control was exercised by the parent corporation over the subsidiary, but also that this control was

exercised in such a manner as to defraud and wrong the complainant.").

It is therefore unsurprising that federal courts addressing FDCPA claims against a parent

corporation based on conduct of one of its subsidiaries require more than allegations that the

parent may indirectly may have profited from increased value of the subsidiary in order to state a

claim against the parent. *See Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1143 (N.D. Ill. 1998)

("Plaintiffs fall far short of establishing the facts necessary to find that Union and Transworld are

engaged in a single economic enterprise, a finding required to make Union an indirect debt collector under the FDCPA."); *Harrison v. NBD Inc.*, 968 F. Supp. 837, 845 (E.D.N.Y. 1997) ("NEC cannot be liable for any violation by NBD of the FDCPA unless: (1) NBD is dominated by NEC to the extent that they constitute a single economic enterprise . . . (2) NEC controlled almost all aspects of NBD's debt collection . . . or (3) NBD is an alias for NEC."); *Stepney v. Outsourcing Solutions, Inc.*, No. 97 C 5288, 1997 U.S. Dist. LEXIS 18264, at *9 (N.D. Ill. Nov. 13, 1997) ("Stepney alleges [the parent corporation's] financial interest in [a subsidiary's] collection activities and approval of [the subsidiary's] practice of purchasing old debts and subsequent attempts to collect them . . . .  Similar allegations have been held insufficient to state an FDCPA claim against the corporate parent of a debt collector.") (collecting cases). Accordingly, Plaintiff's FDCPA claims against Encore must be dismissed.

      **B.**      <u>Plaintiff's "Threadbare Recitals" of Participation in a Conspiracy or Criminal Enterprise Contradict the Facts Pled in the Complaint and Cannot save his non-FDCPA Claims against Encore.</u>

Nor can Plaintiff's conclusory allegations that Encore "directed" the actions of Midland Funding and Midland Credit Management or participated in a conspiracy or criminal enterprise save his non-FDCPA claims.  For example, Plaintiff consistently asserts as part of his FDCPA claims that Encore is liable for alleged conduct of Midland based on the theory of respondeat superior, because Midland acted "at the direction of Defendant Encore and for its direct benefit." (*See id*. at ¶¶ 59, 63, 71, 75, 79.)  Plaintiff fails to allege any facts that would support the conclusory allegation that Encore directed its subsidiaries to engage in the alleged behavior.

In addition, Plaintiff claims that Encore "conspired to manufacture evidence," (*id*. at ¶ 21), that Encore used the alleged false affidavits "in furtherance" of an "enterprise" (*id*. at ¶ 32; *see also* ¶ 41), and that Encore used proceeds from the alleged enterprise to pay the salaries of

employees involved in signing and transmitting the affidavits. (*Id*. at ¶ 83.)  Again, however, all the factual allegations in the Complaint state that Midland Funding and/or Midland Credit Management, not Encore, engaged in the conduct that gave rise to the present action. (*See id*. at ¶ 29 (affidavits signed by Midland Credit Management employees); ¶ 31 ("If MCM revealed the truth in its affidavits, there would be no legal basis by which it could obtain a civil judgment."); ¶¶ 47-48 ("Midland Funding, MCM and/or one of their agents" received the affidavit and misrepresented that it would discontinue litigation); ¶ 52 (stating that "Midland Funding had fraudulently secured this judgment" against Plaintiff).)

At bottom, Plaintiff provides no factual support for the contention that Encore was in any way involved in the alleged conspiracy or criminal enterprise aside from the conclusory allegation that Encore indirectly profited from the activities of its subsidiaries.[4]   And, these "threadbare recitals" that Encore was involved in a conspiracy or a criminal enterprise – which contradict the factual allegations in the Complaint – cannot support a plausible claim for relief against Encore. *Iqbal*, 129 S. Ct. at 1949-50.[5]  All claims against Encore must be dismissed.

## II.     Plaintiff's Claims Under 15 U.S.C. §§ 1692e(11) (Count III) Must Fail Under That Provision's Formal Pleading Exemption.

Count Three, which asserts a violation of § 1692e(11) of the FDCPA, is predicated on Defendants' alleged failure to inform Plaintiff that the three documents that were attached to the

---

[4] As addressed in Part IV, *infra*, Plaintiff can only proceed under Subsection 1962(a) of RICO.   In order to be held liable under that subsection, a defendant must be a "principal" under 18 U.S.C. § 2, which defines principal as:  (a) "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission;" or (b) "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States."  Plaintiff fails to allege any facts that would support a finding that Encore was a "principal" of any alleged criminal enterprise.

[5] In addition, Plaintiff fails to include any allegations against Encore relating to his abuse of process claim.  Given that all of the underlying factual allegations supporting his abuse of process claim describe alleged conduct of either Midland Funding or Midland Credit, this claim against Encore also fails.

state court Warrant-in-Debt filed by Midland were attempts by Midland to collect a debt.  (*See* Compl., at ¶¶ 66, 68-70.)  This claim must fail because the documents in question were formal pleadings exempt from § 1692e(11).

Section 1692e(11) of the FDCPA generally requires that debt collectors make certain disclosures when a communication is an attempt to collect a debt.  The express language of 15 U.S.C. § 1692e(11), however, states that its requirements do "not apply to a formal pleading made in connection with a legal action." *Id.*  In this case, Plaintiff references three documents under Count III, entitled "Affidavit – Default Judgment," "Affidavit of Nancy Kohls," and the "Summary Screen" affidavit, all three of which he claims were attempts by a debt collector to collect a debt.  (*See* Compl., at ¶¶ 65-72.)  Plaintiff claims that these affidavits were submitted to the Richmond General District Court (*see id.* at ¶ 50), and were then "served upon him by law enforcement," indicating that they were attached to the Warrant-in-Debt.  (*See id*. at ¶¶ 66, 68-69.)  Moreover, a true and correct copy of the Warrant-in-Debt filed against Plaintiff, which attached all three of these affidavits to that filing, is attached as **Exhibit A**.[6]

Plaintiff's claim under Count III fails, as the documents alleged to have violated this section of the FDCPA are formal pleadings exempt from the disclosure requirement of § 1692e(11).  It is well settled that a complaint (or its state court analog, such as a warrant-in-debt) constitutes a "formal pleading" under the FDCPA.  *See, e.g., Hill v. Javitch*, 574 F. Supp. 2d 819, 823-824 (S.D. Ohio 2008) (a complaint is immune from liability under § 1692e(11)); *Stefansson v. Source One Mortg.*, 1:02-CV-0773-LJM-WTL, 2004 U.S. Dist. LEXIS 4458 (S.D. Ind. Jan. 29, 2004) (same); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358 (D. Md. 2010) (a

---

[6] When ruling on a Motion to Dismiss, a Court may take judicial notice of matters of public record and of documents referenced in the Complaint. *See Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (citing 5A CHARLES A. WRIGHT &ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990)).

complaint is a "pleading" listed under Fed. R. Civ. P. 7 and would qualify for immunity under § 1692e(11)); *see also Zevgolis v. Greenberg Law Firm, P.C.*, No. 3:10cv625-DWD, 2011 U.S. Dist. LEXIS 7452, at *7 (E.D. Va. Jan. 26, 2011) (looking to Black's Law Dictionary definition of "pleading," which is a "formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses.").

Courts have also consistently held that affidavits attached to a pleading are integrated into and constitute a "pleading." *See Judicial Watch v. United States DOC*, 221 F.R.D. 261, 263 n.1 (D.D.C. 2004) (holding that the term "pleading" includes "affidavits and declarations filed in support of technical pleadings"); *Czarnowski Display Servs. v.* Bell, No. 03-C-5782, 2004 U.S. Dist. LEXIS 13441, at *2 n.1 (N.D. Ill. July 15, 2004) ("The background information is taken from parties' pleadings, including attached affidavits."); *cf. Hill*, 574 F. Supp. 2d at 823-24 (noting that the complaint, which attached an affidavit, was exempted as a formal pleading under § 1692e(11)).  Therefore, Plaintiff's claim fails under the plain language of § 1692e(11).

### III.   Plaintiff's Claim Under 15 U.S.C. § 1692g(a) (Count IV) is Substantively Deficient and is Also Barred by the FDCPA's One-Year Limitations Period.

Plaintiff alleges, in Count Four, that Defendants violated 15 U.S.C. § 1692g(a).  This provision of the FDCPA requires debt collectors to include certain information in the "initial communication" with the consumer or to send a notice containing such information within five days after the initial communication.  *Id.*  Among other things, the consumer must be informed that "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector."  *Id.*  Plaintiff claims that Defendants failed to issue any such notice at any time.  (*See* Compl., at ¶ 74.)

The initial communication between Midland and Plaintiff referenced in the Complaint, as authenticated by the attached Declaration, is attached hereto as **Exhibit B**.  *Holmes v. Wal-Mart Stores East, L.P.*, No. 1:10cv75, 2011 U.S. Dist. LEXIS 46020, at *35 (E.D. Va. Apr. 27, 2011) ("a defendant may attach a document referred to in the plaintiff's complaint to a motion to dismiss without converting the motion into one for summary judgment").  Even a cursory review of page two of this communication reveals that it contains all of the required information to the consumer under § 1692g(a).  This claim, therefore, must be dismissed.

Additionally, even if this initial communication were somehow deficient, Plaintiff's claim is barred under the FDCPA's one-year limitations period.  *See* 15 U.S.C. § 1592k(d) (one-year period of limitation from date of the violation).  Under the FDCPA, there is only one "initial communication" for purposes of § 1692g(a), which in turn triggers the accrual of the one-year period of limitation under § 1592k(d).  *Peterson v. Portfolio Recovery Assocs.*, Nos. 10-2824 and 10-4013, 2011 U.S. App. LEXIS 11453 (3d Cir. June 6, 2011) (barring claim filed in 2009 when the first communication occurred in 2007, even though debt collector sent subsequent letters in 2008 and 2009); *Derisme v. Hunt Leibert Jacobson, PC*, No. 3:10cv244-MRK, 2010 U.S. Dist. LEXIS 119351, at *5 (D. Conn. Nov. 10, 2010) ("there can be only *one* 'initial communication' between a debt collector and a consumer, and any communication that follows the 'initial communication' is necessarily *not* an 'initial' communication.") (emphasis in original); *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D. Md. 2005) ("there is only one 'initial communication' with a debtor on a given debt under 1692g(a)").[7]

---

[7] To the extent Plaintiff seeks to apply § 1692g(a)'s notice requirement to the litigation documents referenced in Count Three, in addition to the fact that those documents do not constitute an "initial communication," § 1692g contains the same formal pleading exemption as Section 1692e(11).  *See* 15 U.S.C. § 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).").  Thus, if Count Four relies on such documents, it too must be dismissed.  *See* Part I, *supra*.

Plaintiff alleges that he learned that various credit card accounts had been opened in his name "[i]n late 2008 or early 2009." (*See* Compl., at ¶ 16.)  He further alleges that some time thereafter, "Plaintiff was contacted by Defendant MCM," (*see id*. at ¶ 17), which would constitute the "initial communication" under § 1692g(a).  Plaintiff alleges that he then "notified the Defendants . . . that he was not the individual who had opened accounts and was not responsible for the debt." (*Id*. at ¶ 18.)  Only then, "[i]n response" to Plaintiff's communication, did Midland allegedly sue Plaintiff in Richmond General District Court. (*Id*. at ¶ 19.)

The Warrant-in-Debt was signed by Midland's attorney on April 7, 2010 and then filed on April 9, 2010.  Exhibit A.  The Warrant-in-Debt therefore was signed exactly one year before Plaintiff filed suit in this case on April 7, 2011.  Because Plaintiff alleges that Midland instituted legal action "[i]n response" to Plaintiff's communication, which in turn was in response to a prior communication from Midland, any initial communication necessarily must have occurred before April 7, 2010.  This fact is substantiated by the initial communication itself, which is dated October 14, 2009.  Exhibit B p. 1; *see also Holmes v. Wal-Mart Stores East, L.P.*, No. 1:10cv75, 2011 U.S. Dist. LEXIS 46020, at *35 (E.D. Va. Apr. 27, 2011) ("a defendant may attach a document referred to in the plaintiff's complaint to a motion to dismiss without converting the motion into one for summary judgment").  Therefore, under the FDCPA's one year limitations period, any claim relating to an initial communication is time-barred.

## IV.  Plaintiff's Claim Under Civil RICO (Count VI) Fails As A Matter Of Law.

Congress enacted the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. "for the purpose of seeking the eradication of organized crime in the United States." *Beck v. Prupis*, 529 U.S. 494, 496 (2000) (internal quotation marks omitted).  Congress sought to address this problem "by providing enhanced sanctions and new remedies to deal with

13

the unlawful activities of those engaged in organized crime." *Id.* (internal quotation marks omitted).  Thus, RICO targets criminal behavior – referred to within RICO as "racketeering activity."  Plaintiff's novel (but tortured) civil RICO claim must fail because Plaintiff has not – and cannot – allege "racketeering activity" as required under the statute.

A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must do so under one of four subsections of the RICO statute, all of which are contained in 18 U.S.C. § 1962.  Plaintiff has not identified which of the four subsections of 18 U.S.C. § 1962 form the basis for his claim, but it is evident that he cannot assert a RICO claim under subsections (b), (c), or (d).[8]  Thus, Plaintiff's civil RICO claim can only possibly derive from 18 U.S.C. 1962(a).

In order to recover civil damages under § 1962(a), "the Complaint must allege that:  (1) the Defendants derived income from a pattern of racketeering activity; (2) the income was used or invested, directly or indirectly, in the establishment or operation; (3) of an enterprise; (4) which is engaged in or the activities of which affect interstate or foreign commerce." *Smithfield Foods, Inc. v. United Food and Commer. Workers Int'l Union*, 633 F. Supp. 2d 214, 222 (E.D. Va. 2008).  Plaintiff has failed to allege conduct on the part of Defendants that would constitute a "pattern of racketeering activity" as required for civil RICO.

---

[8] Subsection (b) requires that a RICO defendant acquire a management or control of an entity through a pattern of racketeering activity.  *See* 18 U.S.C. § 1962(b); *Teague v. Bakker*, 35 F.3d 978, 994 n.23 (4th Cir. 1994).  There are no allegations in the Complaint that would support this theory, and no such allegation could plausibly be pled as a result of debt collection activities relative to individual consumers.

Also, under subsections (c) and (d), the defendant against whom civil damages is sought must be "distinct" from the enterprise.  *See Palmetto State Medical Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997) ("the enterprise must be distinct from the persons alleged to have violated § 1962(c) . . . . A recovery of money damages under 18 U.S.C. § 1964(c) is not against a RICO enterprise, but against a RICO defendant who is a 'person employed by or associated with' a RICO enterprise.") (quoting 18 U.S.C. § 1962(c)); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 296-98 (D.S.C. 1999) (dismissing claim under 18 U.S.C. 1962(d) because "under the doctrine of intracorporate conspiracy, [defendant] cannot conspire with his corporations, his employee . . . or with his attorney . . . .").  As addressed in section V, *infra*, Plaintiff has failed to allege separate entities that would satisfy this requirement.

14

A "pattern of racketeering activity" requires the plaintiff to allege at least two predicate acts of criminal activity.  *See* 18 U.S.C. § 1961(5); *Am. Chiropractic v. Trigon Healthcare Corp.*, 367 F.3d 212, 233 (4th Cir. 2004).  Plaintiff unsuccessfully attempts to shoehorn Defendants' alleged conduct into four predicate acts of racketeering activity: (1) mail fraud, (2) wire fraud, (3) obstruction of justice, and (4) witness tampering.  (*See* Compl. at ¶ 40.)  Plaintiff, however, fails to plead allegations that would support any of these four predicate acts.

## A.      Mail Fraud and Wire Fraud Fail as Predicate Acts.

With respect to his claims of mail fraud and wire fraud, Plaintiff fails to allege, and cannot plausibly allege, "detrimental reliance" on the alleged misrepresentations in a mailing or a wire.  This, in turn, defeats his use of mail and wire fraud as predicate acts supporting his civil RICO claim.  *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) ("where a RICO plaintiff alleges predicate acts of mail and wire fraud . . . the plaintiff also 'must have justifiably relied to his detriment on the defendant's material misrepresentation'"); *Am. Chiropractic*, 367 F.3d at 233 ("To recover civil RICO damages . . . an individual must also allege that he was injured 'by reason of' the pattern of racketeering activity . . . .  To meet this burden with respect to mail fraud and wire fraud, a plaintiff must '*plausibly* allege both that [he] detrimentally relied in some way on the fraudulent mailing [or wire] . . . .'") (emphasis and bracketed text in original) (quoting *Chisholm v. Transouth Fin. Corp.*, 95 F.3d 314, 337 (4th Cir. 1996)).

Plaintiff asserts that he consistently disputed the debt and never believed any of Defendants' claims that he owed a debt.  (*See* Compl., at ¶¶ 17, 46.)  Based on these allegations, which permeate the Complaint, Plaintiff cannot allege detrimental reliance on the alleged mail fraud or wire fraud.  This is fatal to Plaintiff's attempt to premise his civil RICO claim on those

predicate acts, and his pleading falls far short of the heightened standards for allegations of fraud under Rule 9(b).[9]

Plaintiff attempts to sidestep this fatal deficiency by claiming that he "relied on the Defendants' representations that the litigation would cease," and that "the Richmond General District Court relied on Defendants' representations made in the false James affidavit . . . ." (Compl., at ¶¶ 49-50.)  At best, these allegations indicate: (1) that Plaintiff relied upon an alleged misrepresentation that is not an allegation of, and is wholly disconnected from, mail or wire fraud; and (2) the state court – not the Plaintiff – relied upon an alleged act of mail or wire fraud.  These allegations do not tether *Plaintiff's* reliance to the alleged "fraudulent mailing or wire," as the Fourth Circuit requires.

### B.       Obstruction of Justice and Witness Tampering Fail as Predicate Acts.

Plaintiff likewise cannot rely on either obstruction of justice or witness tampering under 18 U.S.C. §§ 1503 and 1512 as predicate acts because those offenses only apply to conduct occurring in federal court.  *See Davit v. Davit*, 366 F. Supp. 2d 641, 655 (N.D. Ill. 2004) (dismissing RICO claim because plaintiff could not rely on 18 U.S.C. § 1503 when allegations related to state court proceedings); *Capasso v. CIGNA Ins. Co.,* 765 F. Supp. 839, 843 (S.D.N.Y. 1991) ("The divorce proceeding was a state proceeding and therefore 18 U.S.C. § 1503 would not apply to any obstruction that may have occurred"); *Vuyyuru*, 2011 U.S. Dist. LEXIS 42254, at *61 n.10 (holding that 18 U.S.C. § 1512 "require[s] tampering with a witness in a federal proceeding") (citing 18 U.S.C. § 1515(a)(1)).  Thus, Plaintiff cannot use these federal statutes to maintain his RICO claim based on defendants' alleged conduct in state court.

---

[9] Furthermore, in supporting his claim that Defendants committed wire fraud, Plaintiff merely asserts that Defendants wired the funds allegedly obtained from their business activities.  (*See* Compl., at ¶ 84.) Plaintiff thus cannot allege that he "detrimentally relied in some way on the fraudulent . . . [wire]." *Am. Chiropractic*, 367 F.3d at 233.

Moreover, both of these predicate offenses require an element of intent that Plaintiff does not allege in his Complaint. *See United States v. Garcia*, No. 09-4783, 2011 U.S. App. LEXIS 2716, at *2 (4th Cir. Feb. 10, 2011) (requiring proof for obstruction of justice that defendant acted "with the intent to influence, obstruct, or impede that proceeding in its due administration of justice"); 19 U.S.C. § 1512(b) (requiring for witness tampering an intent to "influence, delay or prevent the testimony of any person in an official proceeding" or to "cause or induce to . . . be absent from an official proceeding to which such person has been summoned by legal process").

In short, Plaintiff's claim is deficient because he fails to allege facts in support of his contention that Defendants committed "racketeering activity" that would sustain his civil RICO claim. Count Six of his Complaint therefore must be dismissed.

### V.    Plaintiff's Claim For Civil Conspiracy (Count VII) Must Fail Under The Intracorporate Immunity Doctrine.

Under Virginia law, to make a prima facie showing of civil conspiracy, a plaintiff must show: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) that the overt act was done pursuant to and in furtherance of the common scheme. *See Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 337 S.E.2d 744, 748 (1985). Due to the requirement that a civil conspiracy implicate "two or more" entities, a cause of action for civil conspiracy between a corporation and its employees must overcome the strictures of the "intracorporate immunity doctrine." The intracorporate immunity doctrine provides that a civil conspiracy between a corporation and the "agents" of the corporation who are acting "within the scope of their employment" is a "legal impossibility." *Griffith v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1979) (emphasis added); *accord Charles E. Brauer Co. v. NationsBank of Va.*, 251 Va. 28, 466 S.E.2d 382 (1996).

Plaintiff makes two inadequate attempts to avoid the intracorporate immunity doctrine. First, Plaintiff alleges that Encore, Midland Funding, and Midland Credit Management conspired "by concerted effort" to injure Plaintiff.   (Compl., at ¶ 88.)   Second, Plaintiff alleges that Defendants conspired "with their third party collection law firms . . . ."   (*Id.*)   Neither of these allegations overcome the intracorporate immunity doctrine, and Plaintiff's civil conspiracy claim must be dismissed.

### A.   Plaintiff's Allegations That the Defendant Corporations Conspired Among Themselves Cannot Support a Claim for Civil Conspiracy.

Federal courts in Virginia have long recognized that a corporation and its wholly-owned subsidiaries are incapable of conspiring under Virginia law.  *See*, *e.g.*, *Scott & Stringfellow, LLC v. AIG Commer. Equip. Fin., Inc.*, No. 3:10CV825-HEH, 2011 U.S. Dist. LEXIS 38554, at *16 (E.D. Va. Apr. 8, 2011) ("[A] parent and wholly owned subsidiary, acting with identical ultimate interests and thus as a single economic unit, cannot conspire with each other to harm a third party's business interests."); *Field v. GMAC, LLC*, 660 F. Supp.2d 679, 689 (E.D. Va. 2008) (holding that a corporation and its wholly owned subsidiary cannot legally conspire under §§ 18.2-499 and 500); *In re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F. Supp. at 205 (same); *Derthick v. Bassett-Walker Inc.*, 904 F. Supp. 510, 525 (W.D. Va. 1995) ("[T]he conspiracy between Bassett-Walker and its parent, VF Corporation, must fail under the intracorporate conspiracy doctrine."); *Saliba v. Exxon Corp.*, 865 F. Supp. 306, 313 (W.D. Va. 1994) ("a corporation cannot conspire with its wholly owned subsidiary" relative to a claim of statutory conspiracy under Virginia law.)

As expressed by one Virginia federal district court, the logic underlying this rule in the context of parent corporations and their wholly-owned subsidiaries is as follows:

> It is the very nature of their relationship that "the subsidiary acts for the benefit of the parent." If a parent and a wholly owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests. Rather, the parent's control over its subsidiary, whether or not actually manifested, ensures their unity. The mere coordinated activity of a parent and its wholly owned subsidiary is completely unilateral, never susceptible of the "conspiracy" label.

*In re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F. Supp. 203, 205 (W.D. Va. 1984) (addressing a claim of conspiracy under Va. Code § 18.2-500). For identical reasons, "two subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another." *Advanced Health-Care Servs. v. Radford Community Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990). Moreover, the legal inability of a parent corporation and a wholly-owned subsidiary to conspire extends to the employees of such corporations. *Williams v. 5300 Columbia Pike Corp.*, 891 F. Supp. 1169, 1174 (E.D. Va. 1995) ("It is well-settled that a corporation cannot conspire with its wholly-owned subsidiary or with its officers and directors.").

Plaintiff expressly alleges that Midland Funding LLC and Midland Credit Management are subsidiaries of Encore.[10] (Compl., at ¶ 4.). And, even without such allegations, a court may take judicial notice of the wholly-owned corporate structure of the Defendants. *Scott & Stringfellow,* 2011 U.S. Dist. LEXIS 38554, at *17 n.3 ("The Court . . . takes judicial notice of the fact that AIGCEF is a wholly owned subsidiary of AIG, Incorporated."); *Ibarra v. Loan City*, No. 09-CV-02228-IEG (POR), 2010 U.S. Dist. LEXIS 6583, at *8 (S.D. Cal. Jan. 27, 2010) (taking judicial notice of "a website printout" from a government website identifying defendant "as an operating subsidiary of Lehman Brothers Bank, FSB"); *Dunlap v. BellSouth Telcomms., Inc.*, 431 F. Supp. 2d 1210, 1212 (M.D. Ala. 2006) ("The Court takes judicial notice that BellSouth Telecommunications, Inc. is a wholly owned subsidiary of BellSouth Corporation.").

---

[10] Indeed, Plaintiff premises his RICO claim on an allegation that proceeds from an alleged criminal enterprise flow up the corporate chain. (*See id. at* ¶ 83 ("proceeds obtained by MCM . . . flowed through Defendant MCM, to Defendant Midland Funding, and ultimately to Defendant Encore").)

As indicated in Encore's public 10-K filing, attached as **Exhibit C**, Midland Funding and Midland Credit Management are wholly-owned subsidiaries of Encore.  Thus, Defendants cannot have conspired with one another under Virginia law, and Plaintiff's claim for civil conspiracy must fail.

> **B.**     **Plaintiff's Allegations That Defendants Conspired with Their Third Party Debt Collection Law Firms Cannot Support a Claim for Civil Conspiracy.**

Perhaps recognizing that Encore, Midland Funding, and Midland Credit Management cannot conspire with one another under Virginia law, Plaintiff alleges that Defendants conspired with "third party collection law firms" in carrying out the conspiracy.  (*See* Compl., at ¶ 88.)  Although this allegation implicates actors outside of the vertical corporate structure detailed above, the intracorporate immunity doctrine still bars this claim.

In addition to barring conspiracy claims between a corporation and its employees, the intracorporate immunity doctrine dictates that "a conspiracy cannot exist between the agents of a corporation and the corporation."  *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997).  Put another way, "acts of corporate agents are acts of the corporation itself."  *ePlus Technology v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002).  Thus, the doctrine precludes claims of conspiracy between a corporation and its agent so long as the agent is acting within the "scope" of his or her employment.  *Wolf v. Fauquier County Bd. of Supervisors*, 1:06cv945-JCC, 2006 U.S. Dist. LEXIS 75354, at *17 (E.D. Va. Oct. 17, 2006) ("Though exceptions to the intracorporate immunity doctrine may exist for actions outside the scope of agency, or undertaken by personal motivation, Plaintiffs have pled no facts which indicate either.").

In applying the intracorporate immunity doctrine, courts have consistently held that a corporation's attorney qualifies as its agent, and that this principle precludes a conspiracy

between a corporation and its attorney. *Stoner v. N.Y.C. Ballet Co.*, No. 99 Civ. 0196-BSJ, 2002 U.S. Dist. LEXIS 5921, at *9 (S.D.N.Y. Apr. 8, 2002) ("There can be no conspiracy between a corporation and its counsel where the advice or concerted activity was within the scope of the representation."); *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-314 (3d Cir. 2003) (no conspiracy between attorney and client is possible); *Bowdoin v. Oriel*, No. 98-5539, 2000 U.S. Dist. LEXIS 888, at *3-6 (E.D. Pa. Jan. 28, 2000) (holding that, in light of the "regulatory framework" that protects parties from unscrupulous lawyers, including the disciplinary rules applicable to lawyers, conspiracy immunity in the attorney-client context is compelling); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 296-98 (D.S.C. 1999) ("Feker cannot conspire with his corporations, his employee, Melinda McDonald, or with his attorney, Stephen Gardner."); *Roth v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764, 778 (Mo. App. 2003) ("Because an attorney is an alter ego of his or her client, a conspiracy between the attorney and the client is not possible."); *see also White Oak Corp. v. Am. Int'l Group, Inc.*, 2009 Conn. Super. LEXIS 1857, at *26-27 (Conn. Super. Ct. July 6, 2009) ("That an attorney for a corporation occupies the same agency status as does an attorney for an individual is clear from the cases enforcing the attorney-client privilege for the benefit of a corporation and its employees."); *cf. United States v. Blevins*, No. 1:06CR00016, 2011 U.S. Dist. LEXIS 30743, at *9 (W.D. Va. Mar. 23, 2011) ("Because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, the petitioner must bear the risk of attorney error.").

Moreover, "Virginia courts maintain a broad view of the scope of employment." *Stith v. Thorne*, 488 F. Supp. 2d 534, 552 (E.D. Va. 2007); *see, e.g., Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1156 (4th Cir. 1997) (applying Virginia law and citing cases therein). The test in Virginia to determine whether an act is committed within the scope of

employment is: "(1) whether it was expressly or impliedly directed by the employer, or is naturally incident to the business; and (2) whether it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise completely from some external, independent, and personal motive on the part of the employee to do the act for his own account." *McLaughlin v. Town of Front Royal*, 38 Va. Cir. 387, 407 (Warren County 1996) (citing *Smith v. Landmark Communications, Inc.*, 246 Va. 149, 152, 431 S.E.2d 306, 307 (1993)).

Based on this test, it is established that even intentional torts and/or statutory violations may be within an agent's scope of employment. *See, e.g.*, *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996) (psychiatrist who sexually assaulted a patient could have acted within the scope of employment); *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 266 (1995) ("willful and malicious acts" that were "outrageous and violative of [the] employer's rules" might be within the scope of employment); *Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987) ("Although the scheme [to fire the plaintiff due to his age] may have been illegal, it was nonetheless, according to Haigh, devised by Panasonic officials to further Panasonic's interests (*e.g.*, younger sales personnel, reduced liability for pension benefits). Having so alleged throughout his Complaint, Haigh cannot now assert, in response to the defendants' motion [to dismiss], that the individual defendants were operating outside the scope of their employment."); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (under Virginia law, even "a 'forbidden' or 'consciously criminal or tortious' act may still be within the scope of employment.").

The Complaint contains no allegation that the "third-party" law firms were acting outside the scope of their engagement in effecting their allegedly unlawful conduct.  To the contrary, Plaintiff alleges that these law firms "assist[ed] in ordering and coordinating the false affidavits" once engaged, (*see* Compl., at ¶ 24), and that these third party firms had a computer system that was "directly connected" to the computers of Midland for the purpose of carrying out the conspiracy.  (*Id*. at ¶ 33.)  It is clear from these allegations that the third party law firms were acting in concert with the named Defendants.[11]  Thus, the strictures of the intracorporate immunity doctrine apply.

Because the named Defendants are legally incapable of conspiring with one another, and because these entities cannot have conspired with their "agent" attorneys, who were at all times acting within the scope of their employment, Plaintiff's allegations lack the requisite plurality of actors to state a claim for civil conspiracy under Virginia law.

## VI.    Plaintiff's Claim For Abuse Of Process (Count VIII) Fails.

Under Virginia law, "[t]o prevail in a cause of action for abuse of process a plaintiff must plead and prove: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'"  *Montgomery v. McDanie*l, 271 Va. 465, 628 S.E.2d 529, 531 (2006) (quoting *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235

---

[11] Nor does the rarely-applied "independent personal stake" exception to the intracorporate immunity doctrine apply, as Plaintiff repeatedly pleads that all of the Defendants were acting in concert for their mutual pecuniary benefit.  *See, e.g.*, *United States v. Gwinn*, No. 5:06-cv-00267, 2008 U.S. Dist. LEXIS 26361, at *85 (S.D. W.Va. Mar. 31, 2008) ("[I]f Defendants sold more mattresses, both they and Group II profited. Their success was intertwined and not wholly independent.");  *Douty v. Irwin Mortgage Corp.*, 70 F. Supp. 2d 626 (E.D. Va. 1999) ("According to plaintiff, the individual defendants had a personal stake in the increased commissions available to them after her termination.  We find this pleading insufficient because it does not allege that defendants had a stake in her termination independent of their relationship with [the corporation].  To the contrary, any 'personal stake' defendants had in increased commissions was incidental to their employment relationship with [the corporation] because their commissions were determined and paid by [the corporation].").

Va. 531, 539, 369 S.E.2d 857, 862 (1988)).   Plaintiff fails to allege facts that would support either of these requirements, and his claim must be dismissed.

### A.   Plaintiff Cannot Establish an Ulterior Purpose.

As the Supreme Court of Virginia explained in *Donohoe*, abuse of process consists of "the perversion of regularly-issued process to accomplish some ulterior purpose *for which the procedure was not intended*."  *Donohoe*, 235 Va. at 539, 369 S.E.2d at 862 (emphasis added). Put another way, "[r]egular and legitimate use of process, *though with a bad intention*, is not a malicious abuse of process."  *Glidewell v. Murray-Lacy & Co.*, 124 Va. 563, 570, 98 S.E. 665, 668 (1919) (emphasis added, internal quotation marks omitted).

This critical distinction – between using process for its intended purpose with a bad intention and using process for an ulterior purpose – is borne out in case after case under Virginia law.  *See Ely v. Whitlock*, 238 Va. 670, 674, 385 S.E.2d 893, 896 (1989) (finding ulterior purpose through filing ethics complaint against lawyer with purpose of hurting lawyer's reputation); *Capozio v. Baumann*, 59 Va. Cir. 148, 149 (Fairfax Cir. Ct. 2002) ("Defendants do not contend that Plaintiffs seek alternative ends other than to obtain a remedy for the causes of action set forth in the Motion for Judgment.  Instead, Defendants argue that Plaintiffs seek only to harass him and to chill his pursuit of ancillary litigation.  Motivation and purpose, however, are not synonymous in an abuse of process case.").

Indeed, courts have held that even the filing of a "baseless" lawsuit cannot constitute an abuse of process when the sole purpose of the lawsuit was to seek the relief sought in the Complaint.[12]  *See, e.g., id.* (explaining that whether the process is baseless is immaterial to an action for abuse of process); *7600 L.P. v. QuesTech, Inc.*, 39 Va. Cir. 268, 270-71 (Fairfax Cir.

---

[12] Such "baseless" lawsuits stand in stark contrast to the actions filed by Midland and its third party law firms, where the existence and validity of the debts are substantiated by the initial creditor.

Ct. 1996) ("Initiating and prosecuting a baseless suit . . . may warrant sanctions or constitute a claim of malicious prosecution, but these acts cannot constitute abuse of process. A misrepresentation is not a regularly-issued process which is used improperly to accomplish some ulterior purpose for which the procedure was not intended.") (internal quotation marks omitted); *see also Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 U.S. Dist. LEXIS 109470, at *49-51 (S.D. Tex. Oct. 12, 2010) (noting that "obtaining the money in Plaintiff's bank account is the intended purpose of garnishing Plaintiff's bank account," and holding that plaintiff's allegations that defendant "filed for a writ of garnishment, and refused to end it" allegedly in order to extort more money from the plaintiff, "would not constitute an abuse of process."); *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1053 (S.D. Iowa 2007) (same).

In this case, Plaintiff alleges that "Defendants' filing of the state court collection lawsuit was accomplished with the improper motive and purpose of obtaining a judgment on a debt that it could not confirm or know was actually owed by the Plaintiff." (Compl., at ¶ 92). In short, Plaintiff alleges that Defendants used a debt collection lawsuit to collect a debt, albeit one that Plaintiff disputes. This behavior, even if true, falls well within the "[r]egular and legitimate use of process." *Glidewell*, 124 Va. at 570, 98 S.E. at 668. Plaintiff thus fails to state a claim for abuse of process under Virginia law.

### B. Plaintiff Fails to Allege Facts in Support of an "Act in the Use of the Process not Proper in the Regular Prosecution of the Proceedings."

Plaintiff likewise fails to plead any facts that would suggest Defendants improperly used the process after it was procured. As the Supreme Court of Virginia explained, "[t]he gravamen of the tort lies in the abuse or the perversion of the process *after it has been issued*." *Donohoe*, 235 Va. at 540, 369 S.E.2d at 862 (emphasis added); *Glidewell*, 124 Va. at 570, 98 S.E. at 667-

68 ("The distinctive nature of an action for malicious abuse of process . . . is that it lies for the improper use of process after it has been issued, not for maliciously causing process to issue").

The Supreme Court's decisions in *Donohoe* and *Glidewell* are instructive. In *Donohoe*, the plaintiff property owner sued the defendant construction company for allegedly filing a mechanic's lien even though the plaintiff "had paid all bills presented and was aware of no outstanding requisitions." 235 Va. at 536, 369 S.E.2d at 859. The plaintiff produced several documents indicating that the defendant "considered filing a lien to prevent closing on permanent financing and to 'force [the plaintiff] into a final settlement and avoid arbitration and litigation if at all possible.'" *Id*. at 536, 369 S.E.2d at 860. The Court determined that such facts supported a finding of an "ulterior purpose," but further held that the "evidence fails to establish . . . that after filing the lien, [the defendant] committed any 'act in the use of the process not proper in the regular prosecution of the proceeding.'" *Id*. at 541, 369 S.E.2d at 863. In short, abuse of process did not lie even though the defendant, with an ulterior purpose, had filed a baseless mechanics' lien, because the defendant had prosecuted the lien in a proper manner.

In *Glidewell*, the defendants had sworn out a criminal misdemeanor warrant with the ulterior purpose to collect a private debt. 124 Va. at 569, 98 S.E. at 667. The defendants later agreed to dismiss the warrant if the debtor agreed to execute a new note. *Id*. at 570, 98 S.E. at 668. The Court determined that the Code of Virginia expressly permitted such agreements and therefore, "[w]hatever motive may have prompted the defendants, they had a moral and legal right to accept satisfaction and withdraw the prosecution substantially as they did." *Id*. Thus, despite the use of criminal prosecution to collect a private debt, there had been no abuse of process. *Id*.; *see also Guillory v. WFS Fin., Inc.*, No. C-06-06963-JSW, 2007 U.S. Dist. LEXIS 24910, at *16-17 (N.D. Cal. Mar. 21, 2007) ("Here, the complaint does not allege facts sufficient

26

to support the allegation that WFS or Nelson & Kennard filed the deficiency action for any purpose other than that for which it was designed, *i.e.* to collect a debt.").

Plaintiff alleges that Defendants' "use of the false affidavit in the state court lawsuit, and the use of service of process to serve it on him" was improper.  As in *Donohoe* and *Glidewell*, these facts do not allege that Defendants used the process in an improper manner after it was issued.  Rather, Defendants attempted to collect a debt through a civil proceeding in a Virginia state court and did so consistent with the applicable court rules regarding filing and default judgments.  *See Bank of Oklahoma v. Portis*, 942 P.2d 249, 255 (Okla. Civ. App. 1997) (holding that defendant bank did not commit abuse of process in obtaining default judgment after the defendant's attorney had allegedly promised to wait pending a hearing, because the bank "took the default judgment only after [the plaintiff] failed to file an answer.  There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though motivated by bad intentions.").  Thus, Plaintiff's claim fails to satisfy the required elements of abuse of process under Virginia law and must be dismissed.

## CONCLUSION

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc., respectfully request that the Court dismiss: (1) all claims against Encore, and (2) Counts Three, Four, Six, Seven and Eight against Midland Funding and Midland Credit Management.  Defendants further request they be awarded their attorney's fees and costs incurred herein along with any other relief that the Court deems appropriate.

**ENCORE CAPITAL GROUP, INC.,**
**MIDLAND FUNDING, LLC and**
**MIDLAND CREDIT MANAGEMENT, INC.**


By:/s/ Timothy J. St. George
                          Of Counsel

David N. Anthony (VSB No. 31696)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-5410
Facsimile:  (804) 698-5118
Email:  david.anthony@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:   (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Timothy J. St. George (VSB No. 77349)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1254
Facsimile:  (804) 698-6013
Email:  tim.stgeorge@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2011, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System which will then send a notification of

such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 201
Newport News, VA  23606
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662
Email:  lenbennett@cox.net

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone:  (703) 273-6080
Facsimile:   (888) 892-3512
Email:  matt@clalegal.com

*Counsel for Plaintiff*

John W. Montgomery, Jr.
Montgomery & Simpson, LLP
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone: (804) 355-8744
Facsimile: (804) 355-8748
Email: jmontgomery@jwm-law.com

*Counsel for Defendant Equifax Information Services, LLC*

/s/ Timothy J. St. George
Timothy J. St. George (VSB Bar No. 77349)
*Attorney for Encore Capital Group, Inc., Midland
Funding, LLC and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone:  (804) 697-1254
Facsimile:   (804) 698-6013
Email:  tim.stgeorge@troutmansanders.com