UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GILBERT JAMES,**

      **Plaintiff,**

v.                                                                   Civil Action No. 3:11cv00221

**ENCORE CAPITAL GROUP, INC.,** *et al.*

      **Defendants.**

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE PROTECTIVE ORDER

Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, "the Midland Defendants"), by counsel, hereby move the Court to enforce the Protective Order entered in this matter, and to maintain the confidentiality of the documents described herein.

In August 2011, the Midland Defendants willingly produced a number of confidential documents in reliance on the Protective Order stipulated to by the parties and approved by the Court. The documents that have been designated as "confidential" by the Midland Defendants contain trade secrets and other types of confidential information, and good cause exists for maintaining the confidentiality of such information under the Protective Order.

### Background

**A.    The Procedural Context and Confidential Documents at Issue.**

On August 12, 2011, this Court entered a Protective Order governing the production of documents, testimony, and information in this case, and which allows the parties to designate documents as "confidential" or "confidential – attorney's eyes only" when such materials contain

confidential or proprietary information. (Dkt No. 37). The terms of the Protective Order were agreed upon and stipulated to by counsel for the parties. *See id.*

Under the terms of the agreed Protective Order, the Midland Defendants produced certain documents that were previously identified in their Rule 26(a)(1) initial disclosures. A number of these documents, including internal business records, *were not* subject to any confidentiality restrictions. Certain documents, however, were designated as "confidential." These documents, along with a brief description of their contents, include:

- **"MCM Affidavit Training"** (MJ00090-MJ00172; MJ00186-MJ00249; MJ00342-MJ00400): The Midland Defendants' enumerated internal policies and procedures regarding the completion of affidavits in connection with state-court collection proceedings, including the specific form of the affidavit and the particular language used by the Midland Defendants. Each of these manuals was marked by the Midland Defendants as "Confidential" and/or "Proprietary" upon their creation;

- **"Midland Affidavit Process"** (MJ00173-MJ00182): A description of the training program for the affiant employees at Midland Funding, which also details the frequency of such training and the different types of affidavits executed by the Midland Defendants. This manual was marked by the Midland Defendants as "Confidential and Proprietary" upon its creation;

- "**Module 1 – FDCPA**" (MJ00250-MJ00285): A description of the Midland Defendants' internal policies and procedures to ensure compliance with the Fair Debt Collection Practices Act, including their interpretation of various provisions, their internal processes for ensuring compliance, "frequently asked questions" and corresponding answers, an internally-generated "compliance practice exam," and recommended strategies and scripts for employee communications with debtors and third parties. This manual was marked by the Midland Defendants as "Confidential" upon its creation;

- **"Module 6 – Disputes & Warning Codes"** (MJ00286-MJ00299): A description of the internal, computerized coding system used by the Midland Defendants to reflect the status of collection activities and/or the content of communications with debtors, as well as the specific steps that must be taken by employees of the Midland Defendants upon learning of a dispute, and a compliance practice exam. This manual was marked by the Midland Defendants as "Confidential" upon its creation;

- **"Consumer Relations Operations Manual"** (MJ00300-MJ00320): A description of the steps that must be taken by the employees of the Midland Defendants upon learning of a dispute, as well as specific instructions on how to handle each step of the dispute process, and scripts for conversations with debtors. This manual was marked by the Midland Defendants as "Proprietary and Confidential" upon its creation;

- **"Fair and Accurate Transactions Manual"** (MJ00321-MJ00341): A description of the specific steps that must be taken by the employees of the Midland Defendants upon learning of a claim of "identity theft," as well as specific instructions on how to handle each step of the dispute process, and scripts for conversations with debtors;

- **"Affidavit Process & Procedures"** (MJ00401-MJ00406): A description of the training program for the employee affiants, which details the different types of affidavits created and executed by the Midland Defendants. The manual also illustrates the internal approval process for affidavits, and it provides a "process illustration" flow chart showing the corporate approval process for affidavits throughout multiple levels of the Midland Defendants. This manual was marked by the Midland Defendants as "Confidential" upon its creation;

- **"Encore Capital Group - Affidavit Management System"** (MJ00407): A screenshot of the internal, computerized collection system utilized by the Midland Defendants listing the specific categories of information that the Midland Defendants collect and maintain in their internal computer system in connection with their debt collection activities;

- **Sample Affidavit** (MJ00408-MJ00410): A sample affidavit prepared by internal counsel for the Midland Defendants for the purpose of training employee affiants.

(*See* Declaration of Gregory Call ¶¶ 5-13, attached as **Exhibit A**). These manuals, policies, and other documents contain confidential information relating to, *inter alia*: (1) the content of the Midland Defendants' computerized debt-collection database; (2) their computer software; (3) the internal codes used in maintaining and updating the Midland Defendants' debt collection system; and (4) their internal debt collections policies, litigation process, compliance material, and corporate strategies.

Due to the highly-sensitive nature of this information, access to the foregoing documents is restricted even to the employees of the Midland Defendants. (*Id.* at ¶ 14). The Midland

3

Defendants also have internal policies and procedures regarding the maintenance of confidential and proprietary information in order to ensure that such information is not disclosed to third parties, including its competitors. *Id.* It is the Midland Defendants' general policy to keep these documents confidential, and when they are requested in litigation, the Midland Defendants either object to their production on the basis of their confidential and proprietary content, or they seek the entry of an appropriate protective order. (*Id.* at ¶ 15).[1] The Midland Defendants also restrict access to their facilities through key-card access, and the Defendants routinely execute non-disclosure agreements with third parties with whom the Defendants share specific information about their business. (*Id.* at ¶ 21).

In response to the designation of the foregoing documents as confidential by the Midland Defendants, on August 19, 2011, counsel for Plaintiff objected to such designations. **Exhibit B**. Without providing the basis for his position, counsel for Plaintiff objected to every single document designated as confidential.[2] *Id.* In other words, counsel for Plaintiff has taken the position that none of the Midland Defendants' documents are confidential or proprietary. Under Local Civil Rule 37, counsel for the Midland Defendants certifies that it has attempted in good faith to resolve this issue without judicial intervention, but such numerous attempts have failed.

B. **The Potential Harm to the Midland Defendants.**

The confidential documents at issue embody a wealth of accumulated corporate knowledge concerning the Midland Defendants' debt collection system, training and compliance

---

[1] At the Court's request, the Midland Defendants will produce copies of the documents at issue for review *in camera*, two of which were redacted for relevance purposes unrelated to confidentiality.

[2] Plaintiff's counsel also stated that nothing in the deposition transcript of Nancy Kohls could be designated as confidential, notwithstanding the fact that the deadline for such designations under the Protective Order has not yet arrived and that no such designations had yet been made by the Midland Defendants. *Id.* If this issue remains after the Midland Defendants actually make such designations to which counsel for Plaintiff objects, an appropriate motion will follow at that time. That issue, however, is not yet ripe for resolution.

4

policies, and corporate strategy. The Midland Defendants have invested and continue to invest significant resources, many years, and countless hours of employee time developing and improving their procedures to achieve maximum possible accuracy of the debt collection system, and also to ensure efficient dispute resolution and legal compliance. (Ex. A at ¶ 17). These policies and procedures provide the Midland Defendants with a competitive advantage in the marketplace over its many competitors by ensuring compliance with applicable laws, maximizing collections, and minimizing legal and informal disputes with consumers. (*Id.* at ¶ 18). And, public disclosure of the foregoing confidential information about the structure, logic and codes of the Midland Defendants' computer system, as well as their collection policies and procedures, would be invaluable to competitors attempting to build or refine a competing debt collection system at a fraction of the costs incurred by the Midland Defendants. (*Id.* at ¶ 19); *see also Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (holding that disclosure of the technical aspects of products, licensing agreements, and marketing information may provide the party seeking disclosure a "competitive advantage").

Also, the Midland Defendants' status as a market leader in the highly-competitive debt collection industry – an industry which is highly-attuned to market research and intelligence - heightens the concern that its competitors will very likely gain access to any publicly-disclosed proprietary information, and that these competitors will then use such information to gain an unfair competitive advantage in the marketplace. (Ex. A at ¶ 20); *accord VIA Techs., Inc.*, 198 F.R.D. at 530 ("The risk of potential injury is increased here because . . . Intel is already the dominant player in this highly competitive market.").

**Argument**

I. **Good Cause Exists for Maintaining the Confidentiality of the Challenged Documents.**

There is good cause for maintaining the confidentiality of the documents designated as "confidential" by the Midland Defendants. For "good cause shown," a court may enter a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(1)(G). The United States Supreme Court has defined a "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) (quoting RESTATEMENT OF TORTS § 757, cmt. b (1939)). "On its face, the rule goes beyond trade secrets to provide protection for 'other confidential research, development, or commercial information'" as well. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2043 (2d ed. 1994).[3] In other words, materials do not necessarily have to reveal the "keys to a corporate kingdom" to merit confidential treatment; the rule requires only that the information at issue contain private, proprietary information. *See In re FedEx Ground Package Sys.*, 2010 U.S. Dist. LEXIS 21607, at *7 (N.D. Ind. Mar. 2, 2010) (the court entered a stipulation and protective order on January 13, 2006, to allow the parties to designate as "Confidential" discovery materials that were not "publicly available").

A showing of good cause requires the party seeking confidential treatment to "establish that the information sought is covered by the rule and that it will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). District courts assessing the existence of good cause

---

[3] The Protective Order was intended to cover each category of information listed in Rule 26(c)(1)(G). (Dkt. No. 37 at ¶ 2).

should exercise their discretion in light of the facts and circumstances of the particular case. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Further, when a party has already produced information and seeks only to maintain its confidentiality, the party's burden of demonstrating good cause is tempered by its reliance on an agreed protective order. *See e.g., Tavoulareas v. The Washington Post Co.*, 111 F.R.D. 653, 658-59 (D.D.C. 1986). Indeed, because the "majority of information produced during the discovery process is never used at trial and has no impact whatsoever on the court's decision-making process," it is "during this pretrial discovery process that a party's interest in maintaining confidentiality of private information is at its strongest." *O'Malley v. Vill. of Oak Brook*, 2008 U.S. Dist. LEXIS 8763, at *5 (N.D. Ill. Feb. 6, 2008).

    **A.    There is Good Cause for a Protective Order as to the Confidential Documents Regarding the Midland Defendants' Computerized Collections System.**

As noted above, "Module 6 – Dispute & Warning Codes" and "Encore Capital Group - Affidavit Management System" contain internal codes and information regarding the nature of the information collected and stored by the Midland Defendants, as well as the specifics of their internal, computerized debt collection system. (Ex. A ¶¶ 8, 12). This debt collection system and the internal computer codes that are input into that system have been researched, developed, and refined at substantial cost to the Midland Defendants over many years. (*Id.* at ¶ 17).

A number of courts, including the Fourth Circuit, have held that a computer system and information relating to it can constitute a trade secret. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 662-64 (4th Cir. 1993) (computer software, including source code and object code, protected as trade secret); *Integrated Cash Mgmt. Servs. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2nd Cir. 1990) (design and "architecture" of computer system protected as a trade secret); *Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F. Supp. 101, 106

7

(S.D.N.Y. 1996) (computer source code protected as a trade secret); *Dickerman Assocs., Inv. v. Tiverton Bottled Gas Co.*, 594 F. Supp. 30, 35 (D. Mass. 1984) ("[T]he particular combination of procedures used in plaintiff's computer system, and the particular features within the system . . . are neither obvious nor easily duplicated. They constitute a trade secret.").

The Midland Defendants will suffer harm if the confidential information in its "Module 6 – Dispute & Warning Codes" and "Encore Capital Group - Affidavit Management System" are publicly disclosed. Conversely, Plaintiff will suffer no harm if these documents, which were readily produced to him, are simply kept confidential. *See, e.g., Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-424 (S.D. Ind. 2001) ("The Court holds the documents in question fall within the meaning of Rule 26(c)(7), and that the potential dangers State Farm faces if a competitor gains access to its trade secrets and confidential information outweigh any legitimate interest one may possess in obtaining these documents. As a result, the Court finds that State Farm set forth good cause for the entry of a protective order."); *In re Motorsports Merchandise Antitrust Litigation*, 1998 U.S. Dist. LEXIS 22132, *4 (N. D. Ga. March 20, 1998) (finding that potential hardship to the plaintiffs, if any, was outweighed by the potential prejudice to the defendants and ordered entry of a protective order that included a "Highly Confidential" designation applicable to certain financial information). Accordingly, for good cause shown, such documents should be maintained as confidential under the Protective Order.

### B. There is Good Cause for a Protective Order as to the Confidential Policy and Procedure Manuals and Training Materials.

The additional documents set forth above are various employee training materials and policy manuals created and refined by the Midland Defendants over numerous years. Each of these manuals contain confidential information about the Midland Defendants' debt collection procedures. (Ex. A at ¶¶ 3, 5-16).

8

With respect to the policy manuals and training materials documents produced in this case, both the Consumer Relations Operations Manual and the Fair and Accurate Transactions Manual detail the procedures for handling nearly every type of debtor dispute, including specific steps for processing such disputes. (*Id.* at ¶¶ 9-10). The "Module 1 – FDCPA" employee training manual also sets forth specific procedures for assuring legal compliance, and it elaborates on those requirements by enumerating, for example, specific scripts and talking points for communication with debtors, and also by providing a "compliance practice exam" for employees. (*Id.* at ¶ 7). Also, the many policy manuals and training procedures regarding the execution of affidavits are meant to ensure legal compliance and to facilitate efficient collections activities, including by setting forth the specific language preferred by the Midland Defendants and detailing the internal-review process for such affidavits prior to filing.[4] (*Id.* at ¶¶ 5-6, 11, 13). All of these manuals are internally marked and treated as confidential, access to them is restricted even within the Midland Defendants, and it is the policy of the Midland Defendants to not produce such documents in litigation without a protective order. (*Id.* at ¶¶ 5-13, 15-16, 21-22).

The unprotected disclosure of these documents would create serious risks of reverse engineering. The Midland Defendants' competitors would benefit greatly by gaining access to detailed information about the Midland Defendants' debt collection policies and procedures – information that the Midland Defendants have spent years compiling and significant amounts of money to develop. (*Id.* at ¶¶ 17, 19-20). In contrast, Plaintiff will suffer no evident prejudice if such documents simply remain confidential.

---

[4] As set forth above, these include the "MCM Affidavit Training" manual, the "Midland Affidavit Process" manual, the "Affidavit Process & Procedures" manual, and the "Sample Affidavit" used for training purposes.

Accordingly, courts have recognized that internal policy and procedure manuals of a competitive business constitute a trade secret. *See*, *e.g.*, *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001) (holding that internal procedure manuals containing mix of secret and non-secret information were trade secrets); *Check 'N Go of Virginia, Inc. v. Laserre*, 2005 WL 1926609, at *1-3 (W.D. Va. Aug. 9, 2005) (holding that internal policy and procedure manuals developed at substantial expense and protected from outside disclosure were trade secrets); *Hamilton*, 204 F.R.D. at 423-24 (defendant's claim handling policy and procedure manuals were trade secrets and could be used by the parties only for purposes of the litigation).

Moreover, courts have ruled that there is good cause for granting protective orders covering the same types of policy and procedure manuals being challenged here. *See*, *e.g.*, Letter Order in *Morris v. Trans Union, et al.*, No. 2:05-cv-04439 (E.D. Pa. Feb. 28, 2006) (attached as **Exhibit C**) (granting a protective order covering Admin Handbook); Order in *Fields v. Experian Information Solutions, Inc.*, No. 2:02-cv-00271 (N.D. Miss. June 20, 2003) (attached as **Exhibit D**) (granting a protective order covering "policy and procedure manuals"); *Adams v. Allstate Insurance Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) (the court held that "Allstate's claims manuals and company policies may include confidential information," and ordered plaintiff to keep the information confidential."); *Jones v. Nationwide Insurance Co.*, 2000 U.S. Dist. LEXIS 18823, at *11-12 (M.D. Pa. 2000) (the court directed that "all such documentation, including all company policies and all claims manuals, are to be kept confidential, for the eyes of plaintiff's counsel only."). Therefore, these documents have been properly designated as confidential and should be maintained as such.

## II. There Has Been no "Waiver" by the Midland Defendants of the Discovery Materials That Have Been Designated as Confidential.

The Midland Defendants anticipate that Plaintiff may contend that the disclosure of certain of the above documents in other actions without an explicit reservation of confidentiality has somehow vitiated a claim for confidentiality here. However, such a claim has been squarely rejected by the courts to consider the issue. *See, e.g.*, *Hamilton*, 204 F.R.D. at 424 (S.D. Ind. 2001) ("The fact that State Farm's policy manuals have been circulated throughout the legal community pursuant to discovery requests does not constitute a waiver by State Farm to its confidentiality."); *cf. Rambus, Inc. v. Infineon Tech.*, 222 F.R.D. 280 (E.D. Va. 2004) ("It is clear, however, that a 'judicially compelled' disclosure is not a voluntary one.") (citing *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 n.2 (D.D.C. 1984)).

In fact, consistent with the explicit designation of many of the documents at issue as "confidential" and/or "proprietary" well prior to the commencement of this action, the Midland Defendants have taken strict measures to ensure the confidentiality of the contested information, which include limiting the dissemination of such materials even within the Midland Defendants themselves and routinely seeking protective orders to maintain the confidentiality of its corporate documents when engaged in litigation. (Ex. A at ¶¶ 14-15, 21). These facts make plain the Midland Defendants' consistent intention to keep such documents confidential.

These facts belie any possible contention of waiver, and there has been no waiver of confidentiality sufficient to overcome the demonstrated good cause to maintain the designated documents as confidential.

### Conclusion

WHEREFORE, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. respectfully request that the Court: (1) overrule the objections of Plaintiff's

11

counsel to the Midland Defendants' confidentiality designations; (2) order that the documents described herein be maintained as confidential under the Protective Order; and (3) grant them such other and further relief as the Court deems just and proper.

                            **ENCORE CAPITAL GROUP, INC.,**
                            **MIDLAND FUNDING, LLC and**
                            **MIDLAND CREDIT MANAGEMENT, INC.**

                            By:/s/ Timothy J. St. George
                                  Of Counsel

David N. Anthony (VSB No. 31696)
Timothy St. George (VSB No. 77340)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

>Leonard A. Bennett, Esq.
>Susan M. Rotkis, Esq.
>Consumer Litigation Associates, P.C.
>12515 Warwick Boulevard, Suite 100
>Newport News, VA 23606
>Telephone: (757) 930-3660
>Facsimile: (757) 930-3662
>Email: lenbennett@cox.net
>
>Matthew J. Erausquin, Esq.
>Consumer Litigation Associates, P.C.
>1800 Diagonal Road, Suite 600
>Alexandria, VA 22314
>Telephone: (703) 273-6080
>Facsimile: (888) 892-3512
>Email: matt@clalegal.com
>
>*Counsel for Plaintiff*

>/s/ Timothy J. St. George
>Timothy J. St. George (VSB Bar No. 77349)
>*Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, Virginia 23219
>Telephone: (804) 697-1254
>Facsimile: (804) 698-6013
>tim.stgeorge@troutmansanders.com

2062291v1