UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GILBERT JAMES,

        **Plaintiff,**

v.                                       **Civil Action No.  3:11cv221**

ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGEMENT, INC.

        **Defendants.**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

COMES NOW the Plaintiff, Gilbert James (hereafter, "James" or "Plaintiff"), by counsel, and as for his Opposition to Defendants' Motion for a Protective Order, he states as follows:

**OVERVIEW**

This case is about how Defendant debt collectors generate and file in Virginia General District Court proceedings affidavits making substantive but false claims of indebtedness.  Plaintiff alleges that these collection affidavits misrepresent the nature of the asserted debt, the authenticity of the documents regarding the debt and the knowledge of the employees drafted by Defendants to execute the affidavits (under oath).  To put it more simply – the case is about how Midland's internal and private procedures are used to mislead courts in public proceedings.  Of course Defendants want to keep such damning procedures secret.  But that fear of judicial sanction is not a basis for Fed. R. Civ. P. 26(c)(7) protection.

The documents that Defendants seek to hide from public scrutiny are not trade secrets.  If the Court accepts Defendants' footnote invitation to review the documents *in camera*, it will find nothing that would be sought, useable by or of interest to a competitor.   The documents do not contain computer code, statistics, pricing or confidential formulas.  Instead, the documents at issue consist largely of very general training documents – PowerPoint presentations mostly – for clerical employees.  And they contain several documents that have long been in the public record.  And remarkably, they contain a sample affidavit that looks exactly as the thousands Defendants file in Virginia courts, but for a "John Doe" or "Main Street" substitution for actual consumer information.   Defendants are not using the confidentiality designations for any purpose other than to disrupt this litigation, and other litigation brought by present plaintiff's counsel.   This motion should be denied, as the documents at issue are not properly treated as confidential – Defendants have not (and cannot) established that they have been retained as secret or that use of the documents in public would cause it competitive harm properly the subject of a Rule 26(c) motion.

## CASE BACKGROUND

Undoubtedly, Defendants continue to litigate their defense of this case under the control and supervision of their "national" out of state counsel.  Both the in house attorney for Defendants and their California national counsel attended and supervised the deposition of their affiant in Minnesota and despite both this Court's caution and Plaintiff counsel's objection of this involvement at the deposition itself, national counsel still has not filed an appearance and submitted itself to this Court's supervision.  As a result, Defendants continue to take positions that are contrary to the procedure and ordinary

conduct in this district.

   The clearest example of this has been the Defendants' manner of handling its Rule 26(a)(1) responsibilities.   After two months in which Plaintiff sought to schedule the deposition of Defendants' frontline affiant employee (and two subpoenas personally served on the Minnesota employee), Defendants finally relented and produced the witness on August 11, 2011.  However, Defendants refused to produce any of they documents (even those regarding only the Plaintiff) until the Plaintiff would agree on a blanket or umbrella protective order.   However, even after Plaintiff so compromised, Defendants withheld a number of its most critical documents until late on the day and then evening before Plaintiff's counsel's flight to Minnesota.  Even more remarkably, and despite the protective order, Defendants did not produce unredacted documents.  For example, a typical page from its procedures manual is attached as Exhibit "A".   It also produced only the limited sections of limited chapters or "Modules" that it asserts would be relevant.

   Plaintiff's counsel thereafter contacted Defendants' attorneys and requested a compromise.  He proposed that Defendants allow the unimpaired use of documents discovered in one Encore or Midland case in which Plaintiff's counsel had appeared, in any other case in which counsel was also counsel of record.  Defendants refused. Further, as was apparent when drafting the now filed Amended Complaint, the continued designation of Defendants documents is disruptive and unfairly burdensome on Plaintiff's own prosecution of his claim.

   Accordingly, Plaintiff's counsel objected to the designation of the Defendant's limited set of documents and opposes their continued treatment as confidential.

## ARGUMENT

**A.  Defendants' Documents are not Trade Secrets and do not contain "Confidential Information" contemplated by Rule 26(c)(7)**

None of the subject documents contain trade secrets or other confidential information protected by Rule 26(c)(7).  The mere fact that Defendants want them kept from public view is not sufficient for Rule 26(c)(7) coverage.  Despite this burden, Defendants offer only a conclusionary declaration from their General Counsel, Gregory Call, and no meaningful argument or explanation as to how the subject documents contain "any formula, pattern, device or compilation of information which is used in [Defendants'] business, and which gives [them] an opportunity to obtain an advantage over competitors who do not know or use it." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984).

Initially, in all regards the Call declaration is inadequate.   In conformity with Defendants' bad habit of deceptively phrasing a declaration to imply, with plausibly deniability to the contrary, that the witness has personal knowledge.  Mr. Call offers his "testimony" on either "my review of Defendants' business records and/or personal knowledge."  Particularly for the present motion, there is a big difference between the two possibilities.  And for Mr. Call, it certainly must be the former – and not his personal knowledge.  After all, Mr. Call did not begin his employment at Defendants until 2010[1], while most of the subject documents were initiated and created before that period.

Beyond the prima facie failure of the Call declaration – the only "proof" it offers to attempt its burden – the testimony suggested also fails to satisfy Rule 26(c)(7).  While Defendants assert – and Plaintiff agrees – that, "It is the Defendants' general policy to

---

[1] http://www.linkedin.com/in/gregcall last visited September 12, 2011.

keep their documents confidential … when they are requested in litigation,"  (Decl. of

Gregory Call,¶ 15),  this fact by itself is insufficient to cast a document as a trade secret.

As Judge Easterbrook declared,

> Beyond asserting that the document must be kept confidential because we
> say so (the "agreement is, by its terms, confidential"), this contends only
> that disclosure "could ... harm Abbott's competitive position." How? Not
> explained. Why is this sort of harm (whatever it may be) a legal
> justification for secrecy in litigation? Not explained. Why is the fact that
> some other document contains *references* to a license sufficient to conceal
> the referring document? Not explained. If it were, then the district court's
> opinion, see 2002 U.S. Dist. LEXIS 5475 (N.D.Ill. Mar. 26, 2002), which
> includes not only references to the licenses but also extended quotations
> from them, would have to be blotted from the books. So all we have is
> ukase.

*Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 547 (7th Cir. 2002).  Defendant

does not offer any factual basis or evidentiary proffer to explain how it would suffer a

competitive disadvantage if the specific documents at issue became public.   The Call

declaration is entirely conclusory. It fails to demonstrate what it is about the

"confidential" information that makes it a true trade secret or otherwise confidential

commercial information and that a clearly defined and serious injury will result from

disclosure of the information.   Among other things, the declaration fails to provide any

particularized description of the information at issue, how the allegedly confidential

information was derived, the amount of time and money expended to develop the

information, what is and is not known to competitors about the information, and whether

customers and/or other third parties to whom this information is disclosed are required to

keep the information secret. *See e.g. IDX Systems Corp. v. Epic Systems Corp.,* 285 F.3d

581, 583-84 (7th Cir. 2002); *Rossi,* 180 F.R.D. at 341; *Cook v. Boston Scientific Corp.,*

206 F.R.D. 244 (S.D. Ind. 2001); *Kobelco Metal Powder of America, Inc. v. The Energy*

*Cooperative,* No. IP 01-0051-C H/K, 2001 WL 1397311, * 3 (S.D. Ind. Oct. 30, 2001). Considered in its entirety, the declaration shows only that Defendants consider nearly everything concerning their business to be confidential but not whether their assertions of confidentiality or harm are actually legitimate. *Rossi,* 180 F.R.D. at 341.

The present motion should be disposed of quickly upon the Court's *in camera* review.  Defendants' descriptions of the challenged documents grossly overstate their sophistication and substance.  Nearly all of the documents at issue are simply instruction manuals or PowerPoint presentations provided to Defendants' clerical employees who sign their collection affidavits.   They essentially translate what the collection affidavit states into what Defendants claim are lay explanations for legal terms.  For example, the documents explain that the affidavit phrase "all pertinent business records" means only those limited records (one screen) the affiant is provided.  They explain what a "caption" in an affidavit or court case is.  Alternatively, they explain the physical steps the affiant employees are to take in receiving, reading and signing the affidavits.  For example, the employee is told to flip over the paper after they have read it and sign their initials on the back.  They are told to read the one page computer screen named the "Validation screen" to check the substance of the affidavits.   None of this is proprietary such to be useful to any outside competitor.   It would be similar to a manual that reminded the Defendants' employees to turn off their computers at night, or to meet in the lobby if they hear a fire alarm.

### *Affidavit Process Documents*

The documents described at "MCM Affidavit Training" (MJ00090-MJ00172; MJ00186-MJ00249; MJ00342-MJ00400)" and "Midland Affidavit Process" (MJ00173-

MJ00182)" are simply general PowerPoint presentations given in 2009 and early 2010. They do not contain any "code", mention the use of a computer or suggest anything else beyond a Midland Credit Management translation to the public substance of its collection affidavits.

The document titled "Affidavit Process & Procedures" (MJ00401-MJ00406) does, as defendants explain, provide a "process illustration" flow chart showing the corporate approval process for affidavits throughout multiple levels of the Midland Defendants." But there is nothing remarkable about the privacy or confidentiality of this document. It does not offer any secret computer code, formula or anything else useful to a Midland competitor.

The document titled, "Encore Capital Group - Affidavit Management System" (MJ00407)" is a one page screen print that shows the very simple page that a clerical employee would look at when signing a collection affidavit. And the document titled "Sample Affidavit (MJ00408-MJ00410)" is just as named – a sample affidavit exactly like those filed in collection cases, but with a John Doe" identity instead of that of a real person.

Defendants cannot honestly suggest an expectation of privacy regarding these documents. In any of its hundreds of thousands of collection cases nationally, it must at any point be prepared to explain the affidavit it will attempt to use in that collection lawsuit. The collection affidavits themselves even state a description of the process Defendants claim to use to check business records and validate debts. The alternate position would state, ridiculously, "I am a person who works for Midland Credit

Management, but the tasks I perform and the documents I review to make this affidavit

and authenticate the documents attached are confidential and I will not reveal them."

*Defendants' Consumer Dispute Procedure Modules*

The remaining documents Defendants seek to protect are also not properly

designated.   First, the Court's review of the documents will reveal large portions that are

already redacted by blackout highlighting. Entire pages are blacked out even though the

documents were produced under the umbrella protective order.

Similarly ridiculous is Defendants' designation of these procedures in the face of

their filing and use of same in a public trial in February , and shortly in the Appellate

Joint Appendix, in *Brim v. Midland Credit Mgmt., Inc.*, CV-10-J-369-S, 2011 WL

2665785 (N.D. Ala. May 4, 2011).[2] (*See e.g.* the exhibit lists filed by each party in the

case, Exhibit B and Exhibit C).  Plaintiff's counsel possesses unprotected versions of

most of the same documents that are now disputed.

Defendants categorize their remaining documents as: "Module 1 – FDCPA"

(MJ00250-MJ00285); "Module 6 – Disputes & Warning Codes" (MJ00286-MJ00299)";

"Consumer Relations Operations Manual" (MJ00300-MJ00320)"; and "Fair and

Accurate Transactions Manual" (MJ00321-MJ00341)." Each of these are very general

descriptions of the steps Midland clerical employees are to follow when a consumer

communicates a dispute, either under the Fair Debt Collection Practices Act or the Fair

---

[2] Present Plaintiff's counsel tried to a jury a comparable FCRA case against Midland
Credit Management.  The jury awarded and the court sustained a verdict of $100,000 in
actual damages and $623,000 in punitive damages.  Information transmitted to the court
of appeals is presumptively public because the appellate record normally is vital to the
case's outcome.  *Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir.
2002).

8

Credit Reporting Act.  There are several basic examples and training questions.  But there are no computer codes, formula or proprietary and unique processes to protect.

Such FDCPA and FCRA dispute procedures are not properly the subject of a Rule 26(c)(7) motion.  No explanation or evidence is offered that such processes are of unique advantage to Midland or interest to its unnamed competitors.  A debt collector's "office policies and procedures" are not protected as attorney-client communications, work product, or confidential business information.  *FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir. 1980); see *Zahran v. Trans Union Corp.*, 2002 WL 31010822, at *3 (N.D. Ill. 2002).    In the most-often cited case on the present issues in teh context of such a consumer credit case, Judge Kay rejected Defendants' present argument:

> The statements in Paragraphs 234 trough 251 do nothing more than state certain of Trans Union's general procedures for resolving errors in credit reports and Trans Union's alleged failure to follow its protocol in the Zahrans' case.  (*See generally,* Pl's State. of Facts 234-251.) The Court does not see how the Zahrans' assertions in these disputed paragraphs divulge any Trans Union trade secrets, and to the extent that Paragraphs 234 through 251 refer to certain documents, the Court finds that these documents are undeserving of a protective order, as further explained below.
>
> In all actuality, the portions of the Dispute Training Manual included in the Zahrans' exhibits, which outline procedures for consumer relations personnel to handle consumer credit disputes, are not rocket science. In the case at bar, the Court is not faced with the disclosure of the actual computer software used to design Trans Union's consumer credit database or the decision-making process that determines how or why certain information is placed on an individual's credit report in the first place. Here, the Court is only confronted with the data entry of consumer information, complaints, definitions and instructions on how to access consumer dispute history or similar screens. The Court concludes that the function commands, keystrokes, data entry instructions, and general computer codes in the Dispute Training Guide are not a "formula, pattern, device or compilation of information" that gives Trans Union an advantage over competitors. The Court does not see how a competitor will be advantaged if information relating to which keystrokes access which screens in the database is disclosed or if information about which

> departments handle various consumer inquiries becomes public
> knowledge.

*Zahran v. Trans Union Corp.*, 01 C 1700, 2002 WL 31010822 (N.D. Ill. Sept. 9, 2002).

See also *Ahern v. Trans Union LLC Zale Corp.*, 301CV02313(DJS), 2002 WL 32114492

(D. Conn. Oct. 23, 2002) ("That Transunion considers documents proprietary and

confidential falls short of establishing grounds for a protective order or any recognized

immunity from discovery. More than a mere assertion is required to perfect an exemption

or immunity from discovery.").

## B.  Defendants Have Not Met their "Good Cause" Burden to Obtain a Rule 36(c) Protective Order

Defendants seek a protective order pursuant to Federal Rule of Civil Procedure

26(c)(7). Rule 26(c)(7) provides that the Court may, for "good cause shown" make any

order which justice requires to protect a party or person from annoyance, embarrassment,

oppression, or undue expense, including "that a trade secret or other confidential

research, development, or commercial information not be revealed or be revealed only in

a designated way." Fed. R. Civ. P. 26(c)(7).  To obtain a protective order under Rule

26(c), the moving party must establish that the information sought is covered by the rule

and that it will be harmed by disclosure. *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998)

(citing *See* 8 Charles Alan Wright & Richard L. Marcus*, Federal Practice and Procedure*

§ 2043, at 555-57 (2d ed.1994).)  "The party seeking a protective order has the burden of

establishing "good cause" by demonstrating that 'specific prejudice or harm will result if

no protective order is granted.' *Phillips v. Gen. Motors Corp.,* 307 F.3d 1206, 1210–11

(9th Cir. 2002)." *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010);

See also *Lathon v. Wal-Mart Stores E., LP*, CIV.A. 3:09CV57, 2009 WL 1810006 (E.D.

Va. June 24, 2009) ("For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm that will result if no protective order is granted.")

The finding of both protectable information and good cause must be based on a particular factual demonstration of trade secrets or confidential commercial information and potential harm, not on conclusory statements. "The rule requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefore. The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." FPP § 2035, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.). Rule 26(c)'s good cause requirement "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Great Am. Ins. Co. v. Gross*, 68 Fed. R. Serv. 3d 160 (E.D. Va. 2007) (citations omitted). See also *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) (Generalized allegations of injury to reputation and relationships with clients insufficient as the moving party was not able to articulate any specific cognizable injury that would flow from dissemination of the materials.); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir. 1973), cert. denied, 414 U.S. 1162, 94 S. Ct. 926, 39 L. Ed. 2d 116 (1974) (Under provisions of this rule requiring that "good cause" be shown for a protective order to be issued, the burden is upon movant to show necessity of its issuance, which contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements; such determination must also include a consideration of relative hardship to nonmoving party should the protective

order be granted.); *Patt v. Family Health Systems, Inc.*, 189 F.R.D. 518 (E.D. Wis. 1999), aff'd, 280 F.3d 749 (7th Cir. 2002). (General injuries from discovery are insufficient to warrant issuance of protective order. It must instead be shown that disclosure will cause a clearly defined and serious injury. The moving party failed to make that showing.)

Defendant does not detail any specific competitive harm it could, let alone would, suffer by public knowledge of its documents.  Its Call declaration is void of any specific examples of potential harm.  There is not mention of a particular competitor who would seek such procedures.  And, frankly, why would a competitor be so interested?  The procedures at issue in this case have led to the filing of this case.  But they have also led to the filing of countless others, including a multi-million dollar class action settled only recently.

In nearly all competently contested instances, courts have rejected Rule 26(c)(7) protection for FDCPA and FCRA compliance procedures.  See e.g. *Zahran v. Trans Union Corp.*, 01 C 1700, 2002 WL 31010822 (N.D. Ill. Sept. 9, 2002); *Ahern v. Trans Union LLC Zale Corp.*, 301CV02313(DJS), 2002 WL 32114492 (D. Conn. Oct. 23, 2002).  There is no credible harm that Defendants can articulate, let alone prove. Information is not worthy of protection under Rule 26(c)(7) merely because it is information that the producing party does not want its competitors to learn or that, if disclosed, would implicate the disclosing party in a fraud. *See Union Oil,* 220 F.3d at 567 ("Many a litigant would prefer that the subject of the case ... be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing.").

**C. The Balancing of Interests Weighs Against Issuance of A *Protective Order***

Even if somehow the Defendant would be theoretically exposed to competitive harm, a Rule 26(c)(7) protective order is appropriate only if the moving party's harm is greater than other interests at stake.   For the Plaintiff, and for other consumers represented by Plaintiff's counsel, catering to Defendants' desire to keep its secrets in house has a cost and burden.   The protective order being sought is meant to totally disrupt the manner in which counsel and the Court ordinarily litigate a case. *Pintos v. Pacific Creditor's Association,* 504 F.3d 792, 801-803 (9th Cir. 2007).   As it stands, Plaintiff cannot use any designated documents in a filed pleading without the delay to permit Defendants' filing of a certainly futile Motion to Seal.   Further, Plaintiff's counsel represent literally hundreds of similar consumers and is defending many of them in state court collection actions brought by Midland Credit Management.   Defendants have refused to permit the collateral case use of such documents.   The non-rule based restriction of the use of the Defendants' affidavit documents improperly interferes with Plaintiff and Plaintiff's counsel's rights to otherwise use the disputed documents.   As Judge Ellis has explained:

> Many circuits have sensibly held that where discovery materials are not protected by a valid protective order, parties may use that information in whatever manner they see fit. *See Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir.1994) ("Absent a valid protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit."). It cannot logically be the case that good cause exists to prohibit the public disclosure of discovery materials because a party states an intent to disseminate those materials in accordance with the law. In other words, a party cannot lose the right to disseminate all discovery materials not protected by a protective order simply by stating an intent to exercise that very right.

*U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 567 (E.D. Va. 2010).   See also *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 780 (1st Cir.1988) ("Indeed, the Supreme

Court has noted that parties have general first amendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit."); *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.,* 748 F.2d 1421, 1424 (10th Cir.1984) ("While it may be conceded that parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order, ... it does not follow that they can be compelled to disseminate such information."); *Exum v. U.S. Olympic Committee,* 209 F.R.D. 201, 206 (D.Colo.2002) ("In the absence of a showing of good cause for confidentiality, the parties are free to disseminate discovery materials to the public").

Beyond the use of the documents by Plaintiff and his counsel, there is also a strong public interest in public disclosure of these documents.  The well-established presumption is that the public has an overwhelming interest in knowing what is happening in a judicial proceeding. *Citizens First Nat'l Bank,* 178 F.3d at 945-46; *Union Oil,* 220 F.3d at 568.   Clearly, such a result is unworkable, is inconsistent with the public's interest in access to judicial proceedings, and is anathema to the rule laid down by the Seventh Circuit in  *American Telephone & Telegraph,* 594 F.2d at 596. The presumption of public access extends to pretrial discovery absent "compelling reasons [] for denying the public access to the proceedings." *Id.; Citizens First Nat'l Bank,* 178 F.3d at 945-46.  This is especially true in this instance, as the documents Defendants want to keep secret pertain to the creation and use of the affidavits it then offers in various state courts around the country.  State judges, government regulators and

other effected consumers are stakeholders in this dispute and the theoretical harm crafted

in Defendants' memorandum cannot outweigh these more important interests.


Respectfully submitted,
**GILBERT JAMES**


_____/s/_____

LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@cox.net


MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com


DALE W. PITTMAN, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803
Tel:    (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 12th day of September, 2011, I will file the foregoing motion electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Neal Anthony
Timothy St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462


_____/s/_____
LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Tel:    (757) 930-3660
Fax:    (757) 930-3662
        lenbennett@cox.net