UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GILBERT JAMES,**

      **Plaintiff,**

v.                                                               Civil Action No. 3:11cv00221

**ENCORE CAPITAL GROUP, INC.,** *et al.*

      **Defendants.**

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE PROTECTIVE ORDER RESPECTING DEPOSITION TESTIMONY

Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, "the Midland Defendants"), by counsel, hereby move the Court to enforce the Protective Order entered in this matter, and to maintain the confidentiality of deposition testimony described herein.

After numerous unsuccessful attempts to confer with Plaintiff's counsel on the issue, this Court is required, yet again, to take up the issue of "confidentiality" designations in this action.[1] This motion does not come to the Court in the context of a defendant who has refused to provide discovery. To the contrary, the Midland Defendants have willingly provided Plaintiff's counsel with all of the documents and information that have so far been requested. Instead, this motion concerns only the Midland Defendants designating certain deposition testimony as confidential under the terms of the Protective Order entered in this action.

---

[1] On August 29, 2011, the Midland Defendants moved to enforce the provisions of the Protective Order with respect to a number of documents that were produced and designated as confidential. (Dkt. No. 38). Plaintiff's counsel has now made a similar objection with respect to all of the deposition testimony that has so far been designated as confidential by the Midland Defendants. To the extent that the deposition testimony that is the subject of this motion overlaps with the contents of the documents addressed by the Midland Defendants' prior Motion to Enforce Protective Order, the Midland Defendants incorporate their arguments by reference herein.

The deposition testimony that has been designated as "confidential" by the Midland Defendants reveals (or has the potential to reveal) confidential information about the operations of the Midland Defendants, and good cause exists for maintaining the confidentiality of such information under the Protective Order. Plaintiff will suffer no evident prejudice in his ability to zealously prosecute this matter as a result of these designations, which are commonly made in litigation within the Eastern District of Virginia without controversy. Moreover, without any actual regard for the sensitive content of the testimony designated as confidential, Plaintiff's counsel, in knee-jerk fashion, has broadly proclaimed that *no* document or deposition testimony produced in this case to date can be properly designated as confidential. However, a review of the relevant deposition testimony belies this unreasonable and unfounded contention.

## Background

### I. The Procedural Context and Confidential Deposition Testimony at Issue.

On August 12, 2011, this Court entered a routine Protective Order governing the production of documents, deposition testimony, and information, and which allows the parties to designate deposition testimony as "confidential" or "confidential – attorney's eyes only" when it contains confidential or proprietary information. (Dkt No. 37). The terms of the Protective Order were agreed upon and stipulated to by counsel for the parties. *See id.*

In August 2011, the Midland Defendants produced Nancy Kohls, a Legal Specialist at Midland Credit Management, Inc., for her deposition in Minneapolis, Minnesota. During her deposition, Kohls testified at length regarding, *inter alia*, the substance of documents that had been produced by the Midland Defendants and designated as "confidential," the Midland Defendants' affidavit policies and collection processes, the software and specific codes used by the Midland Defendants in the collections process, private personnel information, and other

policy manuals and training materials that had been produced by one or more of the Midland Defendants in previous civil actions, where such materials were also marked as confidential.

Significant portions of the deposition transcript *were not* designated as confidential by the Midland Defendants. However, Kohls's testimony on certain subjects was designated by the Midland Defendants as confidential.[2] **Exhibit A** (the confidentiality designations of the Midland Defendants). Specifically, Kohls testified about the following confidential subjects:

- The identity of certain of the Midland Defendants' major clients, and the nature of those clients' audits of the affidavit system used by the Midland Defendants. (Kohls Tr. pp. 13:6-8; 14:20-16:23; 24:2-5);

- The process by which the Midland Defendants' employees access consumer account records, the contents of their "intranet" system, the email retention policies employed by the Midland Defendants, and the computerized collections process used by the Midland Defendants, including the specific software installed on their computers and the meaning of certain codes. (Kohls Tr. pp. 17:11-18:16; 19:10-21:20; 113:2-117:10; 117:24-136:25);

- The roles of certain officers and employees in creating the affidavit procedures and training processes. (Kohls Tr. pp. 23:15-24:1; 28:4-14);

- The training manuals and written policies and procedures of the Midland Defendants detailing the system for executing affidavits, all of which were marked as "confidential" and/or "proprietary" by the Midland Defendants upon their creation. (Kohls Tr. pp. 25:4-27:12; 99:13-113:1; 195:16-202:16);

- An organizational chart detailing the particular divisions of the Midland Defendants, both domestically and internationally. This document was previously produced by the Midland Defendants in another civil action, where it was designated as "confidential." Kohls also testified about the corporate structure and divisions within the office in which she is employed (St. Cloud, Minnesota). (Kohls Tr. pp. 29:14-33:5; 57:3-58:2; 59:1-61:12);

- The Midland Defendants' internal process for executing affidavits, including the individuals involved in that process, the policies and procedures surrounding that process, the types of documents reviewed by the employee affiants, the training received by the affiants, and the mechanics of the computer system used by the affiants. (Kohls Tr. pp. 34:14-43:4; 77:22-82:8; 82:17-83:17; 91:12-92:3; 92:25-

---

[2] At the Court's request, the Midland Defendants will produce copies of the deposition testimony at issue for review *in camera*.

   95:12; 137:17-158:23; 162:8-174:19; 175:11-181:15; 181:23-183:18; 184:21-195:15; 202:17-206:21; 207:5-212:3; 212:19-231:19);

- The procedures by which employee affiants prepare for and testify in collections matters, including discussions regarding specific civil actions. (Kohls Tr. pp. 87:4-14; 90:13-91:11);

- The level of compensation paid to employees of the Midland Defendants, and the specific performance criteria used in evaluating employees during their periodic evaluations. (Kohls Tr. pp. 51:14-57:2); and

- The names, residences, and backgrounds of a number of employee affiants, including information regarding their personal lives that has affected their tenure with the Midland Defendants, as well as the circumstances surrounding the termination of a particular employee. (Kohls Tr. pp. 68:2-77:21; 83:18-84:19).

(*See* Declaration of Gregory Call ¶¶ 5-14, attached as **Exhibit B**).

  Due to the highly-sensitive nature of the above information, access to the documents reflecting this information is restricted to employees, and often even among the employees of the Midland Defendants. (*Id.* at ¶ 15). The Midland Defendants also have internal policies and procedures regarding the maintenance of confidential and proprietary information to ensure that such information is not disclosed to third parties, including their competitors. *Id.* When in litigation, it is the Midland Defendants' general policy to designate deposition testimony on the foregoing subjects as confidential under the terms of an appropriate protective order. (*Id.* at ¶ 17). The Midland Defendants also restrict access to their facilities through key-card access, and the Defendants routinely execute non-disclosure agreements with third parties with whom the Defendants share specific information about their business. (*Id.* at ¶ 23).

  In response to the designation of the foregoing deposition testimony as confidential by the Midland Defendants, counsel for Plaintiff simply objected to each such designation, taking the expansive position that *nothing* discussed in Kohls's deposition is confidential or proprietary.

4

Under Local Civil Rule 37, counsel for the Midland Defendants certifies that it has attempted in good faith to resolve this issue, but that such attempts have failed.

## II. The Potential Harm to the Midland Defendants.

The confidential information at issue embodies a wealth of accumulated corporate knowledge and proprietary information concerning the Midland Defendants' debt collection system, training and compliance policies, customer base, employee evaluation and compensation process, and corporate strategy. The Midland Defendants have invested and continue to invest significant resources, many years, and countless hours of employee time developing and improving their procedures to achieve maximum possible accuracy of the debt collection system, an efficient workforce, increased productivity, and also to ensure prompt dispute resolution and legal compliance. (Ex. B at ¶ 19). These policies and procedures provide the Midland Defendants with a competitive advantage in the marketplace over its many competitors by ensuring compliance with applicable laws, maximizing collections, decreasing turnover, and minimizing legal and informal disputes with consumers. (*Id.* at ¶ 20). And, public disclosure of the foregoing confidential information about the Midland Defendants' collection policies and procedures would be invaluable to competitors attempting to build or refine a competing debt collection system at a fraction of the costs incurred by the Midland Defendants, thereby causing great harm. (*Id.* at ¶ 21); *see also Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (holding that disclosure of the technical aspects of products, licensing agreements, and marketing information may provide the party seeking disclosure a "competitive advantage").

Also, the Midland Defendants' prominent status in the highly-competitive debt collection industry – an industry which is highly-attuned to market research and intelligence - heightens the concern that its competitors will very likely gain access to any publicly-disclosed proprietary

information, and that these competitors will then use such information to gain an unfair competitive advantage in the marketplace. (Ex. B at ¶ 22); *accord VIA Techs., Inc.*, 198 F.R.D. at 530 ("The risk of potential injury is increased here because . . . Intel is already the dominant player in this highly competitive market.").

### Argument

I.  **Good Cause Exists for Maintaining the Confidentiality of the Challenged Deposition Testimony.**

There is good cause for maintaining the confidentiality of the deposition testimony of Kohls that has been designated as "confidential" by the Midland Defendants. For "good cause shown," a court may enter a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(1)(G). The United States Supreme Court has defined a "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) (quoting RESTATEMENT OF TORTS § 757, cmt. b (1939)). "On its face, the rule goes beyond trade secrets to provide protection for 'other confidential research, development, or commercial information'" as well. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2043 (2d ed. 1994).[3] In other words, materials do not necessarily have to reveal the "keys to a corporate kingdom" to merit confidential treatment; the rule requires only that the information at issue contain private, proprietary information. *See In re FedEx Ground Package Sys.*, 2010 U.S. Dist. LEXIS 21607, at *7 (N.D. Ind. Mar. 2, 2010) (allowing the parties to designate as "Confidential" discovery materials that were not "publicly available").

---

[3] The Protective Order covers each category of information under Rule 26(c)(1)(G). (Dkt. No. 37 at ¶ 2).

6

A showing of good cause requires the party seeking confidential treatment to "establish that the information sought is covered by the rule and that it will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). District courts assessing the existence of good cause should exercise their discretion in light of the facts and circumstances of the particular case. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Further, when a party has already produced information and seeks only to maintain its confidentiality, the party's burden of demonstrating good cause is tempered by its reliance on an agreed protective order. *See e.g., Tavoulareas v. The Washington Post Co.*, 111 F.R.D. 653, 658-59 (D.D.C. 1986). Indeed, because the "majority of information produced during the discovery process is never used at trial and has no impact whatsoever on the court's decision-making process," it is "during this pretrial discovery process that a party's interest in maintaining confidentiality of private information *is at its strongest*." *O'Malley v. Vill. of Oak Brook*, 2008 U.S. Dist. LEXIS 8763, at *5 (N.D. Ill. Feb. 6, 2008) (emphasis added).

> **A.** **There is Good Cause for a Protective Order as to the Confidential Testimony Regarding the Midland Defendants' Computerized Collections System.**

In her deposition, Kohls testified about the general operation of the Midland Defendants' computerized collections system, the specific software used by the Midland Defendants, and the meaning of certain codes that are input into the collections system. (*Id.* at ¶¶ 7,11). This debt collection system and the computer codes that are input into the Midland Defendants' computerized system have been researched, developed, and refined at substantial cost to the Midland Defendants over many years. (*Id.* at ¶ 19).

A number of courts, including the Fourth Circuit, have held that a computer system and information relating to it can constitute a trade secret. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 662-64 (4th Cir. 1993) (computer software, including source code and object code,

7

protected as trade secret); *Integrated Cash Mgmt. Servs. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2nd Cir. 1990) (design and "architecture" of computer system protected as a trade secret); *Dynamic Microprocessor Assocs. v. EKD Computer Sales*, 919 F. Supp. 101, 106 (S.D.N.Y. 1996) (computer source code protected as a trade secret); *Dickerman Assocs., Inv. v. Tiverton Bottled Gas Co.*, 594 F. Supp. 30, 35 (D. Mass. 1984) ("[T]he particular combination of procedures used in plaintiff's computer system, and the particular features within the system . . . are neither obvious nor easily duplicated. They constitute a trade secret.").

The Midland Defendants will suffer harm if the confidential information regarding its software and computerized collections system is publicly disclosed. (*See* Ex. B at ¶ 21). Conversely, Plaintiff will suffer no harm if this information, which was readily disclosed to him, is simply kept confidential. *See, e.g., Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-424 (S.D. Ind. 2001) ("The Court holds the documents in question fall within the meaning of Rule 26(c)(7), and that the potential dangers State Farm faces if a competitor gains access to its trade secrets and confidential information outweigh any legitimate interest one may possess in obtaining these documents. As a result, the Court finds that State Farm set forth good cause for the entry of a protective order."); *In re Motorsports Merchandise Antitrust Litigation*, 1998 U.S. Dist. LEXIS 22132, *4 (N.D. Ga. March 20, 1998) (finding that potential hardship to the plaintiffs, if any, was outweighed by the potential prejudice to the defendants and ordered entry of a protective order that included a "Highly Confidential" designation applicable to certain financial information). Hence, for good cause shown, such information should be maintained as confidential under the Protective Order.

B. **There is Good Cause for a Protective Order as to Testimony Regarding the Confidential Policy and Procedure Manuals and Training Materials.**

Additional deposition testimony designated as confidential details the employee training process at the Midland Defendants, as well as their affidavit execution policies and process, including the procedures used by the Midland Defendants to prosecute collections actions. (Ex. B at ¶¶ 8-9, 11-12). The unprotected disclosure of this information would create serious risks of reverse engineering. (*Id.* at at ¶ 21.) The Midland Defendants' competitors would benefit greatly by gaining access to detailed information about the Midland Defendants' debt collection policies and procedures – information that the Midland Defendants have spent years compiling and significant amounts of money to develop. (*Id.* at ¶¶ 20-22). In contrast, Plaintiff will suffer no evident prejudice if such information simply remains confidential.

Accordingly, courts have recognized that information regarding the internal policy and procedures of a competitive business constitutes a trade secret. *See, e.g., Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001) (holding that internal procedure manuals containing mix of secret and non-secret information were trade secrets); *Check 'N Go of Virginia, Inc. v. Laserre*, 2005 WL 1926609, at *1-3 (W.D. Va. Aug. 9, 2005) (holding that internal policy and procedure manuals developed at substantial expense and protected from outside disclosure were trade secrets); *Hamilton*, 204 F.R.D. at 423-24 (defendant's claim handling policy and procedure manuals were trade secrets and could be used by the parties only for purposes of the litigation).

Moreover, courts have ruled that there is good cause for granting protective orders covering the same types of information being challenged here. *See, e.g.*, Letter Order in *Morris v. Trans Union, et al.*, No. 2:05-cv-04439 (E.D. Pa. Feb. 28, 2006) (attached as **Exhibit C**) (granting a protective order covering Admin Handbook); Order in *Fields v. Experian Information Solutions, Inc.*, No. 2:02-cv-00271 (N.D. Miss. June 20, 2003) (attached as **Exhibit**

9

D) (granting a protective order covering "policy and procedure manuals"); *Adams v. Allstate Insurance Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) (the court held that "Allstate's claims manuals and company policies may include confidential information," and ordered plaintiff to keep the information confidential."); *Jones v. Nationwide Insurance Co.*, 2000 U.S. Dist. LEXIS 18823, at *11-12 (M.D. Pa. 2000) (the court directed that "all such documentation, including all company policies and all claims manuals, are to be kept confidential, for the eyes of plaintiff's counsel only."). Therefore, testimony regarding this information has been properly designated as confidential and should be maintained as such.

      **C.**    **There is Good Cause for a Protective Order as to the Remaining Categories of Deposition Testimony That Have Been Designated as Confidential.**

Kohls also testified about a number of other discrete matters that have been designated as confidential by the Midland Defendants. These matters include: (1) the identity of third-party clients that have audited the Midland Defendants' affidavit process; (2) the specific organization and structure of the Midland Defendants - on a company-wide basis and within the St. Cloud, Minnesota office; (3) employee compensation and the performance criteria used in internally evaluating employee affiants; and (4) personal information regarding the backgrounds and lives of non-party employees, including the circumstances regarding their hiring and/or departure from the Midland Defendants' employ. (Ex. B at ¶¶ 6, 10, 13-14).

All such information has been properly designated as confidential. First, information regarding the identity of the Midland Defendants' key customers, which the Midland Defendants have not made public out of a concern for the disruption of such established relationships by the Midland Defendants' many competitors, is properly deemed confidential. *See, e.g., Gulotta v. GE Capital Modular Space*, 2005 U.S. Dist. LEXIS 11988, at *9 (E.D. La. May 31, 2005) ("Based on the plaintiff's request for confidential information, which may include a

comprehensive listing of the names and addresses of GE's clients, the Court finds that GE has shown good cause for a protective order."). Furthermore, detailed information regarding the Midland Defendants' corporate structure (both throughout the company and within the St. Paul office), which extends well beyond that information which is made public, is proprietary, and its disclosure would provide competitors with unfair insight into the Midland Defendants' efficient business model. *See In re FedEx Ground Package Sys.*, 2010 U.S. Dist. LEXIS 21607, at *7 (non-public corporate information was properly designated as "confidential").

Likewise, information regarding the compensation of employee affiants and the criteria used to evaluate such employees has been developed and refined by the Midland Defendants and could be used by competitors to their advantage. *Id.; see also United States DOT ex rel. Arnold v. CMC Eng'g*, 2011 U.S. Dist. LEXIS 52072, at *6-7 (W.D. Pa. May 13, 2011) (holding that "confidential, non-public" information regarding "individual employees, trade secrets, pricing information, and business processes" was subject to the protective order). Finally, personal information regarding the background and job transitions of a number of employees should be kept confidential for the purpose of protecting the privacy of those individuals. *See, e.g., Horton v. 48th Dist. Court*, 2006 U.S. Dist. LEXIS 23990, at *7 (E.D. Mich. Feb. 21, 2006) (holding that there is a "recognized a privacy interest in the personnel files of nonparties, which is commonly guarded through the entry of a protective order"). All of this information unquestionably is confidential and has been properly designated by the Midland Defendants as such.

**II.     There Has Been no "Waiver" by the Midland Defendants of the Discovery Materials That Have Been Designated as Confidential.**

The Midland Defendants anticipate that Plaintiff may contend that the disclosure of certain of the above information in other actions without an explicit reservation of confidentiality has somehow vitiated a claim for confidentiality here. However, even if factually true, such a

claim has been squarely rejected by the courts to consider the issue. *See, e.g., Hamilton*, 204 F.R.D. at 424 (S.D. Ind. 2001) ("The fact that State Farm's policy manuals have been circulated throughout the legal community pursuant to discovery requests does not constitute a waiver by State Farm to its confidentiality."); *cf. Rambus, Inc. v. Infineon Tech.*, 222 F.R.D. 280 (E.D. Va. 2004) ("It is clear, however, that a 'judicially compelled' disclosure is not a voluntary one.") (citing *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 63 n.2 (D.D.C. 1984)).

In fact, consistent with the designation of many of the documents and information at issue as "confidential" and/or "proprietary" well prior to the commencement of this action, the Midland Defendants have taken measures to ensure the confidentiality of the contested information, which include limiting the dissemination of such materials even within the Midland Defendants themselves and routinely seeking protective orders to maintain the confidentiality of its corporate information when engaged in litigation. (Ex. B at ¶¶ 15-17, 23). These facts make plain the Midland Defendants' consistent intention to keep such information confidential.

These facts belie any possible contention of waiver, and there has been no waiver of confidentiality sufficient to overcome the demonstrated good cause to maintain the designated information as confidential.

## Conclusion

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. respectfully request that the Court: (1) overrule the objections of Plaintiff's counsel to the Midland Defendants' confidentiality designations; (2) order that the deposition testimony described herein be maintained as confidential under the Protective Order; and (3) grant them such other and further relief as the Court deems just and proper.

**ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGEMENT, INC.**


By: /s/ Timothy J. St. George
                   Of Counsel

David N. Anthony (VSB No. 31696)
Timothy St. George (VSB No. 77340)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile:  (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:   (757) 687-1504
john.lynch@troutmansanders.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

> Leonard A. Bennett, Esq.
> Susan M. Rotkis, Esq.
> Consumer Litigation Associates, P.C.
> 12515 Warwick Boulevard, Suite 100
> Newport News, VA 23606
> Telephone: (757) 930-3660
> Facsimile: (757) 930-3662
> Email: lenbennett@cox.net
>
> Matthew J. Erausquin, Esq.
> Consumer Litigation Associates, P.C.
> 1800 Diagonal Road, Suite 600
> Alexandria, VA 22314
> Telephone: (703) 273-6080
> Facsimile: (888) 892-3512
> Email: matt@clalegal.com
>
> *Counsel for Plaintiff*

> /s/ Timothy J. St. George
> Timothy J. St. George (VSB Bar No. 77349)
> *Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> Richmond, VA 23219
> Telephone: (804) 697-1254
> Facsimile: (804) 698-6013
> tim.stgeorge@troutmansanders.com