FEB-28-2006  18:35        JUDGE SHAPIRO                                       215 580 2146   P.02/02
Case 3:07-cv-00486-REP   Document 35-6   Filed 01/29/08   Page 2 of 21 PageID# 191

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

CHAMBERS OF
NORMA L. SHAPIRO
JUDGE

10614 UNITED STATES COURTHOUSE
INDEPENDENCE MALL WEST
PHILADELPHIA, PENNSYLVANIA 19106
(215) 597-9141

February 28, 2006

**VIA FACSIMILE ONLY**
John C. Eustice, Esquire
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA 15219
*Attorney for Experian*

RE:   <u>Morris v. Trans Union, et al., Civil Action No. 05-4439</u>

Dear Mr. Eustice:

I have considered your motion for a protective order, and plaintiff's response in opposition. I have also reviewed the confidential documents at issue, with proposed redaction in yellow highlight.

In your motion, you argue that Experian's document production should be governed by a protective order. You also argue that Experian should be permitted to redact certain information from the confidential documents, notwithstanding the protective order. The justification you provide for both types of protection is: (1) to prevent Experian's competitors or co-defendants from "reverse engineering" Experian's valuable code; and (2) to prevent identity theft of plaintiff's personal information.

I agree that Experian's documents should be protected by a protective order. However, I see no justification for permitting Experian to redact information from its documents. With a protective order in place, Experian's competitors and co-defendants will not have access to the confidential documents and thus reverse engineering can not occur. Further, a protective order would protect against identity theft.

Please submit a revised protective order that does not provide for redaction of already confidential documents on or before <u>March 10, 2006</u>. Additionally, as discussed during our most recent telephone conference, please ensure that the revised protective order: (1) applies to pre-trial matters only; (2) does not cover documents available to the general public; and (3) may be changed by the court upon notice to the parties with an opportunity to be heard on the record.

Sincerely,

*Norma L. Shapiro*

cc:   Mohammad A. Ghiasuddin, Esq.
      Mark D. Mailman, Esq.
      John Soumilas, Esq.
      Bruce S. Luckman, Esq.
      Timothy P. Creech, Esq.
      Catherine Olanich Raymond, Esq.
      Deborah R. Erbstein, Esq.
      Robert S. Bernstein, Esq.

**EXHIBIT**
C

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATRINA L. MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 05-4439 |
| | ) | |
| TRANS UNION, LLC et al., | ) | |
| Defendants. | ) | |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
## MOTION FOR ENTRY OF PROTECTIVE ORDER

### INTRODUCTION

Defendant Experian Information Solutions, Inc. ("Experian") uses a unique and highly sophisticated computer system to collect, manage, and safeguard credit information on more than 200 million consumers. Over several decades, Experian has invested tens of millions of dollars and countless hours of employee time developing its system to achieve maximum possible accuracy of consumer credit information. The system embodies a wealth of accumulated knowledge and experience, and is the "Crown Jewel" of Experian's business. Indeed, it *is* Experian's business.

Plaintiff seeks the unprotected disclosure of some of the most highly confidential, proprietary documents relating to Experian's system, including manuals of system codes and reports revealing the system's structure and architecture. Experian has agreed in good faith to produce relevant portions of almost all of those documents, but needs the protection of the Proposed Protective Order. *See* Proposed Protective Order, attached at Ex. A; Privilege Log, attached at Ex. C. As explained below and in the Declaration of David A. Browne, attached hereto at Exhibit B, there is clearly good cause for the order.

There is a compelling need for additional protection. First, the disclosure of documents relating to Experian's system might facilitate identity theft — a growing national problem. Armed with information about the inner workings of Experian's system, identity thieves might be able to gain unauthorized access to the credit information concerning millions of consumers. *See* Declaration of David A. Browne ("Browne Decl."), Ex. B, ¶ 50. They might also be able to use the information to hide evidence of their crimes from their victims, who often detect the identity theft by observing the imposter's activity on their credit reports. This danger has grown more serious with the rise of well-funded and sophisticated criminal syndicates specializing in identity theft. Those syndicates would undoubtedly use information concerning Experian's system to further their crimes against consumers.

Second, disclosure of the documents threatens Experian's competitive advantage. *See id.* ¶¶ 48-49. Information about the structure, logic, and codes of Experian's system is invaluable to anyone attempting to reverse engineer the system. Experian's competitors and companies hoping to enter the credit reporting industry could build or refine a competing system at a small fraction of the costs incurred by Experian. They would unfairly receive the benefits of Experian's investment and hard work, without having to incur the costs.

For these and other reasons, there is good cause for the Proposed Protective Order and the other protections discussed below.

## BACKGROUND

### A.  *Experian Reports Credit Information Originated by Others.*

Experian is a consumer credit reporting agency governed by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*  Experian collects credit information on more than 200 million consumers that is originated by others, such as information about the balances on a consumer's credit card accounts.  Experian provides that information to parties for credit-related transactions. Experian does not make loans, decide who should receive credit, or set loan terms.

Experian has invested huge sums of money and countless hours of employee time to develop its unique and sophisticated computer system.  That system gives Experian a major advantage in the highly competitive credit reporting marketplace.  *See* Browne Decl., ¶ 48. Experian diligently guards against disclosure of information relating to the system.  Among other things, Experian has introduced a number of safeguards, including the addition of an information security department within Experian.  Experian also restricts access to sensitive documents within its own walls.  In fact, documents containing secret information, such as the information at issue here, are given confidential status at Experian.  Access to this information is permitted only to a select few employees who have an absolute need to know.  *See id.*

### B.  *The National Problem Of Consumer Identity Theft.*

Identity theft is a crime in which an imposter obtains a consumer's personal information in order to "take over" the victim's existing credit accounts, to open new accounts in the victim's name, or to buy goods and services in the victim's name.  The problem of identity theft has become front-page news, attracting the attention of Congress, the President, and federal regulators.  Earlier last year, the Chairman of the FTC testified before a U.S. Senate Committee that nearly 10 million people were victims of identity theft in a recent one-year period.  *See* Federal Trade Commission release, "FTC Testifies on Data Security and Identity Theft," (March

10, 2005), attached at Ex. E.[1]  In July 2004, President Bush announced that identity theft cost the

nation's businesses nearly $50 billion due to fraudulent transactions in 2003.  *See* Remarks by

President Bush at Signing of Identity Theft Penalty Enhancement Act (July 15, 2004), attached at

Ex. F.[2]  The identity theft problem has grown even more serious with the emergence of

organized crime syndicates who engage in identity theft on a massive scale.  Those syndicates

actively seek to obtain information about how to circumvent Experian's system, hoping to learn

information about potential victims or how to hide evidence of their crimes.  As explained

below, identity thieves could use the documents at issue here to steal the credit information of

millions of consumers or to hide their crimes.

### C.    *The Danger Posed By Competitors Or Potential Rivals.*

Experian is part of the highly competitive consumer credit reporting industry.  Experian

competes with two other national credit reporting agencies and faces competition from numerous

regional competitors, some of which are working toward becoming national credit reporting

agencies.  As discussed below, Experian's competitors could use information about Experian's

system to update their own systems, thus destroying or eroding the business advantage that

Experian has spent many years and millions of dollars creating.  *See* Browne Decl., ¶ 48.

### D.    *Plaintiff's Request for the Confidential Documents.*

Plaintiff filed this suit on August 19, 2005, alleging that Experian violated the FCRA by

reporting inaccurate information regarding several of Plaintiff's credit accounts.  Specifically, she

claims that Experian reported a bankruptcy in the Southern District of Florida, a foreclosed Dime

Savings Bank account, and a foreclosed National City Mortgage account that Plaintiff claims do

---

[1]  *See* http://www.ftc.gov/opa/2005/03/idthefttest.htm.

[2]  *See* http://www.whitehouse.gov/news/releases/2004/07/20040715-3.html.

not belong to her.[3]  Plaintiff further alleges that she disputed these accounts with Experian in

July 2005, and that Experian did not correct the information.  As a result, Plaintiff claims that she

has been unable to secure credit of any kind, resulting in her inability to purchase a car and to

work for the employer of her choice.  In July 2005, Plaintiff contacted Experian via the Internet

and merely added consumer statements to the disputed accounts.  She did not initiate a dispute.

Thus, Plaintiff never requested a reinvestigation of the disputed accounts and her claims that

Experian failed in its duty to reinvestigate under § 1681i must fail.  It is in this context that this

Motion for Protective Order should be considered.

Plaintiff served her written discovery on October 31, 2005.  That discovery, however,

was premature because the parties had not yet conferred as required by Federal Rule of Civil

Procedure 26(f).  The parties conducted their Rule 26(f) conference on November 28, 2005, and

Experian agreed to respond to Plaintiff's discovery on or before December 23, 2005.  *See*

11/29/2005 e-mail to J. Eustice, attached at Ex. D.

In response to Plaintiff's 58 Requests for Production, Experian provided nearly 50 pages

of responsive documents.  Experian further responded to Plaintiff's 89 Requests for Admissions

and 23 Interrogatories.  Plaintiff's counsel first contacted Experian concerning the production on

Wednesday, January 4, 2006, and inquired about the availability of certain highly confidential

documents, including the Long Admin.  Pursuant to this Court's Order filed on December 20,

2005, and revised by this Court's Order filed on December 28, 2005, Experian submits this

Motion for Protective Order along with the relevant confidential documents for *in camera*

inspection.  Experian currently is awaiting Plaintiff's responses to its discovery requests served

on December 30, 2005.  Experian and Plaintiff are also discussing settlement.

---

[3] For simplicity's sake, these accounts will be referred to herein as "the disputed accounts."

### E.    *The Confidential Documents at Issue*

#### (1)    Documents Containing Confidential Codes & Information

Four of the relevant confidential documents sought by Plaintiff include Plaintiff's

personal identifying information. These are the: (1) Administrative Report; (2) Long

Administrative Report ("Long Admin"); (3) Dispute Response (or "D/R") Logs; and (4)

Disclosure Request Logs (collectively, the "Confidential Code Documents").

*The Administrative Report.* The Administrative Report, Bates-labeled EXP-MORRIS-

0054 through EXP-MORRIS-0058, is a coded document generated by Experian's system.

Among other things, the Administrative Report contains the name variations, social security

numbers, addresses, and credit accounts appearing in Plaintiff's file as of the time the Admin

Report was created. *See* Browne Decl., ¶ 6. They also include the codes created by Experian's

database to associate identification information with Plaintiff's credit file. *See id.* This internal

report also contains information that is not included in the credit reports Experian provides to

third parties, nor in the file disclosures Experian has previously provided to Plaintiff. It is not

created in the normal course of business, but is generated from Experian's computer systems for

research regarding a specific consumer. Only a very limited number of trained Experian

employees may create an Administrative Report. The Administrative Report at issue here was

generated subsequent to Plaintiff's filing of this lawsuit. *See id.* ¶¶ 5-8.

Confidential system codes appear throughout Plaintiff's Administrative Report. These

codes include: (1) a confidential personal identification number (or PIN) which is unique to

Plaintiff and is generated by Experian's system using Plaintiff's personal identifying information

as reported to Experian and existing in Experian's consumer credit database; (2) confidential

computer-generated "Name" and "Address" codes; (3) demographic information, whose codes

reflect when information was reported to Experian and by whom; (4) coded social security

information; (5) coded tradeline information for 29 tradelines including the creditor, balance date, monthly payment amount, payment level, account condition, payment status, Experian's internal subscriber number, the kind of business code, the type of account, the terms of credit, the Equal Credit Opportunity Act designation, the account open date, the actual amount of the last payment, any present delinquency, the maximum credit amount, a coded 13-month payment history, the account number, the last payment date, the number of months reviewed, and the number of previous delinquencies; (6) indicators reflecting whether each tradeline will or will not be displayed on a credit report to a third party or on a disclosure to a consumer; and (7) a list of inquiries, including, *inter alia*, a code representing the type of permissible purpose the inquiring party had in accessing the file. *See id.* ¶¶ 9-23.

 ***The Long Admin.*** The same codes, and certain others, are included in the Long Admin, which is Bates-labeled here as EXP-MORRIS-0059 through EXP-MORRIS-00071. The Long Admin is a coded document generated by Experian's system and contains information specific to Plaintiff. It is not part of the credit reports provided to third parties, nor part of the file disclosures previously sent to Plaintiff. It is not generated in the ordinary course of Experian's business. Unlike the Administrative Report, the Long Admin is only rarely helpful to investigate a consumer dispute in litigation. *See id.* ¶¶ 24-27.

 The Long Admin contains the exact same information as the Administrative Report, except for two additional and highly sensitive types of information. The first is the tradeline "arrays," appearing beneath each tradeline or account. The arrays depict: (1) Experian's coded interpretation of the status of the tradeline, as reflected in Experian's records from time to time; (2) the date the status information was recorded by Experian; and (3) the period in time that the status information applied to the account. A single tradeline typically will have multiple array

lines, reflecting information recorded by Experian for a period of time before the Long Admin

was generated. Because creditors may report information to Experian differently, the array will

not necessarily include all historical status information for each tradeline. *See id.* ¶¶ 28-29.

The second category of highly sensitive codes unique to the Long Admin is the Name

"SCORE" codes. The Name "SCORE" displays the results of a comparison conducted at the

time a Long Admin is pulled, between certain information on the Long Admin itself. In essence,

they depict the identifying elements considered by Experian's computer matching system to

determine whether account information received from a creditor relates to a particular consumer.

This matching system is one of the most critical components of Experian's business. *See id.*

¶¶ 30, 53. Name "SCORE" codes and tradeline arrays exist only in Experian's consumer credit

database until and unless a Long Admin is created. *See id.* ¶¶ 28, 30. The "SCORE"

information depicts the identification information appearing in the consumer's file at the time a

Long Admin is created. It does not depict historical identification information associated with

any particular tradeline.

*The Dispute Response Log.* The "Dispute Response Log" ("D/R Log") is the third

category of Confidential Code Documents that Experian seeks to protect. Here, two documents

are in this category, bearing the Bates-labels EXP-MORRIS-0072 to EXP-MORRIS-0073.

Among other things, the D/R Logs contain identification information and account information

for accounts at issue as that information appeared at the time of the inquiry. *See id.* ¶ 31. Like

the Administrative Report, the D/R Logs are not provided to consumers or to third parties who

request a consumer's credit information. Nor are they generated in the ordinary course of

business. The D/R Logs are used for research purposes and may be generated only by a very

limited number of trained Experian employees. *See id.* ¶¶ 31-33.

Confidential codes appear throughout Plaintiff's D/R Logs. These include the confidential personal identification number (or PIN) unique to Plaintiff, the confidential computer-generated "Name" and "Address" codes, coded identifying and update information pertaining to Plaintiff's disputed tradeline, and a report, or "CAPID," number generated by Experian's computer system when Plaintiff's dispute was entered. *See id.* ¶¶ 34-39.

*Disclosure Request Logs.* The fourth category of Confidential Code Documents that Experian seeks to protect is the "Disclosure Request Logs." Two Disclosure Request Logs, Bates-labeled EXP-MORRIS-0076 to EXP-MORRIS-0077, pertain to Plaintiff in this case. Among other things, the Disclosure Request Logs contain identification information and a brief history of consumer credit disclosures issued to Plaintiff. *See id.* ¶¶ 40-42. Like the other Confidential Code Documents, the Disclosure Request Logs are not provided to consumers or to third parties who request a consumer's credit history information. The Disclosure Request Logs can be generated from Experian's computer systems only by a very limited number of trained Experian employees, and they are used for research purposes regarding a specific consumer. Here, Experian generated the Disclosure Request Logs at issue in response to Plaintiff's contact in December 2001 and in response to the Plaintiff's lawsuit. *See id.*

The confidential codes appearing in Plaintiff's Disclosure Request Logs include the confidential personal identification number (or PIN) unique to Plaintiff and the report, or "CAPID," numbers generated by Experian's computer system each time a disclosure was requested. *See id.* ¶¶ 43-44.

(2)     **Confidential Internal Policy and Procedure Manuals**

Plaintiff has also requested certain documents identified collectively as the "Confidential Policy and Procedure Manuals." The relevant confidential materials include the Administrative

Handbook (Bates-labeled EXP-MORRIS-0078 to EXP-MORRIS-0116), and the Mixed File

Procedures Participant Guide (Bates-labeled EXP-MORRIS-0117 to EXP-MORRIS-0156).

Experian seeks to protect the Confidential Policy and Procedure Manuals.  These

documents contain proprietary information explaining how Experian maintains its credit

reporting procedures.  If publicly disclosed, these documents would provide the reader with a

"road map" for circumventing Experian's policies and procedures, designed to assure maximum

possible accuracy of consumer credit information.  They would also enable current or potential

competitors to enhance or develop a rival system, benefiting from the decades of work and

millions of dollars that Experian has invested in its technology.  The Admin Handbook contains

a listing of the codes that appear in both the Admin Report and the Long Admin.  Its contents

would show the reader how to read and interpret every one of the confidential codes displayed in

the Long Admin.  The Mixed File Procedures Participant Guide explains Experian's detailed

procedures for handling possibly mixed files, including numerous screen shots showing exactly

what appears on the computer screen when an Experian employee processes a consumer's file.

If produced unprotected, Experian's competitive advantage gained through years of developing

and enhancing its sophisticated policies aimed at achieving maximum possible accuracy and

completeness in the reporting of credit information -- policies that provide a tangible benefit to

Experian, its clients, and consumers -- would be lost.  *See id.* ¶¶ 58, 60.

Because of the highly proprietary information contained in the Policy and Procedure

Manuals, Experian strives to protect these documents and avoids producing them without a

demarcation of confidentiality.  *See id.* ¶ 66.

## STANDARD FOR ISSUANCE OF A PROTECTIVE ORDER

The Federal Rules of Civil Procedure empower this Court to issue protective orders

"which justice requires to protect a party or person from annoyance, embarrassment, oppression,

or undue burden or expense." *See* Fed. R. Civ. P. 26(c). This rule permits district courts "to issue protective orders constraining -- in any of a variety of ways -- the release of sensitive information." *Pearson v. Miller*, 211 F.3d 57, 72 (3d Cir. 2000). As the Third Circuit has held, a protective order should be entered where the party seeking the order shows good cause by demonstrating a particular need for protection. A showing of good cause requires the party seeking confidential treatment of the documents or information at issue to describe the injury with specificity. *See id.* at 72 -73 (citing cases); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) ("Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury."). In appropriate circumstances, a district court may issue an umbrella protective order to protect a class of documents after a threshold showing by the party seeking protection. *See Pearson*, 211 F.3d at 73.

## ARGUMENT

### A.     *There Is Good Cause For A Protective Order As To The Confidential Code Documents.*

The unprotected production of the Confidential Code Documents creates the risk that identity thieves would be able to gain unauthorized access to the credit histories of millions of consumers or to hide evidence of their crimes. In fact, disclosure of the documents would also heighten the risk that *Plaintiff's* identity would be stolen. The Confidential Code Documents contain Plaintiff's full name, social security number, address, telephone number, and credit information.

The unprotected production of the documents also creates a serious risk that Experian's current and would-be competitors might be able to reverse engineer Experian's unique system, thus destroying Experian's competitive advantage and receiving the benefits of Experian's huge investment for free. *See* Browne Decl., ¶¶ 48-55. The Confidential Code Documents reveal

highly confidential, proprietary information about the design and architecture of Experian's vast database. Each additional internal report is a new picture that would provide new clues to the rules of Experian's matching system and Experian's design architecture overall.[4] This is particularly true of the Long Admin, which includes information regarding the data fields Experian uses to collect and store information. Experian's competitors could use that information to upgrade their systems. *See id.*

Experian will suffer serious, irreversible harm if the Confidential Code Documents are publicly disclosed. Thus, Experian has good cause for requesting this protective order. *See Pearson*, 211 F.3d at 73. Moreover, Experian does not seek to restrict Plaintiff's use of the information in this litigation, but only seeks to restrict its use for purposes unrelated to and outside this litigation. Accordingly, Plaintiff will not suffer any prejudice by the entry of this Order. *See In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1033 (8th Cir. 1991).

### B.   *There Is Good Cause For A Protective Order As To The Policy And Procedure Manuals.*

As with the Confidential Code Documents, the unprotected disclosure of the Confidential Policy and Procedure Manuals create serious risks of identity theft and reverse engineering. As noted above, the Admin Handbook shows how to interpret the confidential codes in the Long Admin. The Mixed File Procedures Participant Guide explains Experian's detailed procedures for handling every type of mixed file dispute that might arise, including numerous screen shots showing exactly what appears on the computer screen when an Experian employee processes a consumer's dispute.

---

[4] It is not enough simply to redact codes from these reports. The very structure of the information on these reports, in conjunction with all of the identifying information about a consumer, reveals information about the variables integrated into Experian's sophisticated matching system and reflects the trade secrets of how Experian's system works.

The confidentiality of Experian's Confidential Policy and Procedure Manuals is necessary to protect consumers. Disclosure of the manuals would show identity thieves how Experian's system works, creating a high risk that those individuals would be able to develop methods to circumvent Experian's procedures. Ultimately, this would damage the integrity of the credit reporting industry, making it more difficult for consumers who pay their bills on time to obtain credit. *See* Brown Decl., ¶¶ 63-65. Disclosure also would threaten Experian's competitive advantage, for Experian's competitors would benefit substantially by gaining access to information regarding Experian's system. *See id.* ¶¶ 58-59.

As with the Confidential Code Documents, Experian will suffer serious, irreversible harm if the Confidential Policy and Procedure Manuals are disclosed without benefit of a protective order. Accordingly, the good cause requirement has been satisfied and the Proposed Protective Order should be entered. *See Pearson*, 211 F.3d at 72-73.

### C.   *Protections Sought for Categories of Documents*

Although each of the six categories of documents contains confidential information, the protections required for these documents differ. The Third Circuit has affirmed the district courts' discretion to impose any of a variety of methods for protecting confidential information. *See Pearson*, 211 F.3d at 73 ("Rule 26(c) provides district courts with the power to formulate a detailed solution that reflects the concerns of particular individual disputes."). Thus, this court may enter a protective order that encompasses "any of a broad range of requirements," including: (1) the "terms and conditions" pursuant to which disclosure may be arranged; (2) that the scope of the disclosure be "limited to certain matters"; and (3) that disclosure "be conducted with no one present except persons designated by the court." *Id.*

Here, Plaintiff has represented to Experian that she needs the documents to facilitate settlement discussions. *Cf. Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 788 (3d Cir. 1994)

("[I]f a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting ... an order of confidentiality."). Although neither Plaintiff nor Experian had time to consider agreeing to a Stipulated Protective Order, Plaintiff's counsel has in like cases agreed to such a Protective Order, thus demonstrating his agreement that confidential treatment of these documents is appropriate. *See, e.g., Johnson v. Experian Info. Solutions, Inc.*, E.D.Pa. No. CV-05-2057 (stipulated protective order substantially similar to the order being sought in this case entered Dec. 14, 2005), attached at Ex. G. Indeed, Plaintiff's counsel's only recent challenge to confidential treatment of these documents was heard and rejected earlier this year. *See Vidal v. Experian Information Solutions, Inc.*, E.D. Pa. No. CV-04-3867 (order granting Experian's motion for protective order because "there would be a competitive disadvantage to Experian if these documents were in the public domain") (entered Feb. 3, 2005), attached at Ex. H.[5]

<b>(1)     Confidential Treatment Should Be Granted For The Administrative Report, D/R Logs, and Disclosure Request Logs.</b>

In prior cases, Experian has designated each of these documents as "Confidential" and produced them to parties upon the entry of an appropriate protective order. Experian also has requested, and courts have entered orders endorsing, the following protective measures for these documents: (1) to the extent that any motions, briefs, pleadings, deposition transcripts, or other papers to be filed with the Court incorporate these documents, the party filing such papers shall do so under seal and designate such materials, or portions thereof, as "Confidential;" (2) the documents shall not be used for any business, commercial or competitive purposes, or for *any* purpose other than the preparation and trial of that lawsuit; (3) the documents shall not be

---

[5] In the *Vidal* matter, only the Administrative Report, Dispute Response Log, Disclosure Request Log, and Transaction Logs were at issue.

disclosed to any person other than the Court and its officers, parties to the litigation, counsel for

the parties, fact witnesses who need the information, and Experian employees without Experian's

prior written consent; and (4) all documents shall be returned to Experian within 60 days of the

end of the litigation.

As noted above, these documents contain not only confidential codes that could be of use

to those attempting to reverse engineer or "to compromise" Experian's consumer credit database,

but also Plaintiff-specific information that could be used to steal Plaintiff's identity.

Accordingly, Experian seeks the protections granted by courts in previous cases for these three

documents.

**(2)    "Heightened" Confidential Treatment Should Be Granted for the Long Admin.**

The Long Admin contains each and every one of the confidential codes included in the

Administrative Report, which courts consistently have found to be deserving of confidential

treatment. The risks of reverse engineering and misuse by identity thieves are even greater as to

the Long Admin because the document contains tradeline arrays and Name "SCORE"

information, two highly critical components of Experian's system and one of Experian's major

competitive advantages. Heightened confidential treatment of the Long Admin is plainly

appropriate. First, most of the information that Plaintiff claims to seek can be found in the

Administrative Report, which will be produced in full upon entry of an appropriate protective

order. Second, the Name "SCORE" codes have no relevance to this case. It is not possible to

review a Name "SCORE" to determine the identification elements that accompanied account

information sent by a creditor and used by Experian to "make a match"; this information, if it

exists, is more likely to be found on the Administrative Report itself. Even David Browne, who

has conducted extensive research related to computer matching issues, does not believe Name

"SCORE" information useful to his investigations. *See* Browne Decl., ¶ 30. Finally, of the nine

tradelines found in Plaintiff's Long Admin, Plaintiff complains that Experian reported only three

accounts inaccurately.

Accordingly, Experian requests an Order permitting it to provide Plaintiff's Attorney

with the Long Admin pursuant to the four protective measures listed in conjunction with the

other Confidential Code Documents (*see supra*, section C(1)). Experian further requests that the

Order approve these additional restrictions: (1) redaction of all Name "SCORE" codes;

(2) redaction of all tradeline arrays except those related to the three disputed accounts;

(3) limitation of production to Plaintiff's counsel *only*, and notation on each page of the

document reading "Confidential - Plaintiff's Attorney's Eyes Only."

### (3)   Confidential Treatment Sought for Relevant Portions of Mixed File Procedures Participant Guide.

In the past, Experian has produced only those portions of the Mixed File Procedures

Participant Guide relevant to the issues in the particular case. Each produced page has been

clearly marked "Confidential." In this case, the issue is simple: Did Experian adhere to its

policies and procedures concerning mixed files when providing consumer credit reports relating

to Plaintiff to third parties? Accordingly, Experian seeks to produce only those portions of the

Mixed File Procedures Participant Guide related to this question. The remainder of the

document, which is 40 pages long, is wholly irrelevant to the Plaintiff's claim -- and,

consequently, to any issues that might legitimately arise in settlement discussions. In addition,

Experian requests an Order permitting it to provide Plaintiff with the relevant portions of the

Mixed File Procedures Participant Guide pursuant to the four protective measures listed in

conjunction with the four Confidential Code Documents discussed in section (1). *See supra*,

section C(1).

(4)   **Heightened Confidential Treatment Should Be Granted For the Admin Handbook.**

As with the Long Admin, the disclosure of the Admin Handbook without additional protection will create serious risks of identity theft and reverse engineering. The Admin Handbook shows how to interpret the confidential codes in the Admin Report and the Long Admin. Disclosure of this information would show identity thieves how Experian's system works, creating a high risk that those individuals would be able to develop methods to circumvent Experian's procedures. Ultimately, this would damage the integrity of the credit reporting industry, making it more difficult to detect and remedy identity theft after it has taken place. *See* Brown Decl., ¶¶ 63-65. Disclosure also would threaten Experian's competitive advantage, for Experian's competitors would benefit substantially by gaining access to information regarding Experian's system. *See id.* ¶¶ 61-62.

In an effort to balance Plaintiff's potential need for information with Experian's interest in preserving the confidentiality of its critical system codes, Experian proposes that it produce *only* those portions of the Long Admin that explain what the confidential codes mean. The remainder of the document, which is nearly 40 pages long, is wholly irrelevant to this case or any issue that might legitimately arise during settlement negotiations. Accordingly, Experian requests an Order permitting it to provide Plaintiff's Attorney with these relevant portions of the Admin Handbook pursuant to the four protective measures listed in conjunction with the Confidential Code Documents. *See supra*, section C(1). Experian further requests that the Order limit the production of this document to Plaintiff's counsel *only*, and that Experian be permitted to note on each produced page of the document, "Confidential - Plaintiff's Attorney's Eyes Only."

## CONCLUSION

Experian has complied with all deadlines in this matter and is merely seeking to enforce its long-standing policy of not producing confidential documents containing proprietary, trade secret information, until and unless an appropriate protective order is in place. Good cause exists for this Court to enter the Proposed Protective Order attached at Exhibit A. Accordingly, Experian respectfully requests that Experian's Motion for Protective Order be granted.

Dated: January 9, 2006                    Respectfully submitted,


                                          /s/ John C. Eustice
                                          John C. Eustice
                                          Jones Day
                                          500 Grant Street, Suite 3100
                                          Pittsburgh, PA  15219
                                          (412) 391-3939

                                          Mohammad A. Ghiasuddin
                                          Kaplin Stewart Meloff Reiter & Stein
                                          350 Sentry Parkway
                                          Building 640, P.O. Box 3037
                                          Blue Bell, PA  19422-0765
                                          (610) 260-6000

                                          Counsel for Defendant
                                          EXPERIAN INFORMATION SOLUTIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>9th</u> day of January, 2006, a copy of the foregoing was served

via facsimile and U.S. mail, postage prepaid, upon the following:

Mark D. Mailman, Esq.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110

***Attorney for Plaintiff***

Catherine O. Raymond
1880 JFK Boulevard, 10th Floor
Philadelphia, PA  19103

***Attorney for Equifax Information
Services, Inc.***

Bruce S. Luckman
Christopher N. Jones
1818 Market Street, 30th Floor
Philadelphia, PA  19103

***Attorneys for Trans Union LLC***

Steven M. Schain
Suite 1A-1
2401 Pennsylvania Avenue
Philadelphia, PA  19130

***Attorney for Dime Savings Bank***

Robert S. Bernstein
Deborah R. Erbstein
707 Grant Street
Suite 2200, Gulf Tower
Pittsburgh, PA  15219

***Attorneys for National City Mortgage Co.***

/s/ Mohammad A. Ghiasuddin
Counsel for Defendant
EXPERIAN INFORMATION SOLUTIONS,
   INC.