UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GILBERT JAMES,**

    **Plaintiff,**

v.                                                                        Civil Action No. 3:11cv00221

**ENCORE CAPITAL GROUP, INC.,** *et al.*

    **Defendants.**

**REPLY MEMORANDUM IN SUPPORT OF**
**MOTION TO ENFORCE PROTECTIVE ORDER**

    Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, "the Midland Defendants"), by counsel, hereby submit this reply memorandum in support of their motion to enforce the Protective Order entered in this action.

**Introduction**

    Plaintiff's counsel does not (and cannot) take issue with the scope of the production received, but rather simply objects to the designation of certain documents as "confidential" – a routine practice within the Eastern District of Virginia, and with respect to documents that are *indisputably* not made publicly available by the Midland Defendants. Additionally, Plaintiff's conflation of the standards with respect the filing of documents "under seal," as opposed to the routine designation of documents as "confidential," only the latter of which has occurred here, belies his argument.

    Notwithstanding Plaintiff's inaccurate description of the relevant documents as similar to those policies and procedures telling employees to "meet in the lobby if they hear a fire alarm," *see* Mem. Opp. at 6, there can be no serious dispute that the relevant manuals, policies, and other documents contain information relating to, *inter alia*: (1) the content of the Midland Defendants'

computerized debt-collection database; (2) their computer software; (3) the internal codes used in maintaining and updating the Midland Defendants' debt collection system; and (4) their internal debt collections policies, compliance material, and corporate strategies.

Plaintiff does not dispute that the Midland Defendants maintain strict measures to ensure the confidentiality of the challenged non-public documents, almost all of which were marked as "confidential" and/or "proprietary" upon their creation. Nor can Plaintiff's assertion that the declaration attached to the initial brief is "conclusory" hold water upon a simple review of that declaration. Plaintiff's objections to the confidentiality designations should be overruled, with the focus of the parties returned to the substantive aspects of the case.[1]

## Background

Under the terms of the agreed Protective Order, in August 2011, prior to even receiving any discovery requests from Plaintiff, the Midland Defendants produced certain documents that were identified in their Rule 26(a)(1) initial disclosures.[2] A great number of these documents, including internal business records; correspondence with the original creditor; letters and other correspondence with Plaintiff; account-level documents; and other litigation-related documents, *were not* subject to any confidentiality restrictions.

---

[1] In contrast to Plaintiff's improper attempts to litigate the merits of its case in the context of a procedural dispute, Defendants simply note the irrelevance of such argument to the resolution of this motion. Moreover, the fact that the Midland Defendants have now been sued on the basis of the policies and procedures that are the subject of this motion does not somehow eliminate their value or their confidential status. (*See* Mem. Opp. at 12 ("And, frankly, why would a competitor be so interested? The procedures at issue have led to the filing of this case.")). To accept the validity of such an argument would be to eliminate confidentiality in all instances of litigation.

[2] Plaintiff's statement that the Midland Defendants "withheld a number of its most critical documents until late on the day and then evening" before the employee affiant's deposition is disingenuous. (Mem. Opp. at 3). Plaintiff's counsel was provided with only ten pages of documents the night before the deposition, which the Midland Defendants worked diligently to locate so that Plaintiff's counsel could take a full and fair deposition of the deponent, even though the deposition had been unilaterally noticed *well prior* to Plaintiff sending out any written discovery requests. Moreover, two of the documents produced by the Midland Defendants, which addressed certain policies and procedures *unrelated* to the claims pled in the Complaint, where redacted in the basis of relevance. Despite their histrionics to the contrary, Plaintiff's counsel provides no coherent explanation as to why such documents could not be properly redacted on the basis of relevance.

2

In response, Plaintiff's counsel objected to the designation of *every* single document that had been designated as confidential. (*Id.* at Ex. B). As mentioned in Plaintiff's memorandum in opposition, however, these objections came with a gaping and open-ended caveat. Namely, Plaintiff's counsel would agree to the designation of such documents as confidential only if the "defendants allow[ed] the unimpaired use of documents discovered in one Encore or Midland case in which Plaintiff's counsel had appeared, in any other case in which [Plaintiff's] counsel was also counsel of record." (Mem. Opp. at 3). Put another way, so long as the Midland Defendants agreed to Plaintiff's counsel self-interested demands, the issue would be moot. The Midland Defendants refused to grant Plaintiff's counsel *carte blanche* permission to introduce their proprietary documents in any future proceeding, regardless of the substance of the claims pled. After attempting to resolve the issue, the Midland Defendants filed this motion.

## Argument

**I.     Good cause exists for maintaining the confidentiality of the challenged documents.**

For "good cause shown," a court may enter a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(1)(G). "On its face, the rule goes *beyond trade secrets* to provide protection for 'other confidential research, development, or commercial information'" as well. 8 Charles Alan Wright, Arthur R. Miller, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2043 (2d ed. 1994) (emphasis added).[3] In other words, materials do not necessarily have to constitute a trade secret or reveal the "keys to a corporate kingdom" to merit confidential treatment; the rule requires only that the information at issue contain private, proprietary information. *See In re FedEx Ground Package Sys.*, 2010 U.S. Dist. LEXIS 21607, at *7 (N.D. Ind. Mar. 2, 2010) (the court entered a stipulation and protective order on January 13,

---

[3] The Protective Order was intended to cover each category of information listed in Rule 26(c)(1)(G). (Dkt. No. 37 at ¶ 2).

2006, to allow the parties to designate as "Confidential" discovery materials that were not "publicly available"). And, when a party has already produced information and seeks only to maintain its pre-trial confidentiality, that party's burden of demonstrating good cause is tempered by its reliance on an agreed protective order. *See e.g.*, *Tavoulareas v. The Washington Post Co.*, 111 F.R.D. 653, 658-59 (D.D.C. 1986).

This good cause standard, informed by the pre-trial posture of this case and the Protective Order entered by the Court, stands in stark contrast to the strict standards for placing a document under seal in accordance with Local Civil Rule 5. *See In re the Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (citing standards for placing a document "under seal," including the consideration of any "less drastic alternatives"); *Stone v. Univ. of Maryland Med. Svs. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (extending application of the *Knight* requirements to civil cases). Indeed, the pre-trial designation of documents as "confidential" and the placing of documents under seal are the subject of separate processes under the Protective Order. (Dkt. No. 37 at ¶ 10, 15). Thus, any argument regarding the placing of documents under seal, or the requirement that the Midland Defendants demonstrate "trade secret" status in order to designate such documents as confidential, is a complete *non sequitur*.

II. **The "confidential" documents contain trade secrets and other "commercial information" that has been properly designated as confidential.**

As noted above, select documents were designated upon production as "confidential" by the Midland Defendants. The substance of the documents designated as confidential is detailed in the Midland Defendants' initial memorandum. (Defs' Mem. at 2-3). In his opposition brief, Plaintiff mischaracterizes the substance of these documents. The Midland Defendants stand by their description of the relevant documents, as set forth in the Declaration of Gregory Call

4

("Call").[4] (*See* Defs' Mem., Ex. A ¶¶ 5-13). Rather than engaging Plaintiff in this dispute, however, if the Court has any questions regarding the substance of such documents, the Midland Defendants welcome *in camera* review.

It is notable, however, that Plaintiff fails to mention, *inter alia*, the following aspects of the relevant documents, which sets them apart from routine "instruction manuals" contrasted by Plaintiff: (1) the affidavit training manuals (MJ00090-MJ00172; MJ00186-MJ00249; MJ00342-MJ00400; MJ00401-MJ00406; MJ00401-MJ00406), many of which exceed 50 pages in length, set forth the particular language used by the Midland Defendants in their affidavit process; (2) the "Module 6 – Disputes & Warning Codes" lists and contains a description of the computer coding system used by the Midland Defendants in connection with their debt collection efforts; (3) the manuals regarding dispute resolution (MJ00250-MJ00285; MJ00300-MJ00320) provide a list of "frequently asked questions" regarding dispute resolution and corresponding answers developed by the Midland Defendants, a "compliance practice exam" for employees, and detailed scripts for communications with debtors; and (4) the "Encore Capital Group - Affidavit Management System" (MJ00407) lists the categories of information that the Midland Defendants collect in their internal computer system. (Defs' Mem., Ex. A ¶¶ 5-13).

Tellingly, Plaintiff also makes no mention of the many measures taken by the Midland Defendants to ensure the confidentiality of the relevant documents, including that: (1) the great majority of the documents are marked "confidential" and/or "proprietary" upon their creation; (2) access to the foregoing documents is restricted even among the employees of the Midland Defendants; (3) the Midland Defendants have internal policies and procedures regarding the

---

[4] Plaintiff contends that Call does not have personal knowledge of the substance of the Declaration due to the fact that he "did not begin his employment at Defendants until 2010, while most of the subject documents were initiated and created before that period." (Mem. Opp. at 4). This argument is entirely confused, as it simply assumes that Call, as an officer, could not have gained personal knowledge of the import of the documents at issue during his tenure with the Midland Defendants, regardless of the fact that certain documents were created prior to his becoming employed by Midland Credit Management.

maintenance of confidential and proprietary information to ensure that such information is not disclosed to third parties, including its competitors; (4) it is the Midland Defendants' general policy to keep these documents confidential, including through protective orders when litigation is commenced; (5) the Midland Defendants restrict access to their facilities through key-card access; and (6) the Midland Defendants routinely execute non-disclosure agreements with third parties with whom they share specific information about their business. (Defs' Mem., Ex. A ¶¶ 5-15, 21). These uncontested facts discredit any attempt to by Plaintiff to plausibly argue that the foregoing documents are non-confidential commercial information.

In response to these facts, Plaintiff claims that the Call Declaration is "conclusory,"[5] *see* Mem. Opp. at 5, and Plaintiff then argues that the Midland Defendants: (1) "fail to provide any particularized description of the information at issue," which is not accurate (*see* Defs' Mem., Ex. A ¶¶ 5-13); (2) does "not state how the confidential information was derived," which is also mistaken (*Id.* at ¶ 17; Ex 1. ¶ 14); (3) does not state the "amount of time and money expended to develop the information," which was provided in the Call Declaration, (Defs' Mem., Ex. A ¶ 17); and (4) "does not state what is not known to competitors about this information" and "whether customers and/or third parties to whom this information is disclosed are required to keep this information secret," notwithstanding the fact that such information was stated in the Call Declaration to not be disclosed to third parties without a protective order or a nondisclosure agreement. (Defs' Mem., Ex. A ¶¶ 14, 21).

The harm to the Midland Defendants upon disclosure of the confidential documents was also detailed in the Call Declaration, where Call testified that the public disclosure of the

---

[5] Plaintiff appears to claim that because Call does not provide a specific number of years or the precise amount of money spent developing these policies and procedures, that the Declaration is "conclusory." That argument fails to account for the simple fact that the difficultly of providing such figures is due to the substantial amount of work and resources that have been invested in the creation of such documents and systems from a number of different sources.

6

confidential information about the structure, logic and codes of the Midland Defendants' computer system, as well as their collection policies and procedures, would be invaluable to competitors attempting to "reverse engineer the system or build or refine a competing debt collection system at a fraction of the costs incurred by the Defendants." (*Id.* at ¶ 19); *see also Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (holding that disclosure of the technical aspects of products and marketing information may provide the party seeking disclosure a "competitive advantage"). And, it is the potential for a competitor in the debt collection industry to reverse engineer this system, without any expenditure of the competitor's own resources, that creates the potential for harm upon disclosure. (*Id.* at ¶ 19). Hence, all of Plaintiff's arguments regarding the Call Declaration and the substance of the challenged documents are without merit.

**III.    Authority supports the designation of the relevant documents as "confidential."**

**A.    The authority cited by the Midland Defendants constitutes the persuasive, majority view regarding the propriety of the confidentiality designations at issue here.**

Plaintiff's counsel makes no attempt to address any of the authority cited by the Midland Defendants in favor of the proposition that the relevant documents should be maintained as confidential, both with respect to the documents detailing the coding system used by the Midland Defendants and its internal policies and training manuals. (*See* Defs' Mem. at 7-10). Consistent with this persuasive authority, the documents respecting the Midland Defendants' affidavit policies and procedures, dispute resolution practices, legal compliance, training materials, and computer coding and software have all been properly designated as confidential.

**B.    The authority cited by Plaintiff is both factually and legally distinguishable.**

Apart from cases addressing the general burdens of the parties, Plaintiff has cited three cases for the proposition that the designations made by the Midland Defendants are improper.

7

First, Plaintiff cites to the Seventh Circuit's opinion in *Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544 (7th Cir. 2002), which concerned a motion to maintain documents sought to be included in the appellate record "under seal." *Id.* at 544. The simple fact that the case involved a motion to seal alone renders the decision inapposite to this dispute. Moreover, the Seventh Circuit noted that "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record," *id.* at 546, but that the matter before the court concerned an issue of "appellate secrecy" and public filing. *Id.* at 547. In so holding, the court both confirmed the argument advanced by the Midland Defendants and procedurally distinguished the argument advanced by Plaintiff.

Second, Plaintiff cites to the decision in *Zahran v. Trans Union Corp.*, 2002 U.S. Dist. LEXIS 16791 (N.D. Ill. Sept. 5, 2002), where the Defendant moved for a "Protective Order and Filing Under Seal of the Zahrans' Response to Trans Union's Motion for Summary Judgment." *Id.* at *13.[6] Again, because the Midland Defendants have not sought to place any of the confidential materials under seal, the case is of marginal relevance. Additionally, in reaching its decision, the court remarked that the materials sought to be placed under seal did "nothing more than state certain of Trans Union's general procedures for resolving errors in credit reports." *Id.* at *7. Such is not the case in the present matter, where the policies and procedures at issue lie at the heart of the Midland Defendants' business operations and debt collection system. Finally, and conspicuously ignored by Plaintiff, the court held that "[t]he process which determines how or why certain information is inserted into an individual's credit report and becomes part of a credit report retains its secrecy and has not been disclosed." *Id.* Such protected "process"

---

[6] Plaintiff's bold assertion that *Zahran* is the "most-often cited case on the present issues in teh [sic] context of such a consumer credit case," Mem. Opp. at 9, is unfounded *ipse dixit*. Indeed, the decision in *Zahran* has only been tangentially cited in *one* other decision regarding confidentiality designations.

8

information draws a close analogy to the procedures and training materials designated as confidential by the Midland Defendants.[7]

Third, Plaintiff cites to the decision in *Ahern v. Trans Union LLC*, 2002 U.S. Dist. LEXIS 26355 (D. Conn. Oct. 23, 2002), where the defendant sought "immunity from discovery" on the basis of the alleged confidentiality of certain documents. *Id.* at *10-11. In contrast, the Midland Defendants have been forthcoming in providing documents and depositions to Plaintiff, and no deficiency in their discovery responses is at issue here. Moreover, the *Ahern* court ordered that discovery be produced because the defendant had made only "bald assertions" of confidentiality and harm. *Id.* at *10. In this matter, however, the Midland Defendants have articulated the bases for claiming confidentiality and the nature of putative harm to the Midland Defendants if such documents are disclosed (*e.g.*, "reverse engineering" by "highly attuned" competitors). (Defs' Mem., Ex. A ¶¶ 5-13, 15-22). Fundamentally, none of the precedent cited by Plaintiff advances his cause, and it instead militates in favor of granting the Midland Defendants' motion.

## IV. There Has Been no "Waiver" by the Midland Defendants of the Discovery Materials That Have Been Designated as Confidential.

As anticipated, Plaintiff has taken the position that the Midland Defendants are somehow foreclosed from designating the relevant documents as confidential due to their prior disclosure during litigation involving third parties. Specifically, Plaintiff contends: "Similarly ridiculous is Defendants' designation of these procedures in the fact of their filing and use of same at a public trial in February, and shortly in the Appellate Joint Appendix, in *Brim v. Midland Credit Mgmt., Inc.*, CV-10-J-369-S, 2011 WL 2665785 (N.D. Ala. May 4, 2011)." (Mem. Opp. at 8).

Unsurprisingly, Plaintiff cites no authority in support of this argument, nor could he, as this contention has been squarely rejected by the courts to consider the issue. *See, e.g., See, e.g.,*

---

[7] To the extent that the decision in *Zahran* retains any relevance to the argument advanced by Plaintiff, the Midland Defendants submit that the foregoing, voluminous authority in favor of their position represents the better reasoned position.

9

*Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 424 (S.D. Ind. 2001) ("The fact that State Farm's policy manuals have been circulated throughout the legal community pursuant to discovery requests does not constitute a waiver by State Farm to its confidentiality."). Indeed, the Protective Order in this case makes just such a distinction, stating that although documents can be designated as confidential and maintained as such even "after the conclusion of the case," "nothing herein shall apply . . . to exhibits used at trial." (Dkt. No. 37 at ¶ 14). Therefore, any claim that the Midland Defendants have somehow waived the confidentiality of the documents at issue by virtue of their being filed in the course of their defense at trial must be rejected. *Cf. Rambus, Inc. v. Infineon Tech.*, 222 F.R.D. 280 (E.D. Va. 2004) ("It is clear, however, that a 'judicially compelled' disclosure is not a voluntary one.").

V. **Plaintiff's contention of litigation "disruption" and invocation of the "public interest" are unfounded.**

In a final attempt to sustain its objections, Plaintiff contends that the designation of the disputed documents as confidential will "disrupt" his litigation of this case and is contrary to the "public interest" in disclosure of documents. (Mem. Opp. at 13-14). With respect to the former claim, Plaintiff contends:

> The protective order being sought is meant to totally disrupt the manner in which counsel and the Court ordinarily litigate a case. As it stands, Plaintiff cannot use any designated documents in a filed pleading without the delay to permit Defendants; filing of a certainly futile Motion to Seal. Further, Plaintiff's counsel represent literally hundreds of similar consumers and is defending many of them in state court collections actions brought by Midland Credit Management. Defendants have refused to permit collateral case use of such documents.

(Mot. at 13). This is unfounded hyperbole.

As this Court and Plaintiff's counsel are well aware, the entry of a protective order and the designation of documents as confidential is common practice within the Eastern District of Virginia, and parties vigorously litigate their claims under the terms of such protective orders in innumerable actions. Also, Plaintiff again simply confuses the standards for filing a document

under seal and designating a document as confidential; a distinction that is recognized in the Protective Order itself. (Dkt. No. 37 at ¶¶ 10, 15). Plaintiff's attorneys also are free to request any of the disputed documents in any other proceeding, but the requirement that Plaintiff's counsel fulfill the requirements of the applicable rules of civil procedure in other pending matters is no basis to prevent the enforcement of the Protective Order here.[8]

Furthermore, Plaintiff contends that the public has an interest in the disclosure of the relevant documents, and that the "presumption of public access extends to pretrial discovery absent 'compelling reasons' for denying the public access to the proceedings." (Mem. Opp. at 14). In making this argument, Plaintiff misstates the applicable standard under Rule 26, which requires "good cause" to maintain confidentiality, and which has been met by the countervailing interest of the Midland Defendants in preserving the confidentiality of such key documents. *See* Fed. R. Civ. P. 26(c). Moreover, subject to the filing and granting of a separate sealing motion under Local Civil Rule 5, the public's access to any documents filed with the Court will remain unfettered, even if such documents are designated as "confidential" in the pre-trial discovery process. (*See* Dkt. No. 37 at ¶¶ 10, 14-15). Finally, Plaintiff's invocation of the "public interest" rings hollow in light of the attempted *quid pro quo* exchange with the Midland Defendants, whereby Plaintiff's counsel would agree to the confidentiality of such documents if, and only if, Plaintiff's counsel were allowed to freely use such documents in any future proceedings. (Mem. Opp. at 3). Thus, it is self-interest, and not public interest, that animates this dispute. Plaintiff's objections should be overruled.

---

[8] Also, Plaintiff's claim that the Midland Defendants cannot claim confidentiality over the relevant documents regarding their business processes because they frequently file documents in court is without merit. (*See* Mem. Opp. at 7). It is the processes that underlie these public filings, none of which are made public, as well as information regarding the Midland Defendants' business generally, that has been designated as confidential.

**Conclusion**

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. respectfully request that the Court: (1) overrule the objections of Plaintiff's counsel to the Midland Defendants' confidentiality designations; (2) order that the documents described herein be maintained as confidential under the Protective Order; and (3) grant them such other and further relief as the Court deems just and proper.

                                    **ENCORE CAPITAL GROUP, INC.,**
                                    **MIDLAND FUNDING, LLC and**
                                    **MIDLAND CREDIT MANAGEMENT, INC.**

                                  By:/s/ Timothy J. St. George
                                                Of Counsel

David N. Anthony (VSB No. 31696)
Timothy St. George (VSB No. 77340)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of September, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

>Leonard A. Bennett, Esq.
>Susan M. Rotkis, Esq.
>Consumer Litigation Associates, P.C.
>12515 Warwick Boulevard, Suite 100
>Newport News, VA  23606
>Telephone:  (757) 930-3660
>Facsimile:  (757) 930-3662
>Email:  lenbennett@cox.net
>
>Matthew J. Erausquin, Esq.
>Consumer Litigation Associates, P.C.
>1800 Diagonal Road, Suite 600
>Alexandria, VA  22314
>Telephone:  (703) 273-6080
>Facsimile:  (888) 892-3512
>Email:  matt@clalegal.com
>
>*Counsel for Plaintiff*

>/s/ Timothy J. St. George
>Timothy J. St. George (VSB Bar No. 77349)
>*Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, Virginia  23219
>Telephone:  (804) 697-1254
>Facsimile:  (804) 698-6013
>tim.stgeorge@troutmansanders.com