# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**GILBERT JAMES,**

       **Plaintiff,**

v.                                **Civil Action No. 3:11cv00221**

**ENCORE CAPITAL GROUP, INC.,** *et al.*

       **Defendants.**

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants, Encore Capital Group, Inc. ("Encore"), Midland Funding, LLC ("Midland Funding"), and Midland Credit Management, Inc. ("Midland Credit Management") (with the latter two entities collectively referred to as "Midland," and when combined with Encore, the "Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), submit the following memorandum in support of their Motion to Dismiss Counts Three, Four, Seven, and Eight of the Amended Complaint (the "Complaint").

### INTRODUCTION

The Complaint in this case alleges that when Midland sued Plaintiff to collect a credit card debt acquired from Capital One, the affiant who attested that Midland's records showed that: (i) Midland owned the debt; and (ii) that Plaintiff owed $1061.85, did not review Midland's account records before executing the affidavit. Based on these alleged facts, Plaintiff asserts a litany of deficiently-pled claims, including state law claims for civil conspiracy and abuse of process. Plaintiff has also pled two Fair Debt Collection Practices Act ("FDCPA") claims, both

of which fail as a matter of law.  All told, four of the nine counts alleged in Plaintiff's Complaint fail to state a cause of action and must be dismissed for the following reasons:

- In his claim under § 1692e(11) of the FDCPA (Count Three), Plaintiff alleges that the documents attached to the state court Warrant-in-Debt that was served on him failed to disclose that they were attempts to collect a debt.  Because formal court pleadings are exempt from this disclosure requirement, this claim must be dismissed.

- In his claim under § 1692g(a) of the FDCPA (Count Four), Plaintiff alleges that Midland failed to send him a written notice that complied with the FDCPA's requirements for disclosures that must be made within five days of the debt collector's initial communication with a consumer.  This claim must be dismissed with prejudice because: (i) Midland's initial communication – of which the court can take judicial notice – plainly contained all of the required disclosures; and (ii) this claim is barred by the FDCPA's one-year statute of limitations.

- In his claim for civil conspiracy (Count Seven), Plaintiff alleges a conspiracy consisting only of Encore, its subsidiaries, Midland Funding and Midland Credit Management, and Midland's third party debt collection law firms.  It is well settled under Virginia law that parents and subsidiaries cannot conspire, nor can two subsidiaries of the same parent be co-conspirators.  And, it is equally well settled that a company cannot conspire with its attorneys so long as the attorneys are acting within the scope of their employment (which the Complaint concedes that the debt collection law firms were).  Plaintiff's conspiracy claim must be dismissed with prejudice.

- Plaintiff's abuse of process claim (Count Eight) is based on allegations that Midland sued him for a debt he allegedly did not owe and used a false affidavit to obtain a judgment.  Under Virginia law, filing an allegedly baseless lawsuit is not an abuse of process unless the lawsuit was filed for some purpose *other than* obtaining the relief sought.  Here, Plaintiff has explicitly pled that Midland filed the debt collection lawsuit against him for the purpose of collecting a debt.  Thus, since Plaintiff concedes that Midland's purpose in suing him was to obtain the relief sought in the lawsuit (*i.e.*, payment of the debt), this is precisely the sort of claim that does *not* rise to the level of abuse of process.  Additionally, an abuse of process claim requires a plaintiff to plead an improper use of process *after* the process was procured, which Plaintiff cannot do.

As set forth in greater detail below, each of these claims must be dismissed with prejudice.

STATEMENT OF ALLEGATIONS

## I.     The State Court Debt Collection Lawsuit Against Plaintiff.

According to the Complaint, Plaintiff was contacted by Midland in connection with an unpaid Capital One credit card debt.  (Compl., at ¶¶ 75-76.)  Plaintiff claims he was a victim of identity theft and did not open the Capital One account.  (*Id*. at ¶ 75.)  Plaintiff alleges that he disputed the debt, but that Midland sued him anyways in Richmond General District Court on April 9, 2010.  (*Id*. at ¶ 78.)  The Warrant-in-Debt was accompanied by an affidavit in which Nancy Kohls, a Legal Specialist employed by Midland, who attested that she had reviewed Midland's records pertaining to Plaintiff's account, and that the records showed Plaintiff owed $1061.85.  (Compl., at ¶ 2 & Ex. B.)  Plaintiff contends that Kohls did not review his account records prior to signing the affidavit and that, therefore, the affidavit was "materially false." (Compl., at ¶ 83.)  Plaintiff further alleges that Midland obtained a default judgment against him based on the allegedly false affidavit and then reported his account as delinquent to various credit reporting agencies.  (*Id*. at ¶¶ 86, 88, 95.)

## II.     The Additional Allegations In Plaintiff's Complaint.

The Complaint dedicates several pages to a description of the August 2009 summary judgment opinion issued in *Brent v. Midland Funding LLC,* 644 F. Supp. 2d 961 (N.D. Ohio 2009), where the court found that Midland violated the FDCPA by using affidavits in state court collection lawsuits in which the affiant claimed to have personal knowledge about the debtors' accounts, but in actuality did not.  The court in *Brent* enjoined Midland from using affidavits that falsely claim to be based on the affiant's personal knowledge.  However, as the Complaint obliquely acknowledges, the affidavit used in the state court suit against Plaintiff is not the same as the one found to be misleading in *Brent* – this action was filed well after Midland revised its

3

procedures to comply with the injunction, and the affidavit used was based on Midland's records and not the affiant's personal knowledge of Plaintiff's account.[1]

Nonetheless, Plaintiff attempts to piggyback on the over two-year old *Brent* opinion by alleging that Defendants' employees file false affidavits in state courts claiming to have personal knowledge of debts purchased from third party creditors. (Compl., at ¶¶ 37-61.) Based on these allegations, Plaintiff asserts various claims under the FDCPA (Counts One through Five); the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* (Count Six); claims for civil conspiracy (Count Seven); abuse of process (Count Eight); and a claim under the FCRA, 15 U.S.C. § 1681s-2(b) (Count Nine).

## STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of the plaintiff's initial pleading and does not resolve contests surrounding the facts or the merits of a claim. *See Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although the Court should accept as true all well-pleaded factual allegations and should view the complaint in a light most favorable to the plaintiff, the Court need not accept as true the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint. *See Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'Ship*, 213 F.3d, 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*,

---

[1] In March 2011, a nationwide class settlement was reached in *Brent* (and two related cases also pending in the Northern District of Ohio), which resolved claims against Defendants arising out of or relating to the use of affidavits in debt collection lawsuits. The settlement was approved by the Court on August 12, 2011. *See Midland Funding, LLC v. Brent*, No. 3:08CV1434, 2011 U.S. Dist. LEXIS 90004 (N.D. Ohio Aug. 12, 2011). Plaintiff's counsel – who at the time was litigating a later-filed, copycat class action against Midland in this District – interfered with the court-approved notice process in *Brent* by sending misleading opt-out solicitations to putative class members in Virginia. *Midland Funding, LLC v. Bren*t, No. 3:08CV1434, 2011 U.S. Dist. LEXIS 52449, at *20 (N.D. Ohio May 17, 2011) ("Midland has proffered evidence indicating that Consumer Litigation Associates has sent claim forms to putative class members with the opt-out box preselected, as well as attorney solicitations that class members may have incorrectly believed to be the official, court-approved notice in this action."). Plaintiff's counsel was ultimately ordered by the Court to send a curative notice to class members in Virginia.

178 F.3d 231, 244 (4th Cir. 1999).  Furthermore, a "pleading that offers 'legal conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief").  A claim is "factually plausible" when the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1950.  If any factual allegations remain, the Court then should review them to determine if the plaintiff has stated a plausible claim for relief.  *Id.*

## ARGUMENT

### I.  Plaintiff's Claims Under 15 U.S.C. §§ 1692e(11) (Count Three) Must Fail Under That Provision's Formal Pleading Exemption.

Section 1692e(11) of the FDCPA requires debt collectors to make certain disclosures when a communication is an attempt to collect a debt.  However, the statute is clear that these disclosure requirements do "not apply to a formal pleading made in connection with a legal action." 15 U.S.C. § 1692e(11).  Plaintiff's § 1692e(11) claim must fail because the all of the communications he identifies as violations were attached to the state court Warrant-in-Debt filed by Midland and, therefore, were formal pleadings exempt from § 1692e(11).

In his Complaint, Plaintiff identifies three documents that he contends were required to contain the § 1692e(11) disclosure:  a document titled "Affidavit – Default Judgment," a

document titled "Affidavit of Nancy Kohls," and a "Summary Screen" containing details of his account, which was attached to one of the affidavits.  (*See* Compl., at ¶¶ 116-120.)  Plaintiff alleges that these documents were submitted to the Richmond General District Court (*see id.* at ¶ 89), and were "served upon him by law enforcement," indicating that they were attached to the Warrant-in-Debt filed with the Court.  (*See id*. at ¶¶ 116-120.)  A true and correct copy of the Warrant-in-Debt filed against Plaintiff, which attached all three of these affidavits to that filing, is attached as **Exhibit A**.[2]

It is well settled that a complaint (or its state court analogue, such as a warrant-in-debt) constitutes a "formal pleading" under the FDCPA.  *See, e.g., Hill v. Javitch*, 574 F. Supp. 2d 819, 823-24 (S.D. Ohio 2008) (a complaint is immune from liability under § 1692e(11)); *Stefansson v. Source One Mortg.*, 1:02-CV-0773-LJM-WTL, 2004 U.S. Dist. LEXIS 4458 (S.D. Ind. Jan. 29, 2004) (same); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358 (D. Md. 2010) (a complaint is a "pleading" listed under Fed. R. Civ. P. 7 and would qualify for immunity under § 1692e(11)); *see also Zevgolis v. Greenberg Law Firm, P.C.*, No. 3:10cv625-DWD, 2011 U.S. Dist. LEXIS 7452, at *7 (E.D. Va. Jan. 26, 2011) (looking to Black's Law Dictionary definition of "pleading," which is a "formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses.").

Likewise, courts have also consistently held that affidavits attached to a pleading are integrated into and constitute a "pleading."  *See, e.g.*, *Judicial Watch v. United States DOC*, 221 F.R.D. 261, 263 n.1 (D.D.C. 2004) (holding that the term "pleading" includes "affidavits and declarations filed in support of technical pleadings"); *Czarnowski Display Servs.* v. *Bell*, No. 03-C-5782, 2004 U.S. Dist. LEXIS 13441, at *2 n.1 (N.D. Ill. July 15, 2004) ("The background

---

[2] When ruling on a Motion to Dismiss, a Court may take judicial notice of matters of public record and of documents referenced in the Complaint.  *See Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (citing 5A Charles A. Wright &Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990)).

information is taken from parties' pleadings, including attached affidavits."); *cf. Hill*, 574 F. Supp. 2d at 823-24 (noting that the complaint, which attached an affidavit, was exempted as a formal pleading under § 1692e(11)). Accordingly, since all of the documents Plaintiff alleges violated § 1692e(11) are formal pleadings exempt from that section's disclosure requirements, his claim must be dismissed with prejudice.

## II.   Plaintiff's Claim Under 15 U.S.C. § 1692g(a) (Count Four) is Substantively Deficient and is Also Barred by the FDCPA's One-Year Limitations Period.

Section 1692g(a) of the FDCPA requires debt collectors to include certain information in the "initial communication" with the consumer or to send a notice containing such information within five days after the initial communication. 15 U.S.C. § 1692g(a). Among other things, the consumer must be informed that "if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." *Id.* Plaintiff claims that Defendants failed to issue any such notice at any time. (*See* Compl., at ¶ 124.)

Plaintiff's claim under this section fails for two reasons. First, the initial communication between Midland and Plaintiff, attached hereto as **Exhibit B** and authenticated by the attached Declaration,[3] plainly complies with the FDCPA. Even a cursory review of page two of this communication reveals that it contains all of the required information to the consumer under § 1692g(a), including:

(1) The amount of the debt;

(2) The name of the creditor to whom the debt is owed;

---

[3] *Holmes v. Wal-Mart Stores East, L.P.*, No. 1:10cv75, 2011 U.S. Dist. LEXIS 46020, at *35 (E.D. Va. Apr. 27, 2011) ("a defendant may attach a document referred to in the plaintiff's complaint to a motion to dismiss without converting the motion into one for summary judgment").

(3) A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer; and

(5) A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*See* Ex. B. This claim, therefore, must be dismissed.

Second, even if this initial communication were somehow deficient (which it is not), Plaintiff's claim is barred under the FDCPA's one-year limitations period. 15 U.S.C. § 1592k(d) (one-year period of limitation from date of the violation). Under the FDCPA, there is only one "initial communication" for purposes of § 1692g(a), which in turn triggers the accrual of the one-year period of limitation under § 1592k(d). *Peterson v. Portfolio Recovery Assocs.*, Nos. 10-2824 and 10-4013, 2011 U.S. App. LEXIS 11453 (3d Cir. June 6, 2011) (barring claim filed in 2009 when the first communication occurred in 2007, even though debt collector sent subsequent letters in 2008 and 2009); *Derisme v. Hunt Leibert Jacobson, PC*, No. 3:10cv244-MRK, 2010 U.S. Dist. LEXIS 119351, at *5 (D. Conn. Nov. 10, 2010) ("there can be only *one* 'initial communication' between a debt collector and a consumer, and any communication that follows the 'initial communication' is necessarily *not* an 'initial' communication.") (emphasis in original); *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D. Md. 2005) ("there is only one 'initial communication' with a debtor on a given debt under 1692g(a)").[4]

---

[4] To the extent Plaintiff seeks to apply § 1692g(a)'s notice requirement to the litigation documents referenced in Count Three, in addition to the fact that those documents do not constitute an "initial communication," § 1692g contains the same formal pleading exemption as Section 1692e(11). *See* 15 U.S.C. § 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be

This lawsuit was filed on April 7, 2011.  The initial communication is dated October 14, 2009 – more than one year before the complaint was filed, rendering the claim time-barred.  Ex. B at p. 1.  Moreover, the chronology set forth in the complaint confirms that this claim is barred by the one-year statute of limitations.  Plaintiff alleges that he learned that various credit card accounts had been opened in his name "[i]n late 2008 or early 2009."  (Compl., at ¶ 75.)  He further alleges that some time thereafter, "Plaintiff was contacted by Defendant MCM," (*see id*. at ¶ 76), which would constitute the "initial communication" under § 1692g(a).  Plaintiff alleges that he then "notified the Defendants . . . that he was not the individual who had opened accounts and was not responsible for the debt."  (*Id*. at ¶ 77.)  Only then, "[i]n response" to James's communication, did Midland allegedly file suit in Richmond General District Court.  (*Id*. at ¶ 78.)  The Warrant-in-Debt was signed by Midland's attorney on April 7, 2010 and then filed on April 9, 2010.  Ex. A; (*see also* Compl., at ¶ 82.)

Because Plaintiff alleges that Midland instituted legal action "[i]n response" to Plaintiff's communication, which in turn was in response to a prior communication from Midland, any initial communication necessarily must have occurred before April 7, 2010.  Therefore, under the FDCPA's one-year limitations period, any claim relating to an initial communication is time-barred, and the Court should dismiss Count Four of the Complaint with prejudice.

### III.    Plaintiff's Claim For Civil Conspiracy (Count Seven) Must Fail Under the Intracorporate Immunity Doctrine.

Under Virginia law, to make a prima facie showing of civil conspiracy, a plaintiff must show: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) that the overt act was done pursuant to and in

---

treated as an initial communication for purposes of subsection (a).").  Thus, if Count Four relies on such documents, it too must be dismissed.  *See* Part I, *supra*.

furtherance of the common scheme. *See Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 337 S.E.2d 744, 748 (1985). Due to the requirement that a civil conspiracy implicate "two or more" entities, a cause of action for civil conspiracy between a corporation and its employees must overcome the strictures of the "intracorporate immunity doctrine." The intracorporate immunity doctrine provides that a civil conspiracy between a corporation and the "agents" of the corporation who are acting "within the scope of their employment" is a "legal impossibility." *Griffith v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1979) (emphasis added); *accord Charles E. Brauer Co. v. NationsBank of Va.*, 251 Va. 28, 466 S.E.2d 382 (1996).

### A.   Plaintiff's Allegations That the Defendant Corporations Conspired Among Themselves Cannot Support a Claim for Civil Conspiracy.

Federal courts in Virginia have long recognized that a corporation and its wholly-owned subsidiaries are incapable of conspiring under Virginia law. *See, e.g.*, *Scott & Stringfellow, LLC*, 2011 U.S. Dist. LEXIS 38554, at *16 ("[A] parent and wholly owned subsidiary, acting with identical ultimate interests and thus as a single economic unit, cannot conspire with each other to harm a third party's business interests."); *Field v. GMAC, LLC*, 660 F. Supp.2d 679, 689 (E.D. Va. 2008) (holding that a corporation and its wholly owned subsidiary cannot legally conspire under §§ 18.2-499 and 500); *In re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F. Supp. at 205 (same); *Derthick v. Bassett-Walker Inc.*, 904 F. Supp. 510, 525 (W.D. Va. 1995) ("[T]he conspiracy between Bassett-Walker and its parent, VF Corporation, must fail under the intracorporate conspiracy doctrine."); *Saliba v. Exxon Corp.*, 865 F. Supp. 306, 313 (W.D. Va. 1994) ("a corporation cannot conspire with its wholly owned subsidiary" relative to a claim of statutory conspiracy under Virginia law).

As expressed by one Virginia federal district court, the logic underlying this rule in the context of parent corporations and their wholly-owned subsidiaries is simple:

10

> It is the very nature of their relationship that "the subsidiary acts for the benefit of the parent." If a parent and a wholly owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests. Rather, the parent's control over its subsidiary, whether or not actually manifested, ensures their unity. The mere coordinated activity of a parent and its wholly owned subsidiary is completely unilateral, never susceptible of the "conspiracy" label.

*In re Ray Dobbins Lincoln-Mercury, Inc.*, 604 F. Supp. 203, 205 (W.D. Va. 1984) (addressing a claim of conspiracy under Va. Code § 18.2-500). For identical reasons, "two subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another." *Advanced Health-Care Servs. v. Radford Community Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990). Moreover, the legal inability of a parent corporation and a wholly-owned subsidiary to conspire extends to the employees of such corporations. *Williams v. 5300 Columbia Pike Corp.*, 891 F. Supp. 1169, 1174 (E.D. Va. 1995) ("It is well-settled that a corporation cannot conspire with its wholly-owned subsidiary or with its officers and directors.").

Plaintiff expressly alleges that Midland Funding and Midland Credit Management are "wholly-owned subsidiaries" of Encore, and that "all three Defendants operate as parts of a single business operation." (Compl., at ¶¶ 5-7.)[5] Thus, Defendants cannot have conspired with one another under Virginia law, and Plaintiff's claim for civil conspiracy must fail.

### B.   Plaintiff's Allegations That Defendants Conspired with Their Third Party Law Firms Cannot Support a Claim for Conspiracy.

Likely recognizing that Encore, Midland Funding, and Midland Credit Management cannot conspire with one another under Virginia law, Plaintiff alleges that Defendants conspired

---

[5] Even without this allegation, however, a court may take judicial notice of the wholly-owned corporate structure of the Defendants. *Scott & Stringfellow, LLC v. AIG Commer. Equip. Fin., Inc.*, 2011 U.S. Dist. LEXIS 38554, at *17 n.3 (E.D. Va. Apr. 8, 2011) ("The Court . . . takes judicial notice of the fact that AIGCEF is a wholly owned subsidiary of AIG, Incorporated."); *Dunlap v. BellSouth Telcomms., Inc.*, 431 F. Supp. 2d 1210, 1212 (M.D. Ala. 2006) ("The Court takes judicial notice that BellSouth Telecommunications, Inc. is a wholly owned subsidiary of BellSouth Corporation."). As indicated in Encore's public 10-K filing, attached as **Exhibit C**, Midland Funding and Midland Credit Management are wholly-owned subsidiaries of Encore.

with "third party collection law firms" in carrying out the conspiracy.  (*See* Compl., at ¶ 146.) Although this allegation implicates actors outside of the vertical corporate structure detailed above, the intracorporate immunity doctrine still bars this claim.

In addition to barring conspiracy claims between a corporation and its employees, the intracorporate immunity doctrine dictates that "a conspiracy cannot exist between the agents of a corporation and the corporation." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997). Put another way, "acts of corporate agents are acts of the corporation itself." *ePlus Technology v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002).  Thus, the doctrine precludes claims of conspiracy between a corporation and its agent so long as the agent is acting within the "scope" of his or her employment. *See id.*

In applying the intracorporate immunity doctrine, courts have consistently held that a corporation's attorney qualifies as its agent, and that this principle precludes a conspiracy between a corporation and its attorney. *Stoner v. N.Y.C. Ballet Co.*, No. 99 Civ. 0196-BSJ, 2002 U.S. Dist. LEXIS 5921, at *9 (S.D.N.Y. Apr. 8, 2002) ("There can be no conspiracy between a corporation and its counsel where the advice or concerted activity was within the scope of the representation."); *General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-314 (3d Cir. 2003) (no conspiracy between attorney and client is possible); *Bowdoin v. Oriel*, No. 98-5539, 2000 U.S. Dist. LEXIS 888, at *3-6 (E.D. Pa. Jan. 28, 2000) (holding that, in light of the "regulatory framework" that protects parties from unscrupulous lawyers, including the disciplinary rules applicable to lawyers, conspiracy immunity in the attorney-client context is compelling); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 296-98 (D.S.C. 1999) ("Feker cannot conspire with his corporations, his employee, Melinda McDonald, or with his attorney, Stephen Gardner."); *Roth v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764, 778 (Mo. App.

2003) ("Because an attorney is an alter ego of his or her client, a conspiracy between the attorney and the client is not possible."); *see also White Oak Corp. v. Am. Int'l Group, Inc.*, 2009 Conn. Super. LEXIS 1857, at *26-27 (Conn. Super. Ct. July 6, 2009) ("That an attorney for a corporation occupies the same agency status as does an attorney for an individual is clear from the cases enforcing the attorney-client privilege for the benefit of a corporation and its employees.").

Moreover, "Virginia courts maintain a broad view of the scope of employment." *Stith v. Thorne*, 488 F. Supp. 2d 534, 552 (E.D. Va. 2007); *see, e.g.*, *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1156 (4th Cir. 1997) (applying Virginia law and citing cases therein). The test in Virginia to determine whether an act is committed within the scope of employment is: "(1) whether it was expressly or impliedly directed by the employer, or is naturally incident to the business; and (2) whether it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise completely from some external, independent, and personal motive on the part of the employee to do the act for his own account." *McLaughlin v. Town of Front Royal*, 38 Va. Cir. 387, 407 (Warren County 1996) (citing *Smith v. Landmark Communications, Inc.*, 246 Va. 149, 152, 431 S.E.2d 306, 307 (1993)).

Based on this test, it is established that even intentional torts and/or statutory violations may be within an agent's scope of employment. *See, e.g.*, *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (1996) (psychiatrist who sexually assaulted a patient could have acted within the scope of employment); *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 266 (1995) ("willful and malicious acts" that were "outrageous and

violative of [the] employer's rules" might be within the scope of employment); *Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1349 (E.D. Va. 1987) ("Although the scheme [to fire the plaintiff due to his age] may have been illegal, it was nonetheless, according to Haigh, devised by Panasonic officials to further Panasonic's interests (*e.g.*, younger sales personnel, reduced liability for pension benefits).   Having so alleged throughout his Complaint, Haigh cannot now assert, in response to the defendants' motion [to dismiss], that the individual defendants were operating outside the scope of their employment."); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1351 (4th Cir. 1995) (under Virginia law, even "a 'forbidden' or 'consciously criminal or tortious' act may still be within the scope of employment.").

The Complaint contains no allegation that the "third-party" law firms were acting outside the scope of their engagement in effecting their allegedly unlawful conduct.   To the contrary, Plaintiff alleges that Defendants and their law firms "were engaged for a common economic purpose of enabling the collection of credit card accounts purchased by Encore," (*see* Compl., at ¶ 133), and that these third party firms acted pursuant to the direction of Defendants.   (*Id*. at ¶¶ 60-61.)   It is clear from these allegations that the third party law firms were supposedly acting in concert with the Defendants.   Thus, the strictures of the intracorporate immunity doctrine apply.

## C.     Plaintiff's Asserted "Personal Stake" Must be Rejected.

The intracorporate immunity doctrine has a potential exception: if an employee, officer, or agent has an independent personal stake in the conspiracy, a conspiracy with the corporation may be found.   *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997) (adopting such an exception in the antitrust context).   In what is apparently an attempt to state a claim within this exception, Plaintiff alleges, conclusorily:   "Although the third-party law firms operated at times

as agents of the Defendants, they were not fully so.  Defendants and the third party law firms had separate and personal stakes in the illegal objectives alleged herein."  (Compl., at ¶ 147.)

As a preliminary matter, the "personal stake" exception has yet to be accepted by any Virginia state court in the context of a claim for civil conspiracy.  *See*, *e.g.*, *White v. Potocska*, 589 F. Supp. 2d 631, 660 (E.D. Va. 2008) ("Virginia has not recognized the so-called 'personal stake' exception to [the] general rule when the conspiring agent has an independent personal stake in achieving the conspiracy's illegal objective."); *Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 429 (E.D. Va. 2006) ("[T]he personal stake exception is unavailable under Virginia law.").

Moreover, the courts within the Fourth Circuit to consider the independent personal stake exception have held that the exception must be carefully and narrowly circumscribed.  *See*, *e.g.*, *Oksanen v. Page Mem. Hosp.*, 945 F.2d 696, 705 (4th Cir. 1991) (unless limited in its application, the "exception . . . threatens to swallow the rule"); *United States v. Gwinn*, No. 5:06-cv-00267, 2008 U.S. Dist. LEXIS 26361, at *86 (S.D. W. Va. Mar. 31, 2008) (rejecting "the narrow 'independent personal stake' exception").  Consistent with the narrow scope of the exception, these courts have held that a defendant's personal stake must be "wholly" independent from the interest of the corporation to generate an exception to the intracorporate immunity doctrine.  *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 151 F. Supp. 2d 723, 731 (W.D. Va. 2001) ("Such personal stake must be wholly separable from the more general and indirect corporate benefit."); *accord Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543 (E.D.N.C. 2005).

Based on these principles, it is evident that no plausible independent personal stake could be alleged in this action with respect to the activities of the third-party law firms engaged by the

15

Defendants to facilitate their collections work.  One need look no further than the allegations in the Complaint to see that the exception has no application here, as Plaintiff alleges that "[a]ll of these law firms and each Defendant were engaged for a common economic purpose of enabling the collection of credit card accounts purchased by Encore."  (Compl., at ¶ 147.)  Plaintiff also alleges that the "law firms are paid a contingency percentage of recovery," (*Id.* at ¶ 30), meaning that the pecuniary interests of the Defendants and such law firms are inextricably aligned.  These allegations are then buttressed by factual claims regarding, *inter alia*, the "numerous" document exchanges and "regular telephone communications" between the Defendants and their law firms, as well as the creation of an organizational structure by the Defendants with their law firms to facilitate an "ongoing business relationship."  (*Id.* at ¶¶ 60, 136.)

Thus, far from plausibly alleging an "independent" personal stake, the Complaint makes clear that law firms were at all times acting consistent with the intertwined financial interests of the Defendants, and that these law firms did not, therefore, have a wholly independent personal stake in the success of the alleged conspiracy.  *See, e.g., Gwinn*, 2008 U.S. Dist. LEXIS 26361, at *85-86 ("[I]f Defendants sold more mattresses, both they and Group II profited.  Their success was intertwined and not wholly independent.  The more fraudulent claims that were submitted through the course of their employment with Group II, the more sales commissions Defendants earned.  Thus, as is the case here, when an agent of a corporation is working within the scope of his employment and acts in a manner that benefits both himself and his corporation for similar reasons, the narrow 'independent personal stake' exception is not applicable."); *Douty v. Irwin Mortgage Corp.*, 70 F. Supp. 2d 626, 633 (E.D. Va. 1999) ("According to plaintiff, the individual defendants had a personal stake in the increased commissions available to them after her termination.  We find this pleading insufficient because it does not allege that defendants had

a stake in her termination independent of their relationship with [the corporation].   To the contrary, any 'personal stake' defendants had in increased commissions was incidental to their employment relationship with [the corporation] because their commissions were determined and paid by [the corporation]."); *Bragg v. Orthopaedic Assocs. of Va., Ltd.*, No. 2:06cv347, 2007 U.S. Dist. LEXIS 14836, at *38 (E.D. Va. Mar. 2, 2007) (all of the defendants' actions were directly related to their employment, so the independent personal stake exception did not apply); *Godfredson v. JBC Legal Group, P.C.*, 387 F. Supp. 2d 543, 550 (E.D.N.C. 2005) ("Plaintiffs fail to understand the plain meaning of both 'independent' and 'exception.'   [T]he independent financial stake exception has been limited, such that it applies only where a co-conspirator possesses a personal stake independent of his relationship to the corporation."); *Baylor v. Comprehensive Pain Management Ctrs., Inc.,* No. 7:09cv00472, 2011 U.S. Dist. LEXIS 37699, at *45-46 (W.D. Va. Apr. 6, 2011) (the court held that the personal stakes of all of the individual defendants were dependent on the interest and success of the pain management center and dismissed the conspiracy claim).   Accordingly, the claim for civil conspiracy must be dismissed with prejudice.

### IV.    Plaintiff's Claim For Abuse Of Process (Count Eight) Fails.

In Count Eight, Plaintiff alleges that Defendants committed abuse of process through the filing of affidavits.   (Compl., at ¶ 151.)   Under Virginia law, "[t]o prevail in a cause of action for abuse of process a plaintiff must plead and prove: '(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings.'" *Montgomery v. McDaniel*, 271 Va. 465, 628 S.E.2d 529, 531 (2006) (quoting *Donohoe Constr. Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539, 369 S.E.2d 857, 862 (1988)).   Plaintiff fails to allege facts that would support either of these requirements, and his claim must be dismissed.

## A.       Plaintiff Cannot Establish an Ulterior Purpose.

As the Supreme Court of Virginia explained in *Donohoe*, abuse of process consists of "the perversion of regularly-issued process to accomplish some ulterior purpose *for which the procedure was not intended.*" *Donohoe*, 235 Va. at 539, 369 S.E.2d at 862 (emphasis added). Put another way, "[r]egular and legitimate use of process, *though with a bad intention*, is not a malicious abuse of process." *Glidewell v. Murray-Lacy & Co.*, 124 Va. 563, 570, 98 S.E. 665, 668 (1919) (emphasis added, internal quotation marks omitted).

This critical distinction – between using process for its intended purpose with a bad intention and using process for an ulterior purpose – is borne out in case after case under Virginia law. *See Ely v. Whitlock*, 238 Va. 670, 674, 385 S.E.2d 893, 896 (1989) (finding ulterior purpose through filing ethics complaint against lawyer with purpose of hurting lawyer's reputation); *Capozio v. Baumann*, 59 Va. Cir. 148, 149 (Fairfax Cir. Ct. 2002) ("Defendants do not contend that Plaintiffs seek alternative ends other than to obtain a remedy for the causes of action set forth in the Motion for Judgment.  Instead, Defendants argue that Plaintiffs seek only to harass him and to chill his pursuit of ancillary litigation.  Motivation and purpose, however, are not synonymous in an abuse of process case.").

Indeed, courts have held that even the filing of a "baseless" lawsuit – which the Plaintiff collection lawsuit was not – cannot constitute an abuse of process when the sole purpose of the lawsuit was to seek the relief sought in a complaint.  *See, e.g., Capozio,* 59 Va. Cir. at 149 (explaining that whether the process is baseless is immaterial to an action for abuse of process); *7600 L.P. v. QuesTech, Inc.*, 39 Va. Cir. 268, 270-71 (Fairfax Cir. Ct. 1996) ("Initiating and prosecuting a baseless suit . . . may warrant sanctions or constitute a claim of malicious prosecution, but these acts cannot constitute abuse of process.  A misrepresentation is not a

regularly-issued process which is used improperly to accomplish some ulterior purpose for which the procedure was not intended.") (internal quotation marks omitted); *see also Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 U.S. Dist. LEXIS 109470, at *49-51 (S.D. Tex. Oct. 12, 2010) (noting that "obtaining the money in Plaintiff's bank account is the intended purpose of garnishing Plaintiff's bank account," and holding that plaintiff's allegations that defendant "filed for a writ of garnishment, and refused to end it" allegedly in order to extort more money from the plaintiff, "would not constitute an abuse of process."); *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1053 (S.D. Iowa 2007) (same).

In this case, Plaintiff alleges that "Defendants' filing of the state court collection lawsuit was accomplished with the improper motive and purpose of obtaining a judgment on a debt that it could not confirm or know was actually owed by the Plaintiff." (Compl., at ¶ 151). In short, Plaintiff concedes that Defendants' purpose in filing to debt collection lawsuit against him was to collect a debt, albeit one that he disputes. This conduct, even if true, falls within the "[r]egular and legitimate use of process." *Glidewell*, 124 Va. at 570, 98 S.E. at 668. Plaintiff thus fails to state a claim for abuse of process under Virginia law.

> **B.** **Plaintiff Fails to Allege Facts in Support of an "Act in the Use of the Process not Proper in the Regular Prosecution of the Proceedings."**

Plaintiff likewise fails to plead any facts that would suggest Defendants improperly used the process after it was procured. As the Supreme Court of Virginia explained, "[t]he gravamen of the tort lies in the abuse or the perversion of the process *after it has been issued*." *Donohoe*, 235 Va. at 540, 369 S.E.2d at 862 (emphasis added); *Glidewell*, 124 Va. at 570, 98 S.E. at 667-68 ("The distinctive nature of an action for malicious abuse of process . . . is that it lies for the improper use of process after it has been issued, not for maliciously causing process to issue").

The Supreme Court's decisions in *Donohoe* and *Glidewell* are instructive. In *Donohoe*, the plaintiff property owner sued the defendant construction company for allegedly filing a mechanic's lien even though the plaintiff "had paid all bills presented and was aware of no outstanding requisitions." 235 Va. at 536, 369 S.E.2d at 859. The plaintiff produced several documents indicating that the defendant "considered filing a lien to prevent closing on permanent financing and to 'force [the plaintiff] into a final settlement and avoid arbitration and litigation if at all possible.'" *Id*. at 536, 369 S.E.2d at 860. The Court determined that such facts supported a finding of an "ulterior purpose," but further held that the "evidence fails to establish . . . that after filing the lien, [the defendant] committed any 'act in the use of the process not proper in the regular prosecution of the proceeding.'" *Id*. at 541, 369 S.E.2d at 863. In short, abuse of process did not lie even though the defendant, with an ulterior purpose, had filed a baseless mechanics' lien, because the defendant had prosecuted the lien in a proper manner.

In *Glidewell*, the defendants had sworn out a criminal misdemeanor warrant with the ulterior purpose to collect a private debt. 124 Va. at 569, 98 S.E. at 667. The defendants later agreed to dismiss the warrant if the debtor agreed to execute a new note. *Id*. at 570, 98 S.E. at 668. The Court determined that the Code of Virginia expressly permitted such agreements and therefore, "[w]hatever motive may have prompted the defendants, they had a moral and legal right to accept satisfaction and withdraw the prosecution substantially as they did." *Id*. Thus, despite the use of criminal prosecution to collect a private debt, there had been no abuse of process. *Id*.; *see also Guillory v. WFS Fin., Inc.*, No. C-06-06963-JSW, 2007 U.S. Dist. LEXIS 24910, at *16-17 (N.D. Cal. Mar. 21, 2007) ("Here, the complaint does not allege facts sufficient to support the allegation that WFS or Nelson & Kennard filed the deficiency action for any purpose other than that for which it was designed, *i.e.* to collect a debt.").

20

Here, Plaintiff alleges that Defendants' "filing of the state court collection lawsuit and improper use of affidavits" therein was improper.  (Compl., at ¶ 151.)  As in *Donohoe* and *Glidewell*, these facts do not allege that Defendants used the process in an improper manner after it was issued.  Rather, Defendants attempted to collect a debt through a civil proceeding in a Virginia state court and did so consistent with the applicable court rules regarding filing and default judgments.  *See Bank of Oklahoma v. Portis*, 942 P.2d 249, 255 (Okla. Civ. App. 1997) (holding that defendant bank did not commit abuse of process in obtaining default judgment after the defendant's attorney had allegedly promised to wait pending a hearing, because the bank "took the default judgment only after [the plaintiff] failed to file an answer.  There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though motivated by bad intentions.").  Thus, Plaintiff's claim fails to satisfy the required elements of abuse of process under Virginia law and must be dismissed.

### CONCLUSION

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc., respectfully request that the Court dismiss Counts Three, Four, Seven and Eight of the Complaint against the Defendants.  Defendants further request they be awarded their attorney's fees and costs incurred herein along with any other relief that the Court deems appropriate.

**ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGEMENT, INC.**


By:/s/ Timothy J. St. George
                    Of Counsel

David N. Anthony (VSB No. 31696)
Timothy St. George (VSB No. 77340)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile:  (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC*
*and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:   (757) 687-1504
john.lynch@troutmansanders.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of September, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

> Leonard A. Bennett, Esq.
> Susan M. Rotkis, Esq.
> Consumer Litigation Associates, P.C.
> 12515 Warwick Boulevard, Suite 100
> Newport News, VA 23606
> Telephone:  (757) 930-3660
> Facsimile:   (757) 930-3662
> Email:  lenbennett@cox.net
>
> Matthew J. Erausquin, Esq.
> Consumer Litigation Associates, P.C.
> 1800 Diagonal Road, Suite 600
> Alexandria, VA 22314
> Telephone:  (703) 273-6080
> Facsimile:   (888) 892-3512
> Email:  matt@clalegal.com
>
> *Counsel for Plaintiff*

> /s/ Timothy J. St. George
> Timothy J. St. George (VSB Bar No. 77349)
> *Attorney for Encore Capital Group, Inc., Midland*
> *Funding, LLC and Midland Credit Management, Inc.*
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> Richmond, VA 23219
> Telephone:  (804) 697-1254
> Facsimile:   (804) 698-6013
> tim.stgeorge@troutmansanders.com

23