UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

GILBERT JAMES,

    Plaintiff,

v.                                                     Civil Action No. 3:11cv00221

ENCORE CAPITAL GROUP, INC., *et al.*

    Defendants.

## DECLARATION OF GREGORY CALL

I, Gregory Call, pursuant to 28 U.S.C. § 1746, declare and swear as follows:

1. I am over the age of 18 and competent to give this Declaration. I am employed by Midland Credit Management, Inc., where I am Vice President, Legal and Business Affairs.

2. The facts set forth herein are based upon my review of the deposition transcript of Nancy Kohls, a Legal Specialist employed by Midland Credit Management, Inc., and if I were called upon to testify to such facts, I could and would competently do so.

3. I submit this Declaration in support of Defendants' Motion to Enforce Protective Order Respecting Deposition Testimony.

4. I have reviewed the deposition testimony that is described herein, which has been marked as "confidential" by the Defendants under the stipulated Protective Order.

5. The deposition testimony, as identified below by page and line number, concerns the following subjects:

6. The identity of certain of the Defendants' major clients, and the nature of those clients' audits of the affidavit system used by the Defendants. (Kohls Tr. pp. 13:6-8; 14:20-16:23; 24:2-5).




7. The process by which the Defendants' employees access consumer account records, the contents of their "intranet" system, the email retention policies employed by the Defendants, and the computerized collections process used by the Defendants, including the specific software installed on their computers and the meaning of certain codes. (Kohls Tr. pp. 17:11-18:16; 19:10-21:20; 113:2-117:10; 117:24-136:25).

8. The roles of certain officers and employees in creating the affidavit procedures and training processes. (Kohls Tr. pp. 23:15-24:1; 28:4-14).

9. The training manuals and written policies and procedures of the Defendants detailing the system for executing affidavits, all of which were marked as "confidential" and/or "proprietary" by the Defendants upon their creation. (Kohls Tr. pp. 25:4-27:12; 99:13-113:1; 195:16-202:16).

10. An organizational chart detailing the particular divisions of the Defendants, both domestically and internationally. This document was previously produced by the Defendants in another civil action, where it was designated as "confidential." The deponent also testified about the corporate structure and divisions within the particular office in which she is employed (St. Cloud, Minnesota). (Kohls Tr. pp. 29:14-33:5; 57:3-58:2; 59:1-61:12).

11. The Defendants' internal process for executing affidavits, including the individuals involved in that process, the policies and procedures surrounding that process, the types of documents reviewed by the employee affiants, the training received by the affiants, and the mechanics of the computer system used by the affiants. (Kohls Tr. pp. 34:14-43:4; 77:22-82:8; 82:17-83:17; 91:12-92:3; 92:25-95:12; 137:17-158:23; 162:8-174:19; 175:11-181:15; 181:23-183:18; 184:21-195:15; 202:17-206:21; 207:5-212:3; 212:19-231:19).

12. The procedures by which employee affiants prepare for and testify in collections matters, including discussions regarding specific civil actions. (Kohls Tr. pp. 87:4-14; 90:13-91:11).

13. The level of compensation paid to employees of the Defendants, and the specific performance criteria used in evaluating employees during their periodic evaluations. (Kohls Tr. pp. 51:14-57:2).

14. The names, residences, and backgrounds of a number of employee affiants, including information regarding their personal lives, as well as the circumstances surrounding the termination of a particular employee. (Kohls Tr. pp. 68:2-77:21; 83:18-84:19).

15. Due to the proprietary content of the information referenced in paragraphs 5-14, access to the foregoing documents reflecting such information is restricted to employees, and often even restricted among the employees of the Defendants, with only certain subsets of employees being permitted to access and/or view such documents.

16. The Defendants also have internal policies and procedures regarding the maintenance of such confidential and proprietary information to ensure that such information is not disclosed to third parties, including its competitors.

17. It is the Defendants' policy to keep the information reflected in paragraphs 5-14 confidential, and when such information is requested in litigation, it is the policy of the Defendants to seek the entry of an appropriate protective order.

18. The testimony that has been designated by the Defendants as "confidential" consists of accumulated corporate knowledge concerning the Defendants' debt collection system, corporate policies, and corporate strategy.

19. The Defendants have invested and continue to invest significant resources and many hours of employee time developing and improving their procedures to achieve maximum

possible accuracy of the debt collection system, increased productivity, an efficient workforce, and to ensure efficient dispute resolution/legal compliance.

20. These established policies and procedures provide the Defendants with a competitive advantage in the marketplace over their many competitors who do not know of such policies and procedures by ensuring the Defendants' compliance with applicable laws, maximizing collections, decreasing turnover, and minimizing legal and informal disputes with consumers.

21. Public disclosure of the foregoing confidential information about the structure and codes of the Defendants' computer system, as well as its debt collection and personnel policies, would be valuable to competitors attempting to reverse engineer the system to build or refine a competing debt collection system at a fraction of the costs incurred by the Defendants, thereby potentially resulting in significant corporate harm to the Defendants.

22. The Defendants' status as a market leader in the highly-competitive debt collection industry, which is highly-attuned to market research and intelligence, heightens the concern that its competitors will very likely gain access to any publicly-disclosed proprietary information and will then use such information to gain an unfair competitive advantage in the marketplace.

23. The Defendants restrict access to their facilities through key-card access, and the Defendants routinely execute non-disclosure agreements with third parties with whom the Defendants share specific information about their business.

24. I am voluntarily making this declaration of my own free will. I declare under penalty of perjury that the foregoing is true.

DATED: September 12, 2011

_____
Gregory Call