# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

GILBERT JAMES,

        Plaintiff,

v.                                  Civil Action No.  3:11cv221

ENCORE CAPITAL GROUP, INC., et als.,

        Defendants.

## PLAINTIFF'S (CORRECTED) MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, the Plaintiff, Gilbert James (hereafter, "James" or "Plaintiff"), by counsel, and for his Opposition to the Defendant's Motion to Dismiss his Amended Complaint he respectfully submits this memorandum of law.

## INTRODUCTION

The Amended Complaint alleges that Defendants and their various co-conspirators create and present to consumers such as Mr. James, and to state courts, collection affidavits they know are false and perjourous.   Plaintiff alleges that the documents and testimony already discovered in this case prove a large scale scheme to commit mail and wire fraud by the intentional and concealed fraud on courts in Virginia and across the nation.  And Defendants do not challenge this conclusion.  Instead, they assert mostly technical challenges to four of the Plaintiff's secondary claims.[1]

---

[1] Displaying out of state counsel's continuing control of the defense and apparent personal animus, Defendants' Memorandum leads in footnote 1 with a less than germane and more than a little inaccurate account of the involvement of Consumer Litigation Associates, P.C. and Mr. James in the Ohio Midland settlement opposed by 38 Attorneys General and the Federal Trade Commission.  Counsel will leave the topic with only an assurance that their perspective of events

As discussed below, two of those challenges lack merit. The third and fourth, Defendants' challenge to Count Four (§1692g) and Count Seven (State Civil Conspiracy) may or may not have lacked merit, but for this motion and case are conceded.[2]

## COMPLAINT ALLEGATIONS

The Amended Complaint in this case fully complies with Fed. R. Civ. P. 8. Facts relevant to this motion and that are alleged in the Amended Complaint are as follows:

### Defendants are "Debt Collectors"

*Defendants* Encore Capital Group, Inc. ("Encore"), Midland Credit Management, Inc. ("MCM") and Midland Funding, LLC ("Midland Funding", collectively the "Defendants") are debt collectors governed by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. Am. Compl. ¶107. They operate as a debt buying enterprise. *Id* ¶7. They purchase defaulted consumer loans from major banks, credit unions, and utility providers. *Id.* ¶8. Midland Funding is a shell entity used by Encore to purchase and hold technical ownership of the debt portfolios Encore purchases. Encore and MCM hold all of the company's personnel and active resources. Midland Funding purchases the debt portfolios and then MCM duns the consumer debtor "on behalf" of Midland Funding. *Id*. ¶14. The single and principal business purpose of each Defendant is the collection of debts, and each Defendant is a debt collector as that term is defined at 15 U.S.C. §1692a(6). *Id*. ¶17.

### Defendants Cannot Prove a Claim if the Debtor Contests the Collection Lawsuit

When Defendants collectively purchase debt portfolios, such as the Capital One portfolio that contained the alleged James account, they do not actually purchase anything other than the

---

contrasts with Defendants' account.

2 Plaintiff stipulates to the dismissal of Count Four and Count Seven.

theoretical claim of ownership.  There are no notes assigned.  No contracts are transferred.  All

that Defendants actually purchase is an electronic list of consumers and their last known

addresses with an amount the creditor claims to have been owed.  Often the interest rate is not

included, dates of birth or social security numbers are not included, and addresses have not been

updated.  *Id.* ¶23.  Defendants do not actually purchase and receive the credit contracts, their

specific terms, payment histories, sales or billing documents and other documents absolutely

necessary to properly prosecute and collect a debt or even to know with any reasonable degree of

confidence that a specific debtor opened, used and then failed to pay a debt in a specific amount.

*Id.* ¶24.  When Defendants file civil lawsuits to collect, they lack any of the information and

documents necessary to prove a case by a preponderance of evidence, or even in a default

posture before Virginia General District Court judges.  *Id.* ¶29.  Defendants lacked any evidence

from Capital One that Plaintiff had opened, used or was even connected to the account in this

case, and had actual knowledge of Plaintiff's prior documented disputes that he was the victim of

identity theft and not responsible for the debt.  *Id*. ¶81.

### Defendants Sue Mr. James and Mail to and Serve on  Him a Fraudulant Affidavit

When Defendants seek to collect money from consumers such as Mr. James, they sue

them in state court.  In doing so, they generate affidaivits that purport to be about the subject

account. With actual knowledge that Plaintiff was not responsible for the Capital One -2987

account, Midland Funding sued Plaintiff in the General District Court for the City of Richmond

in an attempt to collect this debt.  *Id*. ¶78.

Plaintiff was served with one of the affidavits described herein, Exhibit "B" to the

Amended Complaint, sometime after the April 9, 2010 Warrant in Debt filing date.  *Id*. ¶86.

Defendants' current affidavits and affidavit procedures are materially dishonest in two

important ways.  They continue to include objectively and materially false statements.  *Id*. ¶¶43-54.  The collection affidavits are created and provided for use in collection courts around the country.  For example, in Virginia they are most often used to present to General District Court judges as a means to prove the existence, terms and balances of the collection credit accounts.  Accordingly, when Defendants and their attorneys drafted the form affidavits (in house and in an outside law firm that conspired to draft the form affidavits), they did so for the purpose of intended misdirection.   They are designed to leave a collection court believing facts that are other than the affiant was verifying.  *Id*. ¶55.

Defendants also mailed with the James affidaivit a "Summary Screen" regarding the disputed account from their third party collection law firm which contained a number of assertions regarding the history and status of the account.  *Id*. ¶35.  In accordance with Defendants' standard process, it was stapled to the affidavit from Defendants that was mailed back to the law firm's office.  This document is actually a print-screen from the Virginia firm's own system and is not a document attached by the affiant.  Defendants through their collection firm then present this attachment as if it were authenticated as part of the affidavit itself, even though the affiant has never even seen the document.  *Id*. ¶61.

The Defendants' affidavit was materially false in all of the ways so far alleged.  For example and without limitation, the affiant had not reviewed any business or account records; she did not have personal knowledge of the indebtedness or the account; she did not consider any substantive documents; no substantive documents existed; she did and could not check to determine if the Plaintiff had validly disputed the account (he had) and the affiant certainly wouldn't have been competent to ever testify in a court of law that Mr. James was so indebted (or as regards anything else in the affidavit).  *Id*. ¶83.

4

Thereafter, in response to the collection lawsuit, Plaintiff communicated to Midland Funding and MCM again that this was not his debt.  He even provided a sworn affidavit to the Defendants – one contained his true personal knowledge that he had not opened the account at issue. *Id*. ¶84.  Midland Funding, MCM and/or one of their agents received the affidavit from the Plaintiff. *Id*. ¶85.  Midland Funding, MCM and/or one of their agents misrepresented to the Plaintiff that upon receipt of the sworn statement, it would discontinue the litigation against him. *Id*. ¶86.  Plaintiff relied on these representations.  *Id*. ¶87.

In August of 2010, and unknown and without notice to the Plaintiff, the Defendants did not discontinue the collection action.  Instead, it proceeded to obtain a default judgment against the Plaintiff in the amount of One Thousand Sixty One and 85/100 Dollars ($1,061.85), plus six percent interest from the date of judgment and Fifty-Three Dollars ($53.00) in judgment costs. *Id*. ¶88.

Plaintiff learned that the Defendant had fraudulently secured this judgment against him only when he began the process of attempting to purchase a house that he would move into with his future wife and discovered the judgment notation on his credit report.  *Id*. ¶90.  Plaintiff was instructed that because of the existence of this judgment, he was required to pay the judgment off before he could even be considered for a mortgage loan. *Id*. ¶91.  In Spring 2011, the Plaintiff was able to retain counsel to assist him in all matters related to Defendants.  Through such representation, Mr. James was able to cause the vacatur of the Midland Funding judgment.  *Id*. ¶94.

### Defendants fail to Provide FDCPA Required Disclsoures

On or after April 9, 2010, the Defendants mailed a communication to the Plaintiff in their attempt to collect a debt that bore the legend "Affidavit – Default Judgment."  (hereafter,

"Affidavit 1").  They also caused the same to be served upon him by law enforcement.  *Id*. ¶116.

The Defendants mailed this communication to the Plaintiff at a time when he was not in default, in an effort to deceive the Plaintiff. *Id*. ¶117.

On or after April 9, 2010, the Defendants further mailed a communication to the Plaintiff that bore the legend "Affidavit of Nancy Kohls" (hereafter "Affidavit 2").  They also caused the same to be served upon him by law enforcement. *Id*. ¶118.

The Defendants further mailed a communication to the Plaintiff that bore the legend "Summary Screen," and which purported to contain information indicating the details of the account.  They also caused the same to be served upon him by law enforcement.  They attached this document to the affidavit to mislead the court into the belief that the Summary Screen was part of the affidavit. *Id*. ¶¶119.

Affidavit 1, Affidavit 2 and the "Summary Screen" each failed to inform the Plaintiff that the Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose, in violation of 15 U.S.C. §1692e(11). *Id*. ¶120.

Defendants Encore, Midland Funding and MCM failed to, at any time, send the Plaintiff a written notice that complied with the requirements of 15 U.S.C. §1692g(a) and which informed him of his right to request verification of the debt.  *Id*. ¶124.

### Defendants' Ulterior Motives

Defendants have adopted their affidavit language and process for an improper purpose. *Id*. ¶70.   The litigation affidavits are created and deliberately worded to conceal from the consumer target (in this case Mr. James) and from the subject court that MCM does not maintain any records, documents, applications, or other admissible and necessary evidence that the target

6

debtor actually opened or used the account and thus owes money to an originating creditor. *Id.* ¶71. Defendants can only prevail if the consumer does not show up and contest the Midland case. The false affidavits are generated and delivered to Mr. James and other consumers with Defendants' plan and ambition that the documents cause the consumer to forgoe appearing in the collection case and thus permitting Defendants to obtain judgment by default. Defendants' improper use of the fraudulent affidavits was accomplished with the improper motive and purpose of obtaining a judgment on a debt that it could not confirm or know was actually owed by the Plaintiff and was accomplished through the improper use of a false affidavit as means to circumvent the impossible burdens faced if they actually had to prove an indebtedness. *Id.* ¶151.

## ARGUMENT

In order for the Defendant to prevail in its motion, it must demonstrate that the Plaintiffs have supplied no set of facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007). While Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* ____U.S.____, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 555)(internal citation omitted). In order to determine whether the Defendant prevails, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec.

29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

## A.    PLAINTIFF HAS PLED A PLAUSIBLE FDCPA CLAIM, 15 U.S.C. § 1692e(11)

In all communications that Defendants – as debt collectors – sent to the Plaintiff, they were required to disclose, "that the communication is from a debt collector [.]"  15 U.S.C. §1692e (11).   Further, in their initial communication they were required to disclose that, "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose [.]"  *Id.*  The lone exception is a document that is also "a formal pleading made in connection with a legal action."  *Id.*

Defendants' first challenge to the Amended Complaint, and only challenge to Count Three is that, "Plaintiff's § 1692e(11) claim must fail because the all of the communications he identifies as violations were attached to the state court Warrant-in-Debt filed by Midland and, therefore, were formal pleadings exempt from § 1692e(11)."  Def. Mem. at 5.  Mr. James has alleged that Defendants both mailed and served him a warrant in debt, as well as two different affidavits and an "Account Summary Screen."[3]  Defendants must acknowledge – the documents are in English – that none of the §1692e(11) disclosures were made.  Instead, they must win one of two legal arguments:  (1.) all documents mailed with a warrant in debt are necessarily also "formal pleadings"; and/or (2.) affidavits are themselves formal pleadings.  There is no support in reason or in law for these contentions.

The FDCPA is a remedial statute broadly interpreted to protect consumer debtors from

---

3 Defendants emphasize that the subject communications were "served on him by law enforcement," but improperly ignore the Amended Complaint's additional allegations that they were also mailed to him by Defendants.  Documents served by the Court (or Sheriff) may or may not be FDCPA governed "communications" because they are not conveyed from the debt collector.  *Zevgolis v. Greenberg Law Firm, P.C.*, 3:10CV625-DWD, 2011 WL 251024 (E.D. Va. Jan. 26, 2011).  This concern is immaterial to the claim in this case as the debt collector communications were also mailed by Defendants directly to Mr. James.

debt collection misconduct. *Carroll v. Wolpoff & Abramson*, 961 F.2d 459, 460 (4th Cir. 1992) (Since follow-up communication after the initial contact often provide consumers with their first notice of debt collection process, requirement that disclosure statements be included in all communications furthers congressional intent to prevent abuse of debtors.) This is true whether such collection attempts are by dunning, credit reporting or collection litigation. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007) ("The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA.") The subject §1692e(11) exception for "formal pleadings" should thus be read narrowly. *Scarborough v. Atl. Coast Line R. Co.*, 178 F.2d 253, 258 (4th Cir. 1949) ("Remedial statutes should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers.")

The "formal pleading" exception is far narrower than the one requested by Defendants - a full carve out of all litigation documents. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228 (4th Cir. 2007). As the Fourth Circuit has explained,

> Ultimately, W & A's specific arguments are manifestations of the same general claim: that it simply cannot be the case that the FDCPA covers litigation, the entire purpose of which is to arrive at the truth through the clash of the adversarial process. This argument may have some intuitive appeal, but the fact that an interpretation may seem appealing does not mean that it is correct. … [I]n any event, "[i]n the ordinary case, absent any indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it." *Hubbard v. United States,* 514 U.S. 695, 703, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) (internal quotation marks omitted).

*Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 233-34 (4th Cir. 2007). Despite the volume of FDCPA litigation, there are relatively few cases that have considered the application of the "formal pleading" exception to documents and communications other than a complaint. Beyond *Sayyed*, there are only a handful of other relevant FDCPA decisions.

9

In *Zevgolis v. Greenberg Law Firm, P.C.,* Judge Dohnal weighed application of the exception to state court debtor interrogatories.  The Court took two different approaches to defining the FDCPA phrase "formal pleading."  First, *Zevgolis* considered the ordinary definition of the word "pleading":

> The plain meaning of the term "pleading" strongly suggests that a debtor's interrogatory does not fall within the scope of a "formal pleading." According to Black's Law Dictionary, a "pleading" is "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." *Black's Law Dictionary* 1270 (9th ed.2009). When presented with the issue, Virginia courts have generally relied on such dictionary definitions to distinguish between pleadings and other court documents. *See, e.g., Deline v. Baker,* Case No. 2801-09-1, 2010 Va.App. LEXIS 353 at *12, 2010 WL 3394753 (Va.App. August 31, 2010)  (citing *Baylor v. Commonwealth,* 190 Va. 116, 56 S.E.2d 77, 79 (1949) ("Webster's New International Dictionary, 2d Ed., defines 'pleadings' as, '[t]he successive statements, now usually written, by which the plaintiff sets forth his cause and claim, and the defendant his defenses.' ")). In contrast, interrogatories are a discovery device, separate and apart from a litigant's formal allegations, claims, denials, or defenses. Thus, they are not encompassed within the plain meaning of the term "pleading."

*Zevgolis v. Greenberg Law Firm, P.C.*, 3:10CV625-DWD, 2011 WL 251024 (E.D. Va. Jan. 26, 2011).  *See also* West's Encyclopedia of American Law, "Pleading," 2d ed, 2008. (Pleading: "Asking a court to grant relief. The formal presentation of claims and defenses by parties to a lawsuit. The specific papers by which the allegations of parties to a lawsuit are presented in proper form; specifically the complaint of a plaintiff and the answer of a defendant plus any additional responses to those papers that are authorized by law.")  Certainly by this approach, neither the James affidavits nor the James  "Account Summary Screen" are pleadings, let alone "formal pleadings."

Judge Dohnal also considered the categories and definition of "pleadings" provided at Fed. R. Civ. P. 7(a).  *Zevgolis v. Greenberg Law Firm, P.C.*, 3:10CV625-DWD, 2011 WL 251024 (E.D. Va. Jan. 26, 2011).  This same approach has been applied by each other court to

consider the "formal pleading" exception.  *See e.g. Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 367 (D. Md. 2010) ("While Rule 7(a) does not provide a definitive interpretation of the FDCPA's reference to a "formal pleading," it is a persuasive indication that Congress did not intend for all documents filed in connection with a lawsuit to fall within the formal pleading exceptions."); *Nikkel v. Wakefield & Associates, Inc.*, 10-CV-02411-PAB-CBS, 2011 WL 4479109 (D. Colo. Sept. 26, 2011).

Beyond the simple reliance on the definition of pleading provided under the Federal Rules, the Court may also be guided by the use of the term in state court procedure.  "Virginia's courts have similarly limited the scope of documents constituting pleadings to those including "the allegations made for the purpose of definitely presenting the issue or issues to be tried and determined." *Burch v. Grace St. Bldg. Corp.,* 168 Va. 329, 191 S.E. 672, 677 (Va.1937)." *Zevgolis v. Greenberg Law Firm, P.C.*, 3:10CV625-DWD, 2011 WL 251024 (E.D. Va. Jan. 26, 2011). *See also* Va. Sup. Ct. R. 3:18 ("(a) Pleadings. All motions in writing, including a motion for a bill of particulars and a motion to dismiss, are pleadings.").

Various Virginia court rules and guidance support the conclusion that a "pleading" is an initial lawsuit and an "affidavit" or document such as the account statement is not a pleading. For example, Va. Sup. Ct. R. 1:10 sets out a process for the use of a sworn pleading.  In providing that explanation, it is clear that the Virginia Supreme Court does not consider the term "affidavit" synonymous with or a subset of "pleading."  Va. Sup. Ct. R. 1:10 ("If a statute requires a pleading to be sworn to, and it is not, or requires a pleading to be accompanied by an affidavit, and it is not, but contains all the allegations required, objection on either ground must be made within seven days after the pleading is filed by a motion to strike; otherwise the objection is waived. At any time before the court passes on the motion or within such time

11

thereafter as the court may prescribe, the pleading may be sworn to or the affidavit filed."). In fact, in Virginia, all "pleadings" must be served and provided with a certificate of service. *See* Va. Sup. Ct. R. 8:8.

In Virginia, the affidavits are distinct from pleadings with the later of much greater seriousness and weight.   For example, under Virginia Code § 8.01-271.1, the state equivalent of Rule 11, a person (typically an attorney) who signs a "pleading" is accountable for responsibilities not imposed for mere affidavits.   Similarly, the execution of pleadings may constitute the practice of law (or unauthorized practice of law), while this is not so for statements of account and affidavits. Va. Sup. Ct. R. Pt 6 §1 UPR 3, *Collection Agencies*.  *See e.g. Id.*, UPC 3-6 (**"**Statements of account and affidavits of facts relating to accounts and other matters are not legal instruments, and the preparation of the same by an agency is not the unauthorized practice of law. Such preparation does not require legal training or the application of legal principles; nor is the mere filing of such accounts or affidavits with personal representatives, trustees in bankruptcy and the like representing the interest of another before a tribunal.").

Virginia is not alone in its sharp separation of "affidavits" from the designation of "pleading."   Literally every state surveyed by Counsel turned up the same result, to the point that further listings became fully redundant.[4]

---

4 *See e.g. Brooks-Wright, Inc. v. Maryland Cas. Co.*, 126 N.J.L. 32, 34-35, 17 A.2d 51, 53 (Sup. Ct. 1940) ("While not in itself a pleading, the affidavit of merits is an integral part of the procedure laid down for the interposition of a defense …"); *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 233 (Tex. 1962) ("Rule 58, Texas Rules of Civil Procedure, which authorizes statements in a pleading to be adopted by reference in a different part of the same pleading, in another pleading or in any motion, does not apply to an affidavit filed in support of or opposition to a motion for summary judgment.   The affidavit is not a pleading or motion but constitutes 'proof' upon which the motion will be either granted or denied."); *Cargill, Inc. v. E. Grain Growers*, 140 W. Va. 666, 679, 86 S.E.2d 569, 576 (1955) ("Keeping in mind that only the affidavit was held defective, and that the affidavit is not a pleading."); *Burlew Hardware Co.*

The Court also has the benefit of the way that commentarors have interpreted the "formal pleading" exceptions in both § 1692e(11) and in §1692g. Both sides of the issues – industry supporters and consumer advocates – share the view that "formal pleading" refers to the actual Complaint, and little more. For example, in a 2007 banking article written shortly after the "formal pleading" exception was expanded to § 1692g, an industry author explained:

> The scope of the amendment providing an exception to the validation notice requirements to the FDCPA is very limited. Therefore, although section 802 of the FSRRA will prevent debtors from receiving the § 1692g validation notices in some circumstances, the exception for litigating attorneys does not appear to render the validation requirement "meaningless," as its opponents would argue. Because the amendment only exempts formal legal pleadings from the definition of initial communication under § 1692g, whenever a consumer receives initial correspondence from the debt collector other than a complaint, he will be entitled to receive the § 1692g validation notices with such communication or within five days thereafter.

---

*v. City of Spencer*, 99 W. Va. 44, 127 S.E. 727, 727 (1925) ("An affidavit is not a pleading in which allegations of conclusions of fact may be permissible; on the contrary, it is a statement of fact from which judicial conclusions may be drawn. McLaughlin v. McCann, 123 App. Div. 67, 107 N. Y. S. 762."); Fletcher *v. Flournoy*, 198 Md. 53, 57, 81 A.2d 232, 233 (1951) ("A motion for a summary judgment, like a supporting or opposing affidavit is not a pleading."); *Johnson v. Laughlin*, 7 Kan. 359, 363 (1871) ("It is evident from the second assignment of error that the counsel for plaintiff in error confounds an "affidavit for attachment" with the "pleading" referred to in Civil Code, § 114. An affidavit is not a pleading."); *Cunningham v. Brown*, 51 N.C. App. 264, 271, 276 S.E.2d 718, 724 (1981) ("the affidavit is not a pleading" in the technical sense[.]");*Brady v. Yount*, 42 Wash. 2d 697, 699, 258 P.2d 458, 459 (1953) ("The issue presented was not one which could be determined on affidavits, whether or not controverted. An affidavit is not a pleading, and cannot be made to take the place of a pleading."); *Kent v. Lee*, 52 Wash. App. 576, 579, 762 P.2d 24, 26 (1988) ("An affidavit is not a pleading, but is a solemn, formal asseveration, under oath, upon which others might rely."); *Rannes v. Brusman*, 82 Ohio App. 470, 471, 82 N.E.2d 107, 108 (1948) ("An affidavit is an ex parte declaration and does not conform to this requirement. It is merely a statement of fact from which judicial conclusions may be drawn. It is not a pleading in which allegations of conclusion of fact may be permissible, but is a statement of a fact."); *Purdy v. Purdy*, 41 Ohio App. 411, 416-17, 179 N.E. 698, 700 (1931) ("'An affidavit is a written declaration under oath, made without notice to the adverse party.'Section 11303, General Code, states as follows: 'The only pleadings in civil actions are: '1. Petition; '2. Demurrer to petition; '3. Answer, which if it demands affirmative relief may be styled a cross-petition; '4. Demurrer to answer; '5. Reply; '6. Demurrer to reply.' Consequently, an affidavit is not a pleading.").

Brian Koontz, *NORTH CAROLINA BANKING INSTITUTE, Vol. 11, 2007,* "Creditor Certainty

and Consumer Protection: Complaints as Initial Communications Under the Fair Debt Collection

Practices Act," at 306.  (Exhibit "A").  On the other side of such concerns, FDCPA expert

Richard Rubin offered:

> The starting point is the definition of the operative phrase "a formal pleading in a
> civil action." In jurisdictions whose civil rules mirror the Federal Rules of Civil
> Procedure, the exclusive list of the complaint, answer, and counterclaims, cross-
> claims, and third-party complaints and answers as pleadings in Rule 7(a) may
> well be determinative. If so, then all other communications that occur in the
> normal course of collection litigation, including discovery responses, motions,
> legal memoranda, cover letters conveying pleadings or other documents,
> settlement discussions, and even courtroom testimony, each may be the occasion
> that triggers the § 1692g(a) 30-day validation disclosures.

Richard Rubin, THE CONSUMER ADVOCATE, July 2008, "FDCPA Claims Arising Out of

State Court Collection Litigation." (Exhibit "B")

Notwithstanding the balance of support for the alternate view, Defendants suggest that,

"[C]ourts have also consistently held that affidavits attached to a pleading are integrated into and

constitute a 'pleading.'"  Def. Mem. at 6.  The three cases that are tendered to establish such

"consistency" are *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 224 F.R.D. 261 (D.D.C.

2004)[5], *Czarnowski Display Servs., Inc. v. Bell*, 03 C 5782, 2004 WL 1613553 (N.D. Ill. July 19,

2004), and *Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819 (S.D. Ohio 2008).  It is

one thing to offer marginally applicable case law and quite another to do so under the label of

universal truth.  None of these decisions offers substantive support for the point Defendants

attempt. None of Defendants' cited cases regarding the nature or status of an affidavit say what is

claimed.

---

5 Incorrectly cited as 221 F.R.D. 261.

14

*Judicial Watch* does not weigh in on the present dispute, but instead summarized the

District of the District of Columbia's procedural rule that affidavits could be the subject of a Fed.

R. Civ. P. 12(f) Motion to Strike. *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 224 F.R.D.

261, 263 (D.D.C. 2004) ("It is settled in this jurisdiction that the term "pleading" for the

purposes of Rule 12(f) includes affidavits and declarations filed in support of technical pleadings

because Rule 12(f) is the only viable method for attacking materiality and pertinence defects in

such documents.")  Whether or not that conclusion offers any help to the question in this case -

whether an account affidavit or account summary statement constitute "formal pleadings" under

the FDCPA - the Defendants are faced with the opposite rule as to the Rule 12(f) argument in a

vast majority of jurisdictions, including our own.  Under Rule 12(f), an affidavit is simply not a

pleading.  *Int'l Longshoremen's Ass'n, S.S. Clerks Local 1624, AFL-CIO v. Virginia Int'l

Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995) ("Plaintiffs have attempted to use [a Rule

12(f)] motion to strike Employer Defendants' reply brief and accompanying affidavits. ***Briefs

and affidavits, however, are not pleadings***. *See* Fed.R.Civ.P. 7(a) (defining pleadings as

complaints, answers and replies to counterclaims); *Newsome v. Webster,* 843 F.Supp. 1460, 1464

(S.D.Ga.1994) (motion to strike not appropriate to challenge affidavits); *Welch v. Board of

Directors,* 146 F.R.D. 131, 138–39 (W.D.Pa.1993) (same holding as *Newsome* )."  (Emphasis

added); *See also Sellers v. Henman*, 41 F.3d 1100, 1101 (7th Cir. 1994) ("Rule 12(a)(4)(A)

allows a party that files a motion to strike a pleading to delay filing his responsive pleading until

ten days after the motion is denied, but ***an affidavit is not a pleading***, or a counteraffidavit a

responsive pleading, so the rule is not applicable." (Emphasis added)); *Xavier v. Belfor USA

Group, Inc.*, CIV.A.06-491, 2008 WL 4862533 (E.D. La. Sept. 23, 2008) (***Affidavits are not

pleadings*** under Rules 7(a) and 12(f)) (Emphasis added); *Utley v. Cont'l Divide Outfitters*, CV

15

07-364-LMB, 2009 WL 631465 (D. Idaho Mar. 10, 2009) ("***An affidavit is not a pleading*** and, '[t]hus, by the plain terms [of] Rule 12(f), the rule cannot be use to strike an affidavit .') (Emphasis added).

*Czarnowski Display Services, Inc. v. Bell*, is also unhelpful and if anything highlights Defendants' unreasoned desperation to manufacture a defense – something, anything. Defendants cite the lone note in the case in which the court footnotes an overview to the "Background" section of its opinion by explaining, "The background information is taken from parties' pleadings, including attached affidavits." *Czarnowski Display Services, Inc. v. Bell*, 2004 WL 1613553 (N.D. Ill. July 19, 2004). The court was certainly not attempting to offer a legal explanation or analysis of any present use. It was casually using language intended only to explain to a reader from where its understanding of facts was derived. It appears that Defendants' argument is nothing more than, "a court once used 'pleading' and 'affidavit' in the same sentence." The fact that they were able to find just one case on Westlaw or LexisNexis with such text is itself adequate refutation of Defendants' argument. Alternately, the Court could look at the dozens of more relevant cases cited herein.

Defendants' third case does consider a circumstance where the complaint was deemed a formal pleading. *Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819 (S.D. Ohio 2008). However, the parties in the case and the court appear not to have addressed the question of whether or not an affidavit was itself a formal pleading. To the extent it were read as broadly as Defendants ask, the case would be contrary to the rest of the §1692e(11) "formal pleading" cases. But possibly what Defendants are implying is that even if an affidavit is not a pleading, its attachment to a complaint would make it so. This argument fails for a number of reasons.

First, in the present case the affidavit and account statement are not part of the warrant in

debt. They are not mandatory and are not referenced in the warrant. The warrant stands on its own regardless of whether or not an affidavit is provided. The affidavit and the account document are not referenced in or incorporated into the warrant in debt. They are not part of or incorporated in the warrant. For example, the warrant in debt, Def. Mem. Ex. A, does not mention the affidavit or account summary documents. This contrasts with a complaint in which an affidavit is expressly incorporated within the pleading. Possibly the law would apply differently if the warrant stated as its basis for suit, "See Attached Affidavit." But such possibility merely serves to highlight the fact in this case that the warrant and affidavit and summary screen documents are all separate documents and communications.

Second, documents included with the mailed warrant in debt are not definitionally also pleadings. *See e.g. Nikkel v. Wakefield & Assocs., Inc.*, 10-CV-02411-PAB-CBS, 2011 WL 4479109 (D. Colo. Sept. 26, 2011) (A cover letter is not itself a "formal pleading." Thus, the cover letter could plausibly have been an initial communication separate from the pleadings, with which defendant was required to make the statutory disclosures."). Exhibits attached to pleadings or motions are not themselves "'pleadings." *Larson v. Wal-Mart Stores, Inc.*, 3:08-CV-86, 2008 WL 4924728 (E.D. Tenn. Nov. 14, 2008); *Fox v. Mich. State Police Dep't,* 173 F. App'x 372, 375 (6th Cir.2006); *Rouse v. Caruso,* No. 06-CV-10961-DT, 2007 WL 209920, at *2 (E.D.Mich. Jan.24, 2007). Similarly, a summons is not a "formal pleading" even when mailed with the complaint. Jeff Sovern, Professor of Law, St. John's University School of Law**,** *Comment for the Federal Trade Commission's Debt Collection Workshop*, p. 1 wrote:

> The 2006 amendment takes care of whether the complaint is an initial communication. But what about a summons? Because complaints are usually accompanied by a summons, an exclusion for a complaint that does not also extend to a summons serves little purpose, but the subsection (d) exclusion seems not to apply to a summons. The FDCPA does not define pleadings, but a

summons is not usually thought of as a pleading, much less a "formal pleading." Indeed, the definition of pleadings" in Federal Rules of Civil Procedure 7(a) does not include a summons.

(Exhibit "C").

Finally, Defendants also presume without support that a warrant in debt is a "formal pleading." Even if it somehow did, it would at best be a "pleading" as opposed to a "formal pleading." The Court should not ignore the word "formal" in a way that renders it meaningless. *See Shipbuilders Council of Am. v. U.S. Coast Guard,* 578 F.3d 234, 244 (4th Cir.2009) (noting duty "to give effect to all operative portions of the enacted language" (citation and quotation marks omitted)). While a warrant serves the function of a complaint in that it initiates a lawsuit, it does not meet the definitional components of "pleading." (e.g. individual factual and legal allegations to support a charge or claim). In fact, in Virginia, a warrant is expressly <u>not</u> a "formal pleading." *Canty v. Wyatt Storage Corp.*, 208 Va. 161, 161, 156 S.E.2d 582, 582 (1967) (After initiation of an action by a civil warrant, the case was tried without "formal pleadings."; *Harding v. Com.*, 105 Va. 858, 52 S.E. 832, 832 (1906) (Finding that a criminal defendant could be tried on a warrant alone without the need for "formal pleadings."); *Autolease, Inc. v. Nito Dixon*, 24 Va. Cir. 350 (1991) (Garnishment summons is not a "formal pleading."). Federal procedure also makes such a distinction. For example, "Summary trials … may be conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even ex parte." FPP § 1026, 4 Fed. Prac. & Proc. Civ. § 1026 (3d ed.). A lawsuit drafted by a pro se Plaintiff may be a pleading, but it is not a "formal pleading." *See e.g. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is "to be liberally construed," *Estelle,* 429 U.S., at 106, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than "formal pleadings" drafted by lawyers[.]")

18

## B.  PLAINTIFF HAS PLED A PLAUSIBLE ABUSE OF PROCESS CLAIM.

"To sustain a cause of action for abuse of process, a plaintiff must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. *Mullins v. Sanders,* 189 Va. 624, 633, 54 S.E.2d 116, 121 (1949); *Glidewell v. Murray-Lacy,* 124 Va. 563, 570, 98 S.E. 665, 668 (1919)." *Donohoe Const. Co., Inc. v. Mount Vernon Associates*, 235 Va. 531, 539, 369 S.E.2d 857, 862 (1988).  Plaintiff has pled a plausible set of facts sufficient to establish abuse of process.

### 1.  Defendants acted in the use of the General District Court collection process in an improper manner.

Process is maliciously abused when it is used oppressively, *e.g.,* as "a whip to force the payment of an alleged indebtedness," *Mullins,* 189 Va. at 635, 54 S.E.2d at 122 (citation omitted), or as a means of extortion,  *see Glidewell,* 124 Va. at 575, 98 S.E. at 669.  *In re Quinn*, 4 F.3d 986 (4th Cir. 1993).  "The term "process" is interpreted broadly and encompasses the entire range of activities and procedures incident to the litigation process, including discovery proceedings, noticing of depositions, and issuing of subpoenas."  1 Am. Jur. 2d Abuse of Process § 2.

Plaintiff has alleged multiple acts by Defendants that oppressively and improperly used the litigation process.  Foremost amongst these is Defendants' creation and use of the intentionally dishonest collection affidavit.  Additionally, Defendants attached and filed the "Summary Screen" document to appear as if it was generated by Midland and as if it were truthful.  Both of these acts were improper and perversions of the respective components of the litigation process.

Defendants do not actually challenge the propriety of these acts.  Instead, they ignore

19

them completely and misconstrue Plaintiff's challenge as one focused on the bringing of the

collection lawsuit itself.  If that were the single basis to the claim, Plaintiff would be in a more

difficult position.  A number of Virginia decisions, including the primary case offered in this

regard by Defendants, have rejected abuse of process claims because they failed to show some

improper conduct or use of process after the initial filing of the subject action.  In the present

case, it is not the mere filing of the lawsuit that is challenged, but instead the subsequent

submission to the General District Court and service upon the Plaintiff of fraudulent litigation

documents in a fraudulent manner.  At a Rule 12(b)(6) posture, these allegations are sufficient to

foretell a plausible claim.[6]

### 2.      Defendants' Had an Ulterior Motive.

Defendants argue that they possessed a proper and not ulterior motive in their conduct

towards Mr. James because their lone objective was to prosecute and litigate a civil lawsuit and

thereafter collect upon a judgment.  However, as Plaintiff has pled, such a course was not

possible if Mr. James resisted.  If he showed up to court to contest the case, it could not proceed.

Defendants' position was simply a concealed bluff.

Defendants' relevant motives – ulterior motives – are alleged to have been as follows:

First, as alleged in the Amended Complaint, defendants were motivated to bring this action in

hopes of obtaining a default judgment even though they knew that no debt was owed.  Justice

Sandra Day O'Connor (sitting by designation) wrote the unanimous panel decision in a recent

Ninth Circuit's opinion, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*. 637 F.3d 939,

956-57 (9th Cir. 2011).  The opinion affirmed a jury verdict against another debt collector for the

---

6 Defendants also conflate the two cause of action requirements. Most of the reasons why they
assert the propriety and correctness of their use of process is because they as well assert a
legitimate motive (attempting to collect a just debt).

Abuse of Process tort.[7]   The elements of the abuse of process tort,

> … are satisfied where, as here, evidence indicates that the litigant willfully filed a
> lawsuit "with an ulterior purpose of extracting money from [the opposing party]
> that he did not owe," and that the litigant "had no valid legal claim against [the
> opposing party] and knew it, but filed an action ... nonetheless." *Seipel v. Olympic
> Coast Invs.,* 344 Mont. 415, 188 P.3d 1027, 1032 (2008).   Substantial evidence
> supports the jury's finding of liability on this claim. McCollough presented
> evidence that JRL filed suit to extract money from McCollough that it could not
> legally obtain in a collection action and that it filed a baseless action with
> knowledge that it had no legal claim. McCollough presented evidence that JRL
> filed and pursued a time-barred lawsuit against him, even though JRL's own
> electronic file indicated that the suit was time-barred. McCollough presented
> evidence that JRL continued to prosecute the collection case for four months after
> having been explicitly told by CACV that the June 30, 2004, payment was not
> grounds for extending the statute of limitations. McCollough presented evidence
> that JRL sought attorney's fees without confirming that McCollough had a
> contractual fee obligation. The jury could have inferred from this evidence that
> JRL's purpose in filing the lawsuit was to coerce McCollough to pay awards and
> fees to which it and CACV were not entitled. The jury's abuse of process verdict
> was supported by substantial evidence, and the district court properly denied
> JRL's motion for judgment as a matter of law.

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 956-57 (9th Cir. 2011).   In

fact, the Restatement (Second) itself offers an example of the use of attachment in debt collection

and manipulation of service and venue as a classic Abuse of Process tort.   Restatement (Second)

of Torts § 682 (1977).[8]   As in *McCollough*, the debt collector's "ulterior purpose [was]

---

7 While the decision was based on Montana law, both Montana and Virginia have adopted the
Restatement (Second) elements of the claim.: "To sustain an action for abuse of process under
Montana law, a plaintiff must establish two elements: '(1) an ulterior purpose; and (2) a willful
act in the use of the process not proper in the regular conduct of the proceeding.' " (citation
omitted). *Id.*

8 "3. A, an attorney to whom C has entrusted the collection of a debt owed by B, assigns C's
claim to D, who resides some distance from B. In accordance with A's instructions D brings an
action as assignee and causes a subpoena to issue at a time when it is extremely inconvenient for
B to appear, A's purpose being to force B to pay the claim rather than to undergo the
inconvenience of appearance. B not appearing, A causes a bench warrant to issue for his arrest
under which B is fined and execution against his body is ordered. Before this order is carried out,
B brings his action against A. A is subject to liability to B for abuse of process."

extracting money from [the opposing party] that he did not owe." *McCollough*, 637 F.3d at 956. It was extortion: "Pay us or pay a lawyer."

Second, Defendants possessed an ulterior motive to decieve, posture, bluff and threaten the Plaintiff so that he would not attend his court date and contest the otherwise unprovable debt. Defendants did not institute the lawsuit and serve the fraudulant affidaivit and summary screen document in order to collect a lawful debt owed to it.  Rather, the Defendants' use of the legal process in such manner was intended as a threat to force the Plaintiff to settle the matter and pay money to the Defendants without proceeding to a trial on the merits, a trial in which the Defendants knew they lacked the evidence to prevail.  The false affidavits were generated and delivered to Mr. James and other consumers with Defendants' plan and ambition that the documents cause the consumer to forgoe appearing in the collection case and thus permitting Defendants to obtain judgment by default.

Accordingly, at this early stage, Plaintiff has sufficiently pled his cause of action for abuse of process.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,
**GILBERT JAMES**

By:_____/s/_____
                    Of Counsel

MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.

1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com


LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23314
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@cox.net


## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2011, I will file the foregoing motion electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Neal Anthony
Timothy St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462

_____/s/_____
LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23314
Tel:    (757) 930-3660
Fax:    (757) 930-3662
lenbennett@cox.net

23