UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GILBERT JAMES,

        Plaintiff,

v.                                                Civil Action No. 3:11cv221

ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC and
MIDLAND CREDIT MANAGEMENT, INC.

        Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR A PROTECTIVE ORDER REGARDING
DEPOSITION OF NANCY KOHLS**

COMES NOW the Plaintiff, Gilbert James (hereafter, "James" or "Plaintiff"), by counsel, and as for his Opposition to Defendants' Motion for a Protective Order Regarding the Deposition of Nancy Kohls, he states as follows:

**OVERVIEW**

Defendants continue their use (and abuse) of Fed. R. Civ. P. 26(c)(1)(G) and of the blanket protective order (Docket No. 37) allowing a party to temporarily designate documents and deposition testimony as confidential. As previously recounted in Plaintiff's opposition to Defendant's similar motion regarding its disclosed documents, Defendant has designated and now moved to protect as trade secrets documents and testimony that has no place under Rule 26(c)(1)(G) governance.[1] In the present instance,

---

[1] Plaintiff adopts and incorporates by reference the Case Background he has previously offered in opposition to Defendants' previous Motion for a Protective Order regarding its disclosed documents. (Docket No. 46).

not a word of the deposition is fairly protectable.

Instead, Defendants' motion is motivated by two improper objectives – (a.) make litigation of this case and litigation in other Virginia Midland cases more expensive, difficult and resource intensive and (b.) prevent disclosure of Defendants' fraudulent practices to government agencies, Judges, and other consumers and consumer groups. Plaintiff recognizes the added burden challenge to Defendants' motion places upon the Court. Nevertheless, if Defendants' strategy is rewarded, in this and every one of its cases it will be free to label documents and testimony as protected merely on its own say and for interests not otherwise protected by Rule 26(c)(1). The burden on the Plaintiff, on other consumer litigants and on the Public overwhelm Defendants' obvious fear of prosecution and shame at public disclosure.

## ARGUMENT

**A. The Deposition testimony designated by Defendants does not contain or reveal Trade Secrets or other "Confidential Information" contemplated by Rule 26(c)(7)**

None of the testimony designated by Defendants contains trade secrets or other confidential information protected by Rule 26(c)(1)(G). The mere fact that Defendants want it kept from public view is not sufficient for Rule 26(c)(1)(G) coverage. Despite this burden, and despite the briefing already before the Court in the earlier motion, Defendants again offer only a conclusionary declaration from their General Counsel, Gregory Call, and no meaningful argument or explanation as to how the subject documents contain "any formula, pattern, device or compilation of information which is used in [Defendants'] business, and which gives [them] an opportunity to obtain an advantage over competitors who do not know or use it." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984).

2

Initially, in all regards the Call declaration is inadequate. In his previous declaration, Mr. Call offered his "testimony" on either "my review of Defendants' business records and/or personal knowledge." This language was challenged in Plaintiff's opposition. However presently, Mr. Call does not even suggest that he has personal knowledge of the contents of the declaration or other related information. This makes sense – he is a Senior Vice President of a large corporate debt collector. And Mr. Call did not begin his employment at Defendants until 2010[2], while most of the subject documents discussed in the deposition were initiated and created before that period.

Beyond the prima facie failure of the Call declaration – the only "proof" they offers to attempt its burden – the testimony suggested also fails to satisfy Rule 26(c). While Defendants assert – and Plaintiff agrees – that it is the Defendants' general policy to label the challenged information as "confidential" whenever a consumer requests it in litigation, (Decl. of Gregory Call ¶ 17), this fact by itself is insufficient to meet threshold of a trade secret. As Judge Easterbrook declared,

> Beyond asserting that the document must be kept confidential because we say so (the "agreement is, by its terms, confidential"), this contends only that disclosure "could ... harm Abbott's competitive position." How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained. Why is the fact that some other document contains *references* to a license sufficient to conceal the referring document? Not explained. If it were, then the district court's opinion, see 2002 U.S. Dist. LEXIS 5475 (N.D.Ill. Mar. 26, 2002), which includes not only references to the licenses but also extended quotations from them, would have to be blotted from the books. So all we have is ukase.

*Baxter Int'l, Inc. v. Abbott Laboratories*, 297 F.3d 544, 547 (7th Cir. 2002). Defendant does not offer any factual basis or evidentiary proffer to explain how it would suffer a

---

[2] http://www.linkedin.com/in/gregcall last visited September 12, 2011.

3

competitive disadvantage if the specific documents at issue became public. The Call declaration is entirely conclusory. It fails to demonstrate what it is about the "confidential" information that makes it a true trade secret or otherwise confidential commercial information and that a clearly defined and serious injury will result from disclosure of the information. Among other things, the declaration fails to provide any particularized description of the information at issue, how the allegedly confidential information was derived, the amount of time and money expended to develop the information, what is and is not known to competitors about the information, and whether customers and/or other third parties to whom this information is disclosed are required to keep the information secret. *See e.g. IDX Systems Corp. v. Epic Systems Corp.,* 285 F.3d 581, 583-84 (7th Cir. 2002); *Rossi,* 180 F.R.D. at 341; *Cook v. Boston Scientific Corp.,* 206 F.R.D. 244 (S.D. Ind. 2001); *Kobelco Metal Powder of America, Inc. v. The Energy Cooperative,* No. IP 01-0051-C H/K, 2001 WL 1397311, * 3 (S.D. Ind. Oct. 30, 2001). Considered in its entirety, the declaration shows only that Defendants consider nearly everything concerning their business to be confidential but not whether their assertions of confidentiality or harm are actually legitimate. *Rossi,* 180 F.R.D. at 341.

**B. Defendants Have Not Met their "Good Cause" Burden to Obtain a Rule 26(c) Protective Order.**

Unlike the previous Call Declaration, this one does not even attempt to suggest harm or impact if the subject deposition testimony is publicly revealed. Neither the Call declaration nor any other proffered evidence give a specific example of how a particular line or even summary of testimony would cause a specific harm. Defendants do not apparently understand the high burden faced in moving for a protective order. As the Federal Judicial Center has made clear:

4

> The court should enter a protective order only when the movant makes a particularized showing of "good cause," by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality—generalities and unsupported contentions do not suffice.

Manual For Complex Litigation, Fourth, §11.432 Limited Disclosure/Protective Orders, 2004 WL 258619, 2.

Defendants seek a protective order pursuant to Federal Rule of Civil Procedure 26(c). Rule 26(c) provides that the Court may, for "good cause shown" make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue expense, including "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c). To obtain a protective order under Rule 26(c), the moving party must establish that the information sought is covered by the rule and that it will be harmed by disclosure. *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998) (citing *See* 8 Charles Alan Wright & Richard L. Marcus, *Federal Practice and Procedure* § 2043, at 555-57 (2d ed.1994).) "The party seeking a protective order has the burden of establishing "good cause" by demonstrating that 'specific prejudice or harm will result if no protective order is granted.' *Phillips v. Gen. Motors Corp.,* 307 F.3d 1206, 1210–11 (9th Cir. 2002)." *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010); See also *Lathon v. Wal-Mart Stores E., LP*, CIV.A. 3:09CV57, 2009 WL 1810006 (E.D. Va. June 24, 2009) ("For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm that will result if no protective order is granted.")

5

The finding of both protectable information and good cause must be based on a particular factual demonstration of trade secrets or confidential commercial information and potential harm, not on conclusory statements. "The rule requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show some plainly adequate reason therefore. The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." FPP § 2035, 8A Fed. Prac. & Proc. Civ. § 2035 (3d ed.). Rule 26(c)'s good cause requirement "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Great Am. Ins. Co. v. Gross*, 68 Fed. R. Serv. 3d 160 (E.D. Va. 2007) (citations omitted). See also *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) (Generalized allegations of injury to reputation and relationships with clients insufficient as the moving party was not able to articulate any specific cognizable injury that would flow from dissemination of the materials.); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204 (8th Cir. 1973), cert. denied, 414 U.S. 1162, 94 S. Ct. 926, 39 L. Ed. 2d 116 (1974) (Under provisions of this rule requiring that "good cause" be shown for a protective order to be issued, the burden is upon movant to show necessity of its issuance, which contemplates a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements; such determination must also include a consideration of relative hardship to nonmoving party should the protective order be granted.); *Patt v. Family Health Systems, Inc.*, 189 F.R.D. 518 (E.D. Wis. 1999), aff'd, 280 F.3d 749 (7th Cir. 2002). (General injuries from discovery are insufficient to warrant issuance of protective order. It must instead be shown that disclosure will cause a

clearly defined and serious injury. The moving party failed to make that showing.); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7-8 (1st Cir. 1986). ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements."); *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 479 (S.D.N.Y. 1982). ("[T]he moving party must show that a 'clearly defined and very serious injury' will result if a protective order is not issued. … At the least, the moving party must provide the court with 'information from which it can reasonably conclude that the nature and magnitude of the moving party's interest are such that protective intervention by the court is justified.' (citations omitted); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.") (citation omitted). Federal courts therefore require parties to show "specific examples" of harm that would likely occur in the absence of a confidentiality order before the court will agree to issue such an order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Federal courts have routinely refused to grant protective orders when the parties requesting such orders failed to show, with "specific demonstrations of fact," that "good cause" existed for the issuance of the order. *See, e.g., Reese v. Reyes*, 2008 WL 2186330, at *1 (W.D. Ark. May 23, 2008) (denying motion for protective order when party requesting order failed to "demonstrate[] how he would be harmed by the disclosure of his medical records"); *Pyle v. Stone*, 2008 WL 5045681, at *2 (W.D. Ark. Nov. 21, 2008) (party failed to demonstrate good cause for protective order when he argued that a request for bank records was "overly broad and cover[ed] too many years," but failed to

7

"articulate specific facts showing a specific harm that would arise from disclosure of [his] bank records").

Defendant does not detail any specific competitive harm it could, let alone would, suffer by public knowledge of its documents. Its Call declaration is void of any specific examples of potential harm. There is not mention of a particular competitor who would seek such procedures or benefit (or harm Defendants) from the disclosure of the Kohl's testimony.

Defendants have not proffered accurate details of the deposition testimony for the Court's consideration. In fact, its summaries are grossly inaccurate.[3] Because Defendants' memorandum fails to organize or analyze the designated testimony, Plaintiff will do so in the order it was transcribed. Exhibit "A" is a verbatim and complete transcript of the portions of the Kohls deposition Defendants claim should be protected. The excerpts are organized by Defendants' designation number. (Docket No. __-1). This is what Defendants should have attempted and they should not now be permitted to do so by Reply.

**Defendants' Designations:**

(*Defendants' Designations 1,2 and 5*). **Identity of two of the debt seller creditors that sell portfolios of debt to Defendants; the name of the two Virginia debt collection law firms that sue on Defendants' behalf. TRANSCRIPT 13:6-8; 14:20 – 16:23; 23:15 – 24:5.**

---

[3] Defendants also improperly group the subject testimony in to general categories without any explanation as to why it has done so and leaves for the Court the burden of hunting down and applying the Declaration, Memorandum and transcript to one another. On that basis alone the Motion should be rejected.

8

This section of the transcript and is the first designated, and is as well useful for the Court to understand the substance and nature of the many additional transcript excerpts to follow. None of this information is properly designated as confidential. Midland Credit Management buys charged-off debt from two companies who met with Midland in 2011. There are no details of the meeting other than the names of the Midland executives who were present. Midland also works with two Virginia law firms, each of whom has already been identified in this case debt collection law firms who already identify themselves by filing lawsuits on behalf of Defendants in Virginia.

All of these facts can be determining from examining Midland's General District Court files in which Midland identifies the name of the creditor from whom it purchased the account it now seeks to sue. For example, Plaintiff's counsel already represents numerous consumers who were sued by Midland regarding accounts it claimed to have purchased from various creditors including GE Capital, Capital One, Bank of America, Aspire and Target. (Plaintiff provides this list from their current litigation files, not from the Kohls deposition). Further, even the Attorneys General already know of these "clients". For example, Minnesota's Attorney General announced a recent 2011 prosecution accusing Defendants "of defrauding Minnesota courts and citizens by filing false and deceptive "robo-signed" affidavits—generated at its offices in St. Cloud, Minnesota—to collect on old consumer debts that it purchased from credit card companies and others for about three cents on the dollar." In the same press release, she explained that,

> Midland and its publicly-traded parent corporation, Encore Capital Group, Inc., have paid more than $1.8 billion to obtain 33 million customer accounts with a face value of about $54.7 billion, or an average cost of about three cents on the dollar, according to Encore's 2010 Form 10-K.

> Midland and Encore buy electronic portfolios containing billions of dollars of old, charged-off consumer debt from credit card companies, banks, telecommunications firms, and other creditors. These include Bank of America, JPMorgan Chase, Citibank, Wells Fargo, HSBC, Providian, and Verizon Wireless, among others. Several of these banks, including Bank of America, JPMorgan Chase, and Citibank, also provided Midland with financing to pursue its debt acquisitions and collections. For example, Encore currently has a $410 million revolving credit line to acquire consumer debt from many of the same banks that have sold debt to Midland, including JPMorgan Chase, Bank of America, and Citibank.

The Office of Attorney General Lori Swanson, Press Release, http://www.ag.state.mn.us/consumer/pressrelease/110328debtbuyers.asp last visited on October 7, 2011.

Regardless, there is no identified or specific harm that Defendants have suggested that would befall them if this testimony were disclosed.

**(*Defendants' Designations 3 and 4*). How Midland Credit Management employee Kohl accesses her email and previous training documents on her employer's intranet (computer server). TRANSCRIPT 17:11– 18:16; 19:10– 21:20.**

Neither Defendants nor Mr. Call offer any explanation as to why this information (e.g. the fact that Kohl uses Microsoft Outlook for her email and that MCM makes training documents available for viewing on its computer) is a trade secret nor why disclosure of the information would cause it a specific and significant harm.

**(*Defendants' Designations 6*) Whether or not the logo of Encore Capital Group, Inc. is on the Defendants' envelopes and PowerPoint cover pages. 25:4-27:12.**

Defendants' designation is obviously improper. The only mention of a basis for the designation is in the Call declaration, ¶9, as part of a discussion of training manuals. This theoretical basis is incorrect. The training procedures are not themselves protectable as more fully argued in Plaintiff's opposition to the earlier Rule 26(c) motion. But in the

present context – whether "Encore Capital" was on the title page – the designation and argument are just absurd. That Encore Capital mails envelopes and uses training manuals with its name on them are not trade secrets.

**(*Defendants' Designations 7*) The fact that the witness assumes Mr. Black, the company CEO has some role in Midland Credit Management. 28:4-14.**

There is no good faith basis for this designation. The witness didn't know anything. Regardless, Mr. Black's role at Midland is no secret. He has been deposed on the issue, with no secrecy involved, as recently as May 2010. *See* Exhibit "B". Plaintiff's counsel is already in possession of the full transcript of the deposition.

**5. (*Defendants' Designations 8*) Plaintiff's Deposition Exhibit – An Organizational Chart admitted into evidence in the *Brim v. Midland* jury trial in the Northern District of Alabama. 29:14 – 33:5.**

Defendants have objected to the use of their Organizational Chart. However, they did not produce it in this case and cannot now designate it. It is Plaintiff's exhibit, not their own. Further it was previously admitted into evidence in open court without a seal or protective order. *See e.g. Brim v. Midland Credit Mgmt., Inc.*, CV-10-J-369-S, 2011 WL 2665785 (N.D. Ala. May 4, 2011) ("The defendant also objects to the court admitting an organizational chart of defendant's parent company as an exhibit. Doc. 81 at 9. Although again claimed by defendant as irrelevant, the defendant is but one of several "Midland" entities and the evidence concerning their relationship was greatly clarified for the jury by use of this demonstrative aid.") And it is now part of the publically filed Eleventh Circuit record on Midland's appeal.

(*Defendants' Designations 9, 12, 13, 16 through 25*) **The documents Defendants' affiant reviewed before signing the collection affidavit; the Affidavit manufacturing process. 34:14 – 43:4; 78:5-82:9; 82:19 – 84:21; 92:25-95:12; 99:13- 117:10; 117:24-136:25; 137:17 – 158:23; 162:8 – 174:19; 175:11-181:15; 181:23-183:18; 184:21-206:21; 207:5-212:3; 212:9-231:19.**

<u>Plaintiff incorporates his argument previously made regarding Defendants' previous motion for a protective order.</u>

Defendant has sued over 10,000 consumers in Virginia alone over the last year. In each it has submitted to the General District Court and the targeted consumer an affidavit signed by an employee such as Ms. Kohl. In each the employee claimed to have reviewed Defendants' "business records." Yet it now claims a secrecy interest in withholding from public view what documents were in fact reviewed. Defendant is submitting public affidavits in which it basically states: "I am a Midland employee. My job includes the review of documents and a process to verify whether or not a debt is owed." Yet now it claims an entitlement to withhold from public view which documents were reviewed and what process in particular was used to determine whether or not a debt is owed.

There is nothing proprietary about this information. To the extent it somehow was, it would have been waived by the ongoing and mass use of the affidavits themselves.

(*Defendants' Designations 10 and 11*). **The structure of employee compensation for the "Legal Specialist" employees whose only job is to sign affidavits; names of various employees. 51:14 – 58:2; 59:1 – 69:12.**

12

Defendants seek to withhold this testimony from public use because it contains, "The level of compensation paid to employees of the Midland Defendants, and the specific performance criteria used in evaluating employees during their periodic evaluations." Def. Mem. 4.  However, nowhere in their memorandum or in the Call declaration do they suggest a statutory basis for hiding this information or a specific (or even theoretical) harm they would face if it were publically known.  Further, the challenged information – what an entry-level employee makes per hour at Encore or Midland Credit Management, and what their official responsibilities are, is nothing particularly secret.  See e.g. http://www.simplyhired.com/a/salary/search/q-midland+credit+management last viewed on October 10, 2011 (average salary at Midland Credit Management) or http://www.glassdoor.com/Salary/Encore-Capital-Group-Salaries-E9296.htm and http://www.glassdoor.com/Salary/Midland-Credit-Management-Salaries-E290915.htm last viewed on October 10, 2011 (reported compensation at Encore Capital Group and Midland Credit Management).  Further, the detailed job description – or at least the official one – is available on the Encore Capital Group website.  Exhibit "C".

With regard to the names of several employees known to the witness, Defendants again frivolously designate.  This testimony does not identify any trade secret or jeopardize Defendant competitively.  Even the names and backgrounds of the listed employees are already publically available.  See e.g. http://www.ndcourts.gov/Court/Lawyers/06197.htm last visited October 10, 2011 (State Bar information for listed employee); http://creditboards.com/forums/index.php?showtopic=453810 last visited October 10,

2011 (Consumer complaint board discussing contact from a listed employee); www.minncle.org/materials/seminars/35512.pdf last visited October 10, 2011 (Minnesota CLE for October 10-11, 2011 listing collection session taught by listed employee). (*Defendants' Designations 14 and 15*). **The deponent once testified in an Ohio collection case; the deponent testified how she spent her typical work day and provided the percentage breakdown of the several tasks she has to perform. 87:6-16.**

Plaintiff has no idea why the Defendants have designated this testimony as a trade secret. It shouldn't be.

## C. The Balancing of Interests Weighs Against Issuance of A *Protective Order*

Even if somehow the Defendant would be theoretically exposed to competitive harm, a Rule 26(c)(1)(G) protective order is appropriate only if the moving party's harm is greater than other interests at stake. For the Plaintiff, and for other consumers represented by Plaintiff's counsel, catering to Defendants' desire to keep its secrets in house has a cost and burden. The protective order being sought is meant to totally disrupt the manner in which counsel and the Court ordinarily litigate a case. *Pintos v. Pacific Creditor's Association,* 504 F.3d 792, 801-803 (9th Cir. 2007). As it stands, Plaintiff cannot use any designated documents in a filed pleading without the delay to permit Defendants' filing of a certainly futile Motion to Seal. Further, Plaintiff's counsel represent literally hundreds of similar consumers and is defending many of them in state court collection actions brought by Midland Credit Management. Defendants have refused to permit the collateral case use of such documents. The non-rule based

restriction of the use of the Defendants' affidavit documents improperly interferes with Plaintiff and Plaintiff's counsel's rights to otherwise use the disputed documents.  As Judge Ellis has explained:

> Many circuits have sensibly held that where discovery materials are not protected by a valid protective order, parties may use that information in whatever manner they see fit. *See Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir.1994) ("Absent a valid protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit."). It cannot logically be the case that good cause exists to prohibit the public disclosure of discovery materials because a party states an intent to disseminate those materials in accordance with the law. In other words, a party cannot lose the right to disseminate all discovery materials not protected by a protective order simply by stating an intent to exercise that very right.

*U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 567 (E.D. Va. 2010).  See also *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 780 (1st Cir.1988) ("Indeed, the Supreme Court has noted that parties have general first amendment freedoms with regard to information gained through discovery and that, absent a valid court order to the contrary, they are entitled to disseminate the information as they see fit."); *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.,* 748 F.2d 1421, 1424 (10th Cir.1984) ("While it may be conceded that parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order, ... it does not follow that they can be compelled to disseminate such information."); *Exum v. U.S. Olympic Committee,* 209 F.R.D. 201, 206 (D.Colo.2002) ("In the absence of a showing of good cause for confidentiality, the parties are free to disseminate discovery materials to the public").

Further, though this case may be distinct and in many significant ways different than other pending cases against these Defendants, much of the discovery between teh

15

cases will be repetitive. For example, Defendant Encore Capital has argued in each case that it is not a debt collector. Courts have uniformly held that discovery in one case may be properly used in another case against the same Defendant. *See SEC v. TheStreet.com*, 273 F.3d 222, 231 (2d Cir. 2001); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) (citing cases). If the party seeking information would be entitled to obtain it in the other litigation, there is little need to require redundant discovery proceedings. *See id.* (*citing Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980)).

Beyond the use of the documents by Plaintiff and his counsel, there is also a strong public interest in public disclosure of these documents. The well-established presumption is that the public has an overwhelming interest in knowing what is happening in a judicial proceeding. *Citizens First Nat'l Bank,* 178 F.3d at 945-46; *Union Oil,* 220 F.3d at 568. Clearly, such a result is unworkable, is inconsistent with the public's interest in access to judicial proceedings, and is anathema to the rule laid down by the Seventh Circuit in *American Telephone & Telegraph,* 594 F.2d at 596. The presumption of public access extends to pretrial discovery absent "compelling reasons [] for denying the public access to the proceedings." *Id.; Citizens First Nat'l Bank,* 178 F.3d at 945-46. This is especially true in this instance, as the documents Defendants want to keep secret pertain to the creation and use of the affidavits it then offers in various state courts around the country. State judges, government regulators and other effected consumers are stakeholders in this dispute and the theoretical harm crafted in Defendants' memorandum cannot outweigh these more important interests.

Defendants are the subject of multiple government investigations and dozens of lawsuits over the same conduct alleged herein. Further, in the class action settlement they are attempting, the parties have sought and obtained appointment of a retired judge as a special master to validate Midland's affidavit process. Defendants have been anything but candid with the various courts before whom they have appeared. It is expected that they will be no different in character before the Ohio special master. There is a public interest in permitting Plaintiff to forward the documents and deposition testimony discovered in this case to the special master so that an honest and correct result may be obtained. It is well understood that the public interest in access to discovery materials is a strong factor that must be weighed when evaluating good cause for secrecy under Rule 26(c). Federal courts generally adopt a "balancing process" between the public interest in disclosure and the parties' interest in secrecy in determining whether good cause exists for a confidentiality order. *Pansy*, 23 F.3d at 787; *see also Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005) (noting that "considerations of the public interest, the need for confidentiality, and privacy interests are relevant factors to be balanced" when determining whether to vacate of modify a confidentiality order); *Cook, Inc. v. Boston Scientific Corp.*, 206 F.R.D. 244, 246 (S.D. Ind. 2001) ("The 'good cause' standard requires a balancing of the public and private interests involved"); *Welsh v. San Francisco*, 887 F. Supp. 1293, 1302 (N.D. Cal. 1995) ("In applying the 'good cause' test under Rule 26(c), the Court must weigh potential harm caused by disclosure against the prospect of benefits to the public of disclosing the information"); *Hawley v. Hall*, 131 F.R.D. 578, 584 (D. Nev. 1990) ("A showing of Rule 26(c) good cause requires a balancing of the interests of the parties competing to open or

close the civil discovery process to the public."). Even in cases where a party is able to prove a need for confidentiality, a court may still find that the party failed to demonstrate "good cause" for a protective order if the public's interest in obtaining that material outweighs the party's need for secrecy.

Respectfully submitted,
**GILBERT JAMES**

_____/s/_____

LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Tel: (757) 930-3660
Fax: (757) 930-3662
lenbennett@cox.net


MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com


DALE W. PITTMAN, VSB #15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, Virginia 23803
Tel: (804) 861-6000
Fax: (804) 861-3368
dale@pittmanlawoffice.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of October 2011, I will file the foregoing motion electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Neal Anthony
Timothy St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462

                                                _____/s/_____
                                        LEONARD A. BENNETT, VSB #37523
                                        CONSUMER LITIGATION ASSOCIATES, P.C.
                                        12515 Warwick Boulevard, Suite 100
                                        Newport News, Virginia 23606
                                        Tel:   (757) 930-3660
                                        Fax:  (757) 930-3662
                                              lenbennett@cox.net