**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**GILBERT JAMES,**

    **Plaintiff,**

v.     Civil Action No. 3:11cv00221

**ENCORE CAPITAL GROUP, INC.,** *et al.*

    **Defendants.**

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND FOR SANCTIONS RELATING TO REFUSALS TO ANSWER DEPOSITION QUESTIONS BASED ON PRIVILEGE ASSERTIONS**

Defendants, Encore Capital Group, Inc. ("Encore Capital), Midland Funding, LLC ("Midland Funding"), and Midland Credit Management, Inc. ("Midland Credit Management," and collectively, "the Midland Defendants"), by counsel, hereby submit this memorandum in opposition to Plaintiff's Motion for a Protective Order and for Sanctions Relating to Refusals to Answer Deposition Questions Based on Privilege Assertions. (Dkt. No. 96).

### INTRODUCTION

The mischaracterizations and distortions of the record set forth in Plaintiff's motion are legion.  Far from being "obstructionist," the conduct of counsel for the Midland Defendants during the identified depositions was entirely consistent with the applicable rules of civil procedure and professional conduct.  Indeed, the Midland Defendants have so far made every possible accommodation to Plaintiff's counsel to facilitate all requested depositions—including of the Midland Defendants' General Counsel and another senior in-house attorney.

To say the least, it is surprising that Plaintiff now seeks sanctions based on the conduct of John Lynch ("Lynch"), counsel for the Midland Defendants, with respect to the depositions of Nancy Kohls ("Kohls") and Greg Call ("Call").  Both of these depositions each took the full

allotment of seven hours, and at no point during these depositions did Plaintiff's counsel provide any indication that he would be moving for sanctions, seeking a protective order, or leaving the deposition open. Instead, the depositions were simply concluded, with subsequent depositions scheduled and taken by Plaintiff's counsel. In fact, during a prior conference call with the Court, Plaintiff's counsel stated that he took issue only with opposing counsel's conduct during the Rule 30(b)(1) deposition of Rita Melconian ("Melconian"). This limitation was then reflected in two Court Orders, the latter of which was even drafted by Plaintiff's counsel. (*See* Dkt. Nos. 84, 89). Based on these facts, the manufactured nature of this motion with respect to the depositions of both Kohls and Call is obvious. And, the asserted misconduct with respect to the deposition of Melconian, although expected, is no more meritorious.

All told, Plaintiff seeks weighty sanctions on the basis of entirely conclusory claims of misconduct that were not reflected contemporaneously on the record during the respective depositions. Indeed, in his mere four page memorandum, Plaintiff never sets forth the substance of the alleged misconduct, instead improperly requiring the Court to wade through deposition testimony to discover what simply is not there.

The Midland Defendants also invite the Court's review of the deposition testimony appended to Plaintiff's motion, as it is conclusive evidence that his motion is unfounded. In sharp contrast to Plaintiff, however, the Midland Defendants address below, by text and line, the specific instances of the challenged "misconduct" cited in the motion. With the facts properly before the Court, Plaintiff's incredible motion must be denied in its entirety, with the depositions of Kohls, Call, and Melconian deemed closed.

**PROCEDURAL BACKGROUND**

On August 11, 2011, Plaintiff took the deposition of Kohls. This deposition, which spanned seven hours, was concluded without incident. On November 4, 2011, Plaintiff took the

deposition of Call, who is located in California, by videoconference from the offices of Troutman Sanders, LLP in Richmond, Virginia. This deposition lasted seven hours, and it also concluded in the ordinary course. On November 7, 2011, Plaintiff took the deposition of Melconian, who also is located in California, by videoconference from the offices of Troutman Sanders, LLP in Richmond.[1] This deposition, which lasted three and one half hours, was terminated by Plaintiff's counsel fifteen minutes before he had previously represented that it would end. The official transcripts of all three depositions were filed under seal as exhibits to Plaintiff's opening memorandum.

On November 16, 2011, after convening a conference call, this Court entered an Order requiring Plaintiff to file his motion for sanctions with respect to the deposition of Melconian by November 18, 2011. (Dkt. No. 84). No motion was filed by that date. On November 30, 2011, the Court entered a Consent Order, drafted by Plaintiff's counsel, amending Dkt. No. 84, and requiring Plaintiff to file his motion for sanctions with respect to the deposition of Melconian by November 30, 2011. (Dkt. No. 89). No motion was filed by that date. This motion was finally filed on December 14, 2011.

### ARGUMENT

"[A]n application for sanctions based on the misconduct of an adverse attorney is a serious motion that should not be made lightly." *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 U.S. Dist. LEXIS 13846, at *12 (S.D.N.Y. Aug. 6, 2003). Fed. R. Civ. P. 30(d)(3) provides for the imposition of sanctions upon a finding that "impediment, delay, or other conduct has frustrated the fair examination of the deponent." *Id.* Conduct under Rule 30(d) must be "sufficiently egregious" to warrant imposition of sanctions. *Higginbotham v. KCS International, Inc.*, 202 F.R.D. 444, 459 (D. Md. 2001). And, such conduct must clearly violate the mandates

---

[1] As a courtesy, these depositions were taken by videoconference, which was set up entirely at the time and expense of the Midland Defendants, to accommodate Plaintiff's counsel.

3

of Rule 30. *Oleson v. Kmart Corporation*, 175 F.R.D. 570, 573 (D. Kan. 1997). To this end, to warrant sanctions, interruptions at a deposition by an attorney must be found to be "beyond the scope of good faith protection of his client's interest and delayed a fair examination of the deponent." *Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 U.S. Dist. LEXIS 3362, at *12 (N.D. Ill. Mar. 19, 2001).

28 U.S.C. § 1927 also enables the court to award sanctions if an attorney's misconduct "multiplies the proceedings in any case unreasonably and vexatiously." *Id.* Sanctions are only appropriate under § 1927, however, when an attorney's conduct, viewed objectively, "manifests either intentional or reckless disregard of the attorney's duties to the court." *Higginbotham*, 202 F.R.D. at 459; *accord Tenkku v. Normandy Bank*, 348 F.3d 737, 743. Courts must construe § 1927 "strictly" to prevent the chilling of zealous advocacy by an attorney. *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999). For these same reasons, courts must also "exercise restraint in exercising their inherent powers" to impose sanctions. *Higginbotham*, 202 F.R.D. at 459.

Plaintiff's motion contains *no legal analysis* as to how the conduct of counsel for the Midland Defendants' satisfies these weighty standards. As set forth below, Plaintiff's superficial motion fails under any standard, let alone these exacting standards.

**I.      The motion for sanctions should be denied as improperly pled.**

Notwithstanding the high standard for seeking such relief, in his motion for sanctions, Plaintiff nowhere even attempts to describe how the challenged deposition conduct should give rise to an award of sanctions. Instead, Plaintiff generally cites certain deposition pages without an accurate summary of their contents and without any explanation of how the objections made therein are deserving of sanctions. It is settled that, when seeking sanctions based on attorney misconduct, "simply describing the conduct is not sufficient." *Nisus Corp. v. Perma-Chink Sys.*, 2007 U.S. Dist. LEXIS 58363, at *13 (E.D. Tenn. Aug. 9, 2007) (addressing sanctions under 28

4

U.S.C. § 1927, holding that defendant's "Motion for Sanctions does not sufficiently set forth the sanctioning authority being considered, [or] the conduct alleged to be sanctionable."). Because Plaintiff has done no more than generally describe the conduct at issue, the motion should be denied for this reason alone.

**II.  The deposition of Nancy Kohls.**

Plaintiff has highlighted two specific instances of alleged misconduct with respect to the deposition of Kohls. The first such instance involved the following sequence of questioning by Leonard Bennett ("Bennett"), counsel for Plaintiff:



**Lynch**: I'm going to object. I think that calls for attorney work product information. I'm instructing you not to answer on that. That's clearly work product that she's being prepared to testify.

**Bennett**: So you're instructing her not to answer.

**Lynch**: I am.

**Bennett**: Okay.

5

(Mot., Ex. A (116:5-117:22)). ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████. *E.g., Hynix Semiconductor, Inc. v. Rambus Inc.*, 2008 U.S. Dist. LEXIS 109955, at *22 (N.D. Cal. Feb. 10, 2008) ("cross-examination regarding how a witness prepared to testify treads on the attorney-client privilege and work-product protection") (citing *In re Cendant Corp. Securities Litigation*, 343 F.3d 658 (3d Cir. 2003)).

The second line of questioning during Kohls's deposition asserted by Plaintiff to warrant sanctions involves similar testimony as detailed in the preceding exchange:

████████████████████████████████████
████████████████████████
██████████████████████
████████████████████████████
████████████████████████████████████
████████████████████████████████

(Mot., Ex. A (177:7-177:20)). Plaintiff's counsel made no statement on the record that Lynch's objections were improper. ██████████████████████████████

██████████████████████████████████████████████████████

████ For the same reasons set forth above, the objection on the basis of attorney-work product regarding the substance of Kohls's preparation to serve as a witness was well founded.

### III.   The deposition of Greg Call.

Plaintiff identifies three specific lines of questioning that were "improperly" objected to during Call's deposition. The first and second identified lines of questioning concern the effect of pending litigation on the stock price of publicly-traded Encore:

6

| | |
|---|---|
| **Bennett**: | What effect – and now particularly that you've moved into the senior vice president chair, what role does share price play in the decisions that are made by Midland or Encore management? |
| **Lynch**: | And, I'll object and instruct you not to answer the questions to the extent that you're divulging any attorney-client or otherwise privileged information . . . . It could be work product. |
| **Bennett**: | You're not – you haven't had conversations as to the effect [of] litigation on your share price; right? |
| **Lynch**: | I'm going to object on privilege. |
| **Call**: | Yeah. In answering that question, there's no way I can really answer without invading privilege because you've put the content of a potential communication in your question . . . . I'm happy to answer your questions, but maybe if we got a little more precise it would help me. The way it was originally phrased, you embedded so much content of the communication and then said, "have you had this communication?" I felt like I couldn't answer that one. |

(Mot., Ex. B (70:8-71:4)). It cannot seriously be contested that the Midland Defendants' General Counsel's discussion of the effect of litigation on his employer's stock price with other executives of the Midland Defendants is privileged. *See, e.g.*, *SEC v. R.J. Reynolds Tobacco Holdings, Inc.*, 2004 U.S. Dist. LEXIS 24545, at *23 (D.D.C. June 29, 2004) ("Forecasted litigation costs are, as a matter of definition, the expected costs of anticipated litigation and the forecasts can be said to have been, by their very nature, prepared in anticipation of litigation."). Thus, the instruction not to answer was proper.

The third area of testimony cited by Plaintiff respects Call's explanation of the reasons for the inclusion of certain provisions in the engagement agreement between Midland Credit Management and its outside law firm, Dominion Law Associates:

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

| | |
|---|---|
| **Lynch**: | Objection; privilege. |

>  **Bennett**: What's the functional purpose or motivation behind that provision?
>
>  **Lynch**: Objection; privilege.
>
>  **Bennett**: About what?
>
>  **Lynch**: Unless you can answer that without divulging attorney-client or other privileged information, you're free to do so.

(Mot., Ex. B (162:25-163:17)). The reasons for inclusion of a particular provision in a contract, much like the internal drafting process of the contract itself, are the proper subject of a claim of attorney-client privilege. *See, e.g., King v. Univ. Healthcare Sys. LC*, 645 F.3d 713, 720 (5th Cir. 2011) (affirming as privileged e-mails that may have revealed details about the reasons for the non-renewal of a litigant's contract); *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) ("[T]here is no apparent reason why the drafts should cease to be privileged once the final product becomes public."). Therefore, Call was properly instructed not to answer questions about the "purpose" for including certain information within the identified contract.

### IV. The deposition of Rita Melconian.

Plaintiff's argument with respect to the deposition of Melconian contains two asserted bases for misconduct. First, Plaintiff claims that Melconian improperly "self-asserted" privilege when asked certain questions. Second, Plaintiff objects to the propriety of the objections made by her counsel during Melconian's deposition. Both of these arguments fail.

#### A. Melconian's proper "self-assertion" of the attorney-client privilege.

Melconian is an attorney in good standing in California who serves as Senior Compliance Counsel for the Midland Defendants. As such, she is both knowledgeable about the concept of attorney-client privilege and is involved in privileged discussions on a daily basis. A repeated complaint by Plaintiff's counsel throughout the deposition of Melconian, however, was that she improperly "self-asserted" privilege when asked a question implicating privileged information. *See, e.g.*, Mot., Ex. C (68:8-69:13). This grievance is echoed in Plaintiff's motion. (Mot. at 3).

This contention, however, is baseless because courts have consistently held that in-house counsel may not only properly refuse to answer questions when an answer would reveal privileged information, they are *duty bound* to refuse to answer in such circumstances. As one court held:

> While the privilege in this case belongs to Omega, the deponent-attorney may properly assert it on Omega's behalf. An attorney may not invoke the privilege for his own benefit, but neither can an attorney waive the privilege without the client's consent. Even in the absence of instructions from the client, an attorney is duty-bound to raise the claim in any proceeding in order to protect communications made in confidence. Thus, the deponent-attorneys may properly assert the privilege on their own initiative, without direction from Omega, as long as they do so for Omega's benefit.

*Omega Electronics, S.A. v. Stewart-Warner Corp.*, 1988 U.S. Dist. LEXIS 13788, at *3-4 (N.D. Ill. Dec. 1, 1988) (collecting cases); *accord Starlight Int'l, Inc. v. Herlihy*, 1998 U.S. Dist. LEXIS 13124, at *10 (D. Kan. Aug. 13, 1998) ("If a specific question infringes upon a legitimate privilege, the deponent may assert it in response."). Indeed, these decisions recognize that an attorney deponent is often best situated to know whether the answer to a question will require the disclosure of privileged information. Thus, Melconian's assertions of privilege, which were then repeated by her counsel on the record, were entirely proper.

### B. The substance of the objections made during Melconian's deposition.

Plaintiff also identifies six areas of inquiry that were allegedly the subject of improper deposition conduct. The first area concerns a line of questioning regarding the substance of a specific conversation between Melconian and Peter Kubin, the Midland Defendants' Virginia-based legal counsel at Dominion Law Associates:

**Bennett**: Other than statements that Dominion Law was making to you to advise Midland as to the law or procedures in court in Virginia, what other subjects were discussed in this meeting?

**Lynch**: I'm going to object again on privilege, and I'm going to instruct you not to answer, unless you can do so without invading attorney-client privilege.

9

|  |  |
|---|---|
|  | . . . . If it pertains to legal advice or attorney work product doctrine, I'm instructing you not to answer. |
| **Bennett**: | All right. |
| **Lynch**: | The question is so broad that I have to assert that kind of objection. |
| **Bennett**: | Well, I've already excluded that from my question. Right? So, let me try again. Was there any other category of legal advice that Dominion Law was providing to Midland's individuals other than advice regarding the law and procedures for collecting in Virginia? |
| **Lynch**: | You can answer that question. |

(Mot. Ex. C (65:13-66:24)). As noted by Lynch, Bennett's first question removed only a specific subset of legal advice regarding Melconian's communications with Dominion Law Associates (*e.g.*, Virginia law and procedures). It otherwise intruded on the attorney-client privilege. When asked to rephrase that question, Bennett did so and then received a full answer. *See id.* Plainly, nothing in this exchange is improper, let alone sanctionable.

Second, with respect to the same meeting, Melconian was asked to describe what she and Peter Kubin "discussed about the placement of [the Midland Defendants' consumer] accounts" with Dominion Law Associates. *Id.* (68:16-21). Melconian objected to answering the question on the basis that the placement process for any account went to Dominion Law Associates's "representation of" the Midland Defendants, and she was then instructed not to answer by Lynch on the basis of privilege. *Id.* (68:16-24). The substance of the communications regarding Dominion Law Associates's procedures for representing the Midland Defendants in litigation is privileged, and the objections on that basis were proper. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Metro. Family Practice*, 2005 U.S. Dist. LEXIS 32620, at *8 (E.D. Pa. Dec. 12, 2005) ("the attorney-client privilege protects the confidences exchanged between an attorney and a client during the course of representation").

10

Third, Melconian was instructed not to answer the following question on the basis of privilege: ███████████

███████████

███████████

███████████

███████████

███████████

Fourth, Plaintiff's counsel probed Melconian's understanding of nature of this action, which prompted the following exchange:

**Bennett**: Do you know what this lawsuit – what the James lawsuit is about ma'am?

**Melconian**: I have a general understanding.

**Bennett**: What is that understanding?

**Lynch**: Objection. To the extent you can answer – objection. To the extent you can answer that without divulging attorney-client privileged information.

**Melconian**: I obviously know there's an affidavit component to it.

(Mot. Ex. C (109:2-13)). This exchange reflected nothing more than a qualified objection by Lynch, which was then followed by a reminder to Melconian that the question could implicate privileged information and that she should not disclose that privileged information. *See id*. Melconian then went on to answer questions about her knowledge of the case. Nothing about this exchange was improper.

Fifth, ███████████

███████████

███████████

███████████

███████████

11

███████████████████████████

███████████████████████████

██████

Finally, with respect to a document produced in discovery, Plaintiff asked the following question: ███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████ Apart from improperly soliciting a legal conclusion, this question *explicitly* sought the disclosure of the contents of Melconian's communications with the Midland Defendants' outside counsel. *Id.* It was, therefore, properly objected to.[2]

V.   **There is no basis for the sanctions sought by Plaintiff.**

All of the foregoing objections made by Lynch during the depositions of Kohls, Call, and Melconian were meritorious and made in good faith. Moreover, Lynch only instructed the deponents not to answer a question when the answer could result in the disclosure of privileged information. In fact, Lynch often qualified his objections by permitting the deponent to answer, subject to the caveat that the deponent should not reveal any privileged information when answering. That is entirely proper under the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 30(d)(1) (advisory committee notes permitting instruction not to answer in the context of privileged information). Hence, none of the allegedly improper conduct even remotely warrants

---

[2] Plaintiff also seeks sanctions on the basis that the Midland Defendants did not voluntarily accept his (misguided) theories regarding an asserted waiver of privilege, *see* Mot. at 4, which are now the subject of parallel briefing before the Court. (*See* Dkt. No. 93). Plainly, no sanctions can be had for the failure to accept an erroneous legal theory or an honest disagreement about something as important as the attorney-client privilege, and certainly not before any such theory has been considered and resolved by the Court.

12

sanctions. *See, e.g.*, *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 239 F.R.D. 572, 588-89 (D.S.D. 2006) (declining to award sanctions on the following bases: "First, after reviewing the depositions, the court finds that most of the objections were appropriate because the questions were in fact objectionable. Second, the court finds that plaintiffs' counsel only instructed the deponent not to answer when asserting privilege.").

Indeed, even if the Court were to disagree with certain of the objections made by Lynch, the above narratives reveal clear good-faith bases for all of the objections made. "Sanctions are inappropriate where reasonable and competent attorneys could disagree over the existence of a good faith argument" *Community Elec. Service of Los Angeles Inc. v. National Elec. Contr. Ass'n, Inc.*, 869 F.2d 1235, 1243 (9th Cir.), *cert. denied*, 493 U.S. 891 (1989). Therefore, apart from the evident merits of the objections, Plaintiff has not met (and has not even *attempted* to show) the requisite type of "intentional or reckless disregard of the attorney's duties to the court" to support an award of sanctions. *See Higginbotham*, 202 F.R.D. at 459. For these reasons, the motion should be denied.

## CONCLUSION

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. respectfully request that the Court: (1) deny Plaintiff's Motion for a Protective Order and for Sanctions Relating to Refusals to Answer Deposition Questions Based on Privilege Assertions; (2) deem the depositions of Kohls, Call, and Melconian closed; and (3) grant the Midland Defendants such other relief that the Court deems just and proper.

                                               **ENCORE CAPITAL GROUP, INC.,**
                                               **MIDLAND FUNDING, LLC and**
                                               **MIDLAND CREDIT MANAGEMENT, INC.**

                                               By:/s/ Timothy J. St. George
                                                          Of Counsel

David N. Anthony (VSB No. 31696)
Timothy St. George (VSB No. 77340)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1200
Facsimile: (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
john.lynch@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett, Esq.
Susan M. Rotkis, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@cox.net

Matthew J. Erausquin, Esq.
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Telephone: (703) 273-6080
Facsimile: (888) 892-3512
Email: matt@clalegal.com

Dale W. Pittman, Esq.
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb St.
Petersburg, VA 23803
Telephone: (804) 861-6000
Facsimile: (804) 861-3362
dale@pittmanlawoffice.com

*Counsel for Plaintiff*

/s/ Timothy J. St. George
Timothy J. St. George (VSB Bar No. 77349)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
tim.stgeorge@troutmansanders.com