**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| GILBERT JAMES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11CV221 |
| | ) | |
| ENCORE CAPITAL GROUP, INC., et als. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND
FOR SANCTIONS RELATING TO REFUSALS TO ANSWER
DEPOSITION QUESTIONS BASED ON PRIVILEGE ASSERTIONS**

COMES NOW the Plaintiff, Gilbert James, by counsel, and as for his Reply to Defendants' Memorandum in Opposition to Plaintiff's Motion for a Protective Order and for Sanctions Relating to Refusals to Answer Deposition Questions Based on Privilege Assertions, he states as follows:

## INTRODUCTION

From the outset of this litigation, Plaintiff has made it clear that based on literally hundreds of prior matters with Troutman Sanders counsel over the past decade, he recognizes that the discovery positions at issue here are new – almost certainly mandated by the in-house attorneys employed by the Encore Capital Defendants, who are themselves fact witnesses in this case for a multitude of reasons. The Encore legal department not only crafted and implemented the affidavit procedures at issue, but also required their employees to follow them. The legal department provided Powerpoint training to its employees to persuade them that the plain English words that appeared in the affidavit meant something different than what the words actually said, and further designed the mechanism by which Fair Credit Reporting Act disputes

would be processed – the very same procedures that were criticized by the Fourth Circuit in *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426 (4th Cir. 2004), and that were also the subject of a $723,000 jury verdict in the *Brim* matter in the Northern District of Alabama last year.   In short - these attorneys have a vested, personal interest in preventing Plaintiff from obtaining the discovery he needs to prove his case.   Communications by attorneys are at the very heart of Plaintiff's claims.

To be clear – Plaintiff is not pursuing sanctions against any Troutman Sanders attorney, but is instead seeking sanctions against the Defendants based on their non-compliance with discovery rules and their repeated attempts to hinder the discovery process, thus vexatiously multiplying the proceedings in this case.   The Defendants' discovery positions have now caused in a five-month delay in the trial of this matter.   The most extensive motions practice that Plaintiff's counsel can recall is now pending.   And for the first time in this District, Plaintiff's counsel was forced to completely halt a deposition to seek a ruling from the Court following a witness's refusal to answer questions.

In their opposition to Plaintiff's motion for sanctions, the Defendants mischaracterize the instructions by counsel not to answer, or in some cases, the witness's own refusal to answer as the result of a good faith disagreement related to "misguided theories regarding an asserted waiver of privilege".  (Opp. at 12, fn. 2).  While it is true that at least three separate grounds exist to support Plaintiff's position that the Defendants have lost any right that they may have had to withhold information on privilege grounds (e.g., by their failure to provide a privilege log, their attempts at selective waiver of the privilege, and/or the so-called "crime/fraud exception"), the fact of the matter is that even if these grounds for waiver did not exist, a deponent's refusal to answer deposition questions on the basis of attorney-client privilege when that privilege does not

2

apply is clearly improper.

In their opposition, the Defendants cite to certain portions of the transcript, but still fail to articulate the elements necessary to establish that a communication was privileged. They similarly fail to take the next step and demonstrate why the information sought in the questions posed satisfies these elements.  As the parties attempting to assert privilege to justify withholding otherwise discoverable facts, and with the burden to support the applicability of the privilege, this failure is fatal.  *See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 409-10 (D. Md. 2005) ("'It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all.'" (quoting *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C.1986)).  Furthermore, the party withholding the privileged information must meet this burden by way of evidence, not just argument. *See id.* at 410.

As discussed *infra*, discovery is very broad with a very narrow carve out for those facts that are properly the subject of a recognized privilege.  Fed. R. Civ. P. 26(b)(1).  A party that wishes to withhold otherwise discovery information must satisfy a high burden and demonstrate that the information sought is properly the subject of such a privilege. *See United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982) ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability."). In a manner consistent with the Defendants refusal to provide a privilege log to support their privilege assertions, the Defendants' opposition brief is similarly devoid of any support for the notion that the questions posed by Mr. Bennett called for the disclosure of privileged information, even if such privilege were still available to the Defendants.  Accordingly, Plaintiff's motion should be granted and the relief sought should be

afforded consistent with the proposed order lodged herewith.

## ARGUMENT

Federal Rule of Civil Procedure 30(d)(2) provides for imposing sanctions on any person "who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). This includes awarding reasonable expenses and attorney's fees incurred as a result of the offending conduct. *See id.* It has long been established that the imposition of sanctions as a result of discovery conduct is generally within the sound discretion of the trial court. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 642 (1976); *see also Francisco v. Verizon S., Inc.*, 756 F. Supp. 2d 705, 712 (E.D. Va. 2010), *aff'd*, 10-2432, 2011 WL 3444123 (4th Cir. Aug. 8, 2011).

Throughout these depositions, either the defending attorney or the witness asserted either attorney-client privilege and/or the work-product doctrine with such frequency and without proper basis as to "impede[], delay[], or frustrate[] the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2); *see also Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 584 (N.D. Md. 2010) (noting that the frequency of counsel's objections impeded the deposition and frustrated the examination). While Defendants argue that the imposition of sanctions should be construed strictly to prevent chilling of zealous representation, "such zealous representation has its limits." *See Morales v. Zondo, Inc.*, 204 F.R.D. 50, 57 (S.D.N.Y. 2001). Plaintiff's counsel was prevented from eliciting a substantial amount of evidence during these depositions relating to, *inter alia*, Defendants' affidavit process, their third party debt collectors underlying part of Plaintiff's civil RICO claim, and the training provided to Defendants' employees regarding being a witness in collection matters, all of which form the basis of Plaintiff's complaint against the Defendants. Because of the Defendants' conduct throughout these depositions, Plaintiff's ability

to properly examine each witness was frustrated and sanctions should be imposed against Defendants as a result.

## A.  Defendants failed to meet their burden of establishing that the information was protected by privilege and that the privilege had not been waived.

Despite Defendants repeated use of privilege objections, much of the objections were improper because Defendants failed to meet their burden of establishing the elements of privilege. "The party objecting to discovery has the burden of establishing the existence of a privilege by establishing all elements of the privilege." 10 Fed. Proc., L. Ed. § 26:107; *see also Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264, 271-72 (E.D. Va. 2004). Such burden may only be met with a proper "evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory assertions." *Id.* "The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the specific communications at issue are privileged and that the privilege was not waived." *Zeus Enters. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 244 (4th Cir. 1999); *see also E.I. Dupont de Nemours & Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010).

This Court has succinctly outlined the complex thresholds required to meet the attorney-client privilege:

(1) the asserted holder of the privilege is or has sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004) (citations omitted). Similarly, in order to establish the applicability of the work product privilege, a party must show, "that the work product in question was: (1) prepared by, or under the direction of, an attorney and (2) was prepared in anticipation of litigation." *Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264, 272 (citing *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Proceedings (U.S. v. Under Seal)*, 102 F.3d 748, 750 (4th Cir. 1996)).

Despite the fact that it remains the Defendants' burden to establish that they satisfy all of the elements of a privilege, they failed to do so, even after being given the opportunity in their responsive memorandum to establish the existence of a privilege. The fact that they relied on conclusory statements that information was protected by privilege without providing evidence or establishing that they satisfied the elements of privilege is telling. Plaintiff submits that the questions posed by Plaintiff's counsel did not invade any such alleged privilege.

**B.    The Deposition of Nancy Kohls.**

During the deposition of Ms. Kohls, Defendants asserted that their training of employees using a Powerpoint presentation on the topic of how to be a witness in a collection lawsuit is protected by the work-product doctrine. (Kohls Deposition, 116:5-117:22). They continued to assert the same in their memorandum. However, Defendants are once again remiss in their belief that the work product doctrine protects them from having to disclose particulars about their training of employees with respect to acting as a witness during their debt collection procedures. The Powerpoint presentation in question was part of Defendants training materials for its employees and was not made "in anticipation of litigation." Simply because the materials instruct employees – third parties outside of the corporation's control group - on how to be a witness, does not by any means implicate actual litigation. Therefore, the work product doctrine provides

no protection in this instance.

The second noted exchange in which Defendants assert the attorney work product privilege relates to a question posed regarding how the witness was required to respond when asked in a collection proceeding whether she is the "custodian of records." Notwithstanding the fact that Defendants have still failed to provide any basis for protection under the work product doctrine even in their opposition brief, or to identify the collection case for which the alleged work-product protection applies, the Defendants continue to defend that it was properly asserted.

## C.   The Deposition of Gregory Call

Plaintiff's counsel questioned Mr. Call about the role stock price plays in decisions made by management. Defendant objected to the extent Mr. Call would divulge any attorney-client or otherwise protected information. (Call Deposition, 70:8 – 70:19) However, there was no proper basis to assert attorney-client or even work product doctrine. There was no communication relating to a fact of which the attorney was informed for the purpose of securing either (i) an opinion on law, (ii) legal services, or (iii) assistance in some legal proceeding. The question sought to obtain information pertaining to business decisions that had nothing to do with any legal advice, and further did not even pertain to a communication at all.   The Defendants impermissibly objected on an (albeit unclear) assertion of privilege.

When Plaintiff's counsel further questioned Mr. Call regarding whether there have been conversations regarding the effect of litigation on the companies' stock price, Defendants objected that the information was protected by attorney-client privilege. (Id. at 70:23 – 71:22) However, Defendants again failed to establish that an attorney-client privilege exists, and in fact one does not. Whether conversations about the effect of litigation on stock price *took place* is not a communication made with an attorney for the purpose of securing an opinion on law, legal

services, or assistance in a legal proceeding.  As the question was posed, the information sought was not of the type protected by the attorney client privilege, and thus Defendants assertion of privilege was merely to introduce obstacles to impede the examination.

Defendants further objected on the basis of attorney-client privilege when Mr. Call was questioned about why the Defendants' contract with Dominion Law Associates requires that if any consumer disputes or defends a general district court collection case, Dominion Law Associates is required to cease litigation. In the deposition, Defendants' counsel stated that was attorney-client advice and instructed Mr. Call not to answer. (Id. at 162:25 – 164:10). Again, the privilege was asserted and the answer to the question avoided without a proper basis to do so. The purpose of a clause in a contract *which was provided by the Defendants* is not protected information. To the extent that any prior protection attached to it, such protection was stripped upon production.  The contract between these two arms length business entities does not satisfy the elements of privilege as being a communication made with an attorney for the purpose of securing an opinion on law, legal services, or assistance in a legal proceeding. Instead, the contract was between two companies for business purposes.  This is not the type of communication that is protected by the attorney-client privilege. Similarly, information about why the Defendants require Dominion Law Associates to cease litigation where a consumer puts up even minimal resistance in the general district court collection case goes to the heart of the issues presented in this case. Plaintiff contends that the Defendants purposefully do not defend these types of opposed cases because they know they lack any evidence to properly substantiate their alleged claims of debt against the consumers. Plaintiff is therefore entitled to question Defendants about specific provisions of the contract, the purpose of such provisions, and their knowledge of the history of requirements imposed by general district court judges in debt buyer

collection cases.

Furthermore, in their opposition to Plaintiff's motion, Defendants contended that this assertion of privilege was proper, citing to a case with substantially different facts than the point Defendants attempted to make.[1] They cite to a case involving claims of sex discrimination, retaliation, breach of oral contract, violation of the Equal Pay Act, and violation of the Louisiana Wage Payment Statute in which the Plaintiff had unsuccessfully attempted to compel the discovery of emails that she believed included reasons why her employment contract was not renewed. The court determined that such emails had been exchanged between an attorney and client and were therefore privileged.  However, Defendants vastly skewed the facts in their opposition, stating that the case supports the contention that the reasons for inclusion of a particular provision in a contract are the proper subject of a claim of attorney-client privilege. Such an interpretation of this case strains credulity.  In fact, neither the *King* nor *Roth* cases cited by the Defendants posits any such authority.

## D.    The Deposition of Nayri "Rita" Melconian

Perhaps the most blatant examples of sanctionable behavior involve the deposition of Ms. Melconian. During this deposition, Defendants objected on the basis of privilege to topics ranging from Defendants relationship with Dominion Law Associates to whether Ms. Melconian had an understanding as to what the present lawsuit was about. Ms. Melconian further self-asserted privilege when asked certain questions, which the Defendants assert was proper, citing several cases as support. However, the Defendants fail to disclose or acknowledge the common

---

[1] In their memorandum, the Defendants stated, in relevant part: "The reasons for inclusion of a particular provision in a contract, much like the internal drafting process of the contract itself, are the proper subject of a claim of attorney-client privilege. *See, e.g.*, *King v. Univ. Healthcare Sys. LC*, 645 F.3d 713, 720 (5th Cir. 2011) (affirming as privileged e-mails that may have revealed details about the reasons for the non-renewal of a litigant's contract)."

recognition by the cases that there must be a legitimate privilege for the deponent to assert in the first place. *See e.g.*, *Starlight Int'l, Inc. v. Herlihy*, 1998 U.S. Dist. LEXIS 13124, at *10 (D. Kan. Aug. 13, 1998) ("If a specific question infringes upon a ***legitimate*** privilege, the deponent may assert it in response." (emphasis added)). Instead, Ms. Melconian sought to assert privileges where none actually existed.

For example, certain questions asked by Plaintiff's counsel specifically and carefully excluded any attorney-client communications from the phrasing of the question. Defendants and Ms. Melconian still refused to answer, claiming attorney-client privilege. Ms. Melconian was questioned about the substance of a conversation that took place between several of the Defendants' employees and Pete Kubin, a representative of Dominion Law Associates, at a national convention of collection attorneys (NARCA). Despite that the question specifically excluded legal advice from its inquiry, Mr. Lynch instructed her not to answer the question. (Melconian Deposition, 58:25–66:17). In their response, Defendants contend that the question still intruded on attorney-client privilege, even though the framing of the question specifically carved out any legal advice Dominion Law Associates had been giving during the meeting. There was no permissible basis to then object and instruct the witness not to answer because the information could not have been protected by the attorney-client privilege. Therefore, this objection was simply another interjection by Defendants to impede and frustrate the examination of the witness.

With respect to Defendants' relationship with Dominion Law Associates, Defendants have once again attempted to prevent from disclosure their fraudulent and illegal debt collection tactics through the guise of attorney-client privilege. This instance of improperly objecting to privilege related to the placement of accounts with Dominion Law Associates. Ms. Melconian

self-asserted the attorney-client privilege, stating that such communications about the placement of accounts related to Dominion Law Associates' representation of Defendants. (*Id.* at 106:17 – 107:20). However, when Plaintiff's counsel then questioned Ms. Melconian about whether she actually knew and understood what that privilege protected, Mr. Lynch instructed her not to answer that question either, interjecting his comment that "This is not a quiz". (*Id.* at 109:2 – 109:11). The reality is that "[c]ommunications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made." *United States v. Cohn*, 303 F. Supp. 2d 672, 683-84 (D. Md. 2003) (citing *Neuder v. Battelle Pacific Northwest National Laboratory,* 194 F.R.D. 289, 293 (D.D.C. 2000)). Communications must satisfy the elements of attorney-client privilege to be protected as such. Defendants were not seeking legal advice or legal services when they were discussing the placement of accounts. Instead, the communications were primarily business discussions and were therefore not protected as privileged attorney-client communications.

When Ms. Melconian was asked about her knowledge of the present lawsuit, Defendants' counsel again objected "to the extent [she] can answer without divulging attorney client privileged information." (Melconian Deposition 109:2-11). Plaintiff's counsel did not seek any privileged information, but merely sought to elicit Ms. Melconian's own understanding of the current lawsuit. There were no privileged communications whatsoever that Plaintiff sought to disclose. Defendants' interjected "warning" about possible privileged information was improper and another example of their attempt to disrupt the deposition proceedings.

Defendants asserted privilege again when Ms. Melconian was asked why the affidavit language is written one way but explained and defined another way to the Defendants' employees. This was just another attempt by the Defendants to assert privilege simply to prevent

damaging information to come to light. The information contained in the affidavit is not privileged, it is shared with consumers and the Courts and becomes public record. Additionally, the question sought information relating to a fact at issue in the case: the Defendants use language meaning one thing to the Courts, but defined another way to its employees. Questions about why this is done are not prevented by attorney-client privilege because there is no communication made for the purpose of seeking legal advice or services or in some legal proceeding.

As one final example of improper conduct, Defendants object once again on the basis of attorney client privilege when the witness resisted discussing the contents of the Defendants' training manuals.  She was asked whether she considered the training manuals to be information within the same category of "legal advice" that the Defendants exchange with their outside counsel. Plaintiff's counsel specifically excluded from his question the substance of communications, removing the information sought from the protections of the attorney-client privilege. Defendants' counsel still objected and instructed Ms. Melconian not to answer.   Each of these improper interjections by Defendants' counsel, instructions not to answer, and refusals by the deponents to answer the questions posed served to delay, impede and frustrate the examination of the witnesses.  Sanctions against these Defendants are clearly appropriate.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that the Court: (1) enter an Order restraining the Defendants' counsel from continuing to assert improper privilege objections and instructions not to answer; (2) require the Defendants to produce Gregory Call, Nayri "Rita" Melconian, and Nancy Kohls for renewed depositions in Virginia at the Defendant's expense to fully answer questions posed; (3) award Plaintiff attorney's fees and costs necessitated by the

Defendants' discovery conduct; and (4) grant the Plaintiff any such further relief that the Court

deems just and proper.

Respectfully submitted,
**GILBERT JAMES**


By:_____/s/_____
                    Of Counsel


MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7770
Fax:    (888) 892-3512
E-mail:  matt@clalegal.com

LEONARD A. BENNETT, VSB #37523
SUSAN M. ROTKIS, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
Tel:     (757) 930-3660
Fax:    (757) 930-3662
E-mail:  lenbennett@cox.net
E-mail:  srotkis@clalegal.com

DALE W. PITTMAN, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A West Tabb Street
Petersburg, VA 23803-3212
Tel:     (804) 861-6000
Fax:    (804) 861-3368
E-mail:dale@pittmanlawoffice.com

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
757-687-7765
Fax: 757-687-1504
Email: john.lynch@troutmansanders.com

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122
804-697-5410
Fax: 804-698-5118
Email: david.anthony@troutmansanders.com

Timothy James St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122
804-697-1254
Email: tim.stgeorge@troutmansanders.com
*Counsel for the Defendants*


_____/s/_____
MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com