IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**GILBERT JAMES,**
   **Plaintiff,**

v.               Civil Action No. 3:11cv221

**ENCORE CAPITAL GROUP,**
**INC., et al.,**
   **Defendants.**

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO OVERRULEDEFENDANTS' PRIVILEGE OBJECTIONS AND TO COMPEL DISCOVERY RESPONSES AND UNOBSTRUCTED WITNESS TESTIMONY**

  COMES NOW the Plaintiff, Gilbert James, by counsel, and for his Reply Memorandum, he states as follows:

**ARGUMENT**

  This is a case about the use of legal maneuvering – the creation and use of intentionally deceptive court affidavits – to fraudulently circumvent the burdens otherwise mandated by the Virginia court process. This was made possible only by the scheming of attorneys. In-house attorneys; outside "Affidavit" counsel for Encore; and Virginia collection law firms.

  All of the allegations and claims in this case revolve around, and are even directly tied to the conduct of these persons. Evidence as to the substance and deliberateness of such conduct necessarily focuses on communications from and between lawyers.

  Defendants' discovery abuse should not be condoned. They have sought to withhold documents at the core of Plaintiff's tort claims. They have used to their benefit selective portions of the same categories of documents that they otherwise have withheld from discovery. And they have done all of that without any attempt to follow the process

for asserting privilege objections mandated by Rule 26(b)(5) and the Court's long-standing scheduling order. Defendants' privilege objections should be overruled.

**A. DEFENDANTS ARE NOT ENTITLED TO A MULTI-STEP, TIME-CONSUMING PROCESS TO ASSERT DISCOVERY OBJECTIONS.**

Defendants have asserted privilege objections to Twenty-eight (28) Requests for Production and Five (5) of Thirteen (13) Interrogatories. They have made significantly more actual objections than they have listed documents in their privilege logs. And yet, based on an interpretation – albeit incorrect – of a Rule 26 committee note, Defendants assert an entitlement to a bifurcated objection process deferring Rule 26(b)(5) compliance until after formal litigation and an order overruling their other objections.

There is of course nothing in Rule 26(b)(5) that supports this position. Even the cited committee note cautions that the proper course when confronting an overly burdensome request is to seek a protective order. Fed. R.Civ. P. 26, Committee Notes 1993 Amendments. 146 F.R.D. 401, 146 F.R.D. 401, 639. ("Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories. A party can seek relief through a protective order under subdivision (c) if compliance with the requirement for providing this information would be an unreasonable burden."). Further, this District, including this Court, has uniformly held that a privilege log be served contemporaneously with the related objections.

The Eastern District of Virginia, the "Rocket Docket", depends upon a predictable and orderly flow of litigation. Discovery objections are strictly timed to precede substantive responses. Local Civ. R. 26(C). This Court, as with several other District

Judges in the Eastern District, expressly requires a formal privilege log. Dkt No. 16. Yet Defendants suggest the Court vary these established norms based upon three arguments.

First, Defendants ask the Court to adopt the minority and alternate conclusion of the District Court for the District of Columbia in *ASPCA v. Ringling Bros. & Barnum & Bailey Circus*. 233 F.R.D. 209, 212-13 (D.D.C. 2006). That decision is actually premised upon an earlier decision of the Court of Appeals for the D.C. Circuit. *United States v. Phillip Morris, Inc.,* 347 F.3d 951, 954 (D.C.Cir.2003). That Circuit is the only one in the nation known to counsel to have permitted the two-stage process Defendants advocate. Not one court in the Fourth Circuit has adopted such reasoning and those that have considered *Phillip Morris* have declined to adopt its novel view. *Twigg v. Pilgrim's Pride Corporation*, 3:05-CV-40, 2007 WL 676208, *26 (N.D.W.Va. Mar. 1, 2007); *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 222-23 (N.D.W. Va. 2007). As the District Court for the Northern District of West Virginia concluded:

> This Court agrees with those courts holding patently insufficiently assertions of privilege result in waiver. If a party is free to disregard, or even claim ignorance of the Rules, there is no reason to have the Rules. The rule of law either is, or is not, the rule of law. Failure to require adherence leads to the rule of the particular judge. As noted above, Defendant's assertions of privilege were plainly insufficient. Therefore, Defendant waived any attorney client privilege or work product protection it had.

*Twigg,* 2007 WL 676208, *26.

Further, even the D.C. Circuit's minority rule would not shelter Defendants' claims of privilege. Such rule does not adopt the two-stage objection process demanded by Defendants. Rather, the existence of an over breadth or burdensomeness objection is

3

simply a factor in determining whether or not the privilege is deemed waived. In the D.C. Circuit, unlike in this District, such waiver is not automatic. The D.C. Circuit explained:

> On the other hand, if the court determines that the objection does not cover the allegedly privileged document, or that the objection was not made in good faith as Rule 26(g) requires (Fed.R.Civ.P. 26(g)), the court may then decide whether the party should be deemed to have waived the privilege. Waiver is not automatic, particularly if the party reasonably believed that its objections applied to the document.

*United States v. Philip Morris Inc.*, 347 F.3d at 954.

Defendants' failure to prosecute their objections by affirmative motion also renders the two-stage rule inapposite. Defendants did not actively assert their objections. Instead, they merely served their boilerplate pleading and did nothing more. Plaintiff was left to force the issue. In this context such objections are intended to serve as active protections, not passive ones. As the District Court for the District of Columbia explained in a comparable case:

> Finally, SSA can take no comfort in the decision of *United States v. Philip Morris Inc.,* 347 F.3d 951 (D.C.Cir.2003). SSA claims the decision stands for the proposition that a party is relieved of any obligation to produce a privilege log until its objections to a request to produce documents are resolved. In that case, the trial judge had enforced a waiver of a privilege against a party who had asserted colorable objections to the production of documents in addition to arguing that they were privileged. The court of appeals concluded that the trial judge had erred in failing to resolve those objections before concluding that the privilege was to be deemed waived, or to use a more accurate word, forfeited. That case, if anything, militates in favor of sanctions. Unlike the party in that case, who pressed its objections before complying with the obligation to produce a privilege log, SSA never insisted that this court rule on its objections before they could be obliged to file the privilege log. If anything, that case should encourage parties to press their objections aggressively and insist they be resolved before they are obliged by the court to produce a privilege log. In this case, SSA did the converse; it never pressed its objections and assured

4

> its opponent that it would produce a privilege log. SSA's newly founded reliance on the rationale of the *Philip Morris* decision hardly justifies its escaping the consequences of its original failure to bring its objections to the court and seek protection from having to file a privilege log until those objections were ruled upon.

*Banks v. Office of the Senate Sergeant-at-Arms & Doorkeeper*, 226 F.R.D. 113, 117 (D.D.C. 2005) *subsequently dismissed sub nom. Banks v. Office of Senate Sergeant-At-Arms & Doorkeeper of U.S. Senate*, 471 F.3d 1341 (D.C. Cir. 2006).

Finally, the D. C. Circuit Rule is also unhelpful to Defendants who have not to date provided any basis for the Court to find that they "reasonably believed that [their] objections applied[.]" *United States v. Philip Morris Inc.*, 347 F.3d at 954. In fact, Defendants have conceded as much in their eleventh hour "voluntary" withdrawal of a number of their objections. And as pointed out by Plaintiff in opening, and not refuted by Defendants in response, Defendants' counsel who signed and served the objections could not possibly have concluded that the requested documents were objectionable – that the burden was to great or the volume to high – because they have never sought, seen or reviewed the documents their clients are withholding. They cannot represent to the Court whether there are 20 documents or 20,000, let alone establish a "reasonable belief" in the validity of their objections.

Defendants' second response to Plaintiff's Rule 26(b)(5) waiver argument is that the Court's order, which never mentions the novel two-stage objection process, must be read to impliedly include Defendants' two-stage exception. There is no basis for such supposition. And to the knowledge of Plaintiff's counsel, with one of the largest Eastern District of Virginia dockets for nearly a decade, not one Virginia federal court has ever found as Defendants ask. There is no reason for either side to have reached such an

5

assumption. Instead, the Court's standard order imposes the requirements at Rule 26(b)(5), but it certainly is not of necessity bound by them. The Court's authority is far broader. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("Given their heavy case loads, district courts require the effective case management tools provided by Rule 16."). The Court's Order is unambiguous. And it is mutual – Plaintiff had to follow it and did. (And Plaintiff's counsel follows the Order in all cases). Defendants suggest, correctly, that their counsel is experienced and knowledgeable regarding this Court's procedure. This is certainly true. Defendants are very well represented in this case. Their attorneys are amongst the most experienced in this District and Division. And thus, there can be no other explanation for the Defendants' near total noncompliance with the Court's standard order than that Defendants themselves have refused to cooperate with their Virginia attorneys.[1]

Finally, Defendants argue that they have in fact complied with Rule 26(b)(5) and the Court's Order when they provided a general disclaimer in their modest log advising Plaintiff that they were intending to withhold other documents, not specifically listed, until their non-privilege objections were overruled. This statement does not satisfy the

---

[1] If that advise was unconvincing, Defendants could as well obtain comparable advise from the Practising Law Institute:
> First, it is important to determine what, if any, local rules or rules specific to a particular court may apply to privilege logs. Second, reaching an agreement among the parties at an early stage of litigation regarding how they will log documents, including ESI, may prevent disputes later regarding the adequacy of the parties' privilege logs. Third, to the extent that the parties agree to a privilege log protocol, they should seek the court's approval and assistance by incorporating the protocol into a court order, such as a Rule 16 scheduling order, or a protective order.

PROTECTING CONFIDENTIAL LEGAL INFORMATION: A HANDBOOK FOR ANALYZING ISSUES UNDER THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE, 864 PLI/Lit 291, 375.

requirements of the either Rule 26 or the Court's Order, which demands sufficient detail in the log by which to determine the applicability of privilege.

### B. PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE

Defendants' communications and related documents created in furtherance of the misconduct alleged in this case – violation of the Fair Debt Collection Practices Act (FDCPA), tortious abuse of process and fraud (R.I.C.O.) – are not privileged. *Rambus, Inc. v. Infineon Technologies AG,* 222 F.R.D. 280, 287 (E.D.Va. 2004). As explained (and unanswered) in Plaintiff's opening brief, courts have applied this forced waiver of privilege "when the work or communication was made for, or in furtherance of a crime, fraud, "or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re Sealed Case*, 676 F.2d 793, 812 (D.C.Cir.1982); *In re Sealed Case*, 754 F.2d 395, 400 (D.C.Cir.1985); *Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 288-89 (E.D. Va.2004); *Cleveland Hair Clinic, Inc. v. Puig*, 968 F.Supp. 1227, 1241 (N.D.Ill.1996) (holding crime/fraud exception applicable to communications made in furtherance of "bad faith litigation conduct").

Initially, it bears noting that Defendants do not challenge the argument that the requested documents and information bear a close relationship to the conduct and scheme alleged in this case to have violated the FDCPA and been otherwise tortuous.

Instead, Defendants challenge applicability of this exclusion on two grounds. First, they assert that Plaintiff has not made a *prima facie* case because his actual brief did not itself attach the documents, record or evidence (apparently the evidence Plaintiff's would formally introduce at trial) to support the detailed allegations previously presented in his Amended Complaint. However, the relevant facts are not in dispute –

7

Defendants admit them. Its second argument in the present matter – defending its use of the current affidavit language – proves the point. The Amended Complaint is not merely a set of unsubstantiated allegations – Defendants' documents are attached and its PowerPoint presentations and deposition testimony are cited in detail. (These same documents were separately filed under seal across the present case docket. *See e.g* Dkt. Nos. 48, 70, 71, 75 and 94). Some of the claims are simple and the facts supporting same are fully uncontested. For example, Defendants admit that have their debt collection firm in Virginia add a "Summary Screen" exhibit to the previously executed collection affidavits and pass the documents off to consumers and judges as part of the originally executed affidavit. The previously alleged and filed (under seal) PowerPoint presentations brazenly attempt to explain away for the Midland employee affiants the substantive differences between what they are affirming under oath and what the language would otherwise appear to mean when read in its collection context. This when an affidavit says, "I have reviewed all pertinent business records", the internal manual advises the affiant that this really just means, "I have reviewed whatever it is that I have reviewed." A jury could find that such deception violated the FDCPA and formed the foundation of a valid fraud-derived R.I.C.O. claim.

Secondly, Defendants challenge the present argument by defending the technical accuracy of their collection affidavits. In doing so, they concede the facts of the claim – the use of the affidavit process challenged in this case and ignore the multiple other claims established. For example, Paragraph 83 of the Amended Complaint summarizes salient facts established in the later filed Kohls deposition:

The Defendants' affidavit was materially false in all of the ways so far

>alleged. For example and without limitation, the affiant had not reviewed any business or account records; she did not have personal knowledge of the indebtedness or the account; she did not consider any substantive documents; no substantive documents existed; she did and could not check to determine if the Plaintiff had validly disputed the account (he had) and the affiant certainly wouldn't have been competent to ever testify in a court of law that Mr. James was so indebted (or as regards anything else in the affidavit).

Dkt. 43, at 20. All of these facts are pled in the Amended Complaint, in detail, but are as well supported by the deposition transcripts and Encore/Midland documents already filed under seal.

Most surprisingly, Defendants attempt a merits defense of the case, ignoring the "prima facie" threshold's minimal burden, by charting what the defense believes are important differences between the pre-2009 affidavit language and the present affidavit language. Def. Mem. at 14-15. It claims, that presently, the 2010 Form Affidavit states, amongst other things that Kohls made the statements "based upon personal knowledge of those account records maintained on plaintiff's behalf", that she had "access to and have reviewed the records pertaining to the account" and was "familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account." Def. Mem. at 14. In making such argument, Defendants evidence their own lack of appreciation for the exposure they face in this case. Each one of these "new" statements is objectively untrue. Each is unquestionably false. The Amended Complaint alleges such, but does so based entirely upon the actual deposition of Nancy Kohls taken in this case and filed under seal.

Defendants do not contend that such falsehoods fail to state a claim. They do not in their response challenge the viability of the FDCPA claims now asserted, the RICO/Fraud claim or the Abuse of Process allegations. They cannot credibly do so as the

9

Court, having considered the allegations in the Amended Complaint, supported by the documents and testimony now under seal, found the proffered evidence sufficient to state a claim for violation of the FDCPA and for Abuse of Process. Dkt. No. 116. This same conclusion was reached by General District Court Judge Mills after the stipulation and proffer of nearly identical evidence:

> On the counterclaim violation of the Fair Debt Collection Practice Act, I find that it properly establishes the violation. I'll award the statutory damages of $1,000. I do not find any actual damages have been proved. I'll award attorney's fees in that case. On the abuse of process second claim, I do believe it violates 8.01-271. In nine years I don't believe I've ever seen a contested debt buyers case, one on the evidence. Every single time they turn to the defendant, who is unrepresented, that comes before the Court, and they say, "What do you think you owe?" If the person says, "I don't know," or, "Nothing," or, "I owe something but not that amount," the answer is almost always "non-suit." If the person says on a $5,000 claim, $250, the answer is "I'll take a judgment for that." I don't believe that. I believe the word count in an affidavit gives the appearance that the affidavit is true and correct. So, I find abuse of process. I'll award damages on that and attorney's fees.

Exhibit "A", at 29:16-30:11.

## C.   DEFENDANTS HAVE WAIVED PRIVILEGE AS TO THE SUBJECT MATTERS OF (1.) THE CREATION OF THEIR AFFIDAVIT PROCESS; AND (2.) THE GENERATION AND USE OF THE AFFIDAVITS IN COLLECTION LITIGATION.

Plaintiff has sought to discover communications and testimony regarding the creation of the affidavit procedures challenged as unlawful in this case. And he seeks to discover documents and testimony that regard the creation and use of such affidavits by the Virginia collection firms working for Defendants. He has established that significant

documents regarding these subject matters have been disclosed and used by defendants in this case and that these documents would have been otherwise privileged.[2]

Defendants' substantive challenges are limited. First, they do not dispute that the disclosures alleged in Plaintiff's memorandum were intentional. However, they assert that the documents and testimony disclosed do not contain privileged information. Defendants now assert that the various PowerPoint manuals produced in this case were not otherwise protected by privilege, claiming that these documents were simply basic training guides. This however is contrary to the positions taken by Defendants in defending their employee depositions. These PowerPoint manuals were the written summaries of detailed training and supervision sessions in which the Defendants' paralegal affiants were advised as to the meaning – the legal meaning and import – of the affidavit content they were then to affirm under oath. It is clearly legal advice when an attorney advises an affiant what terms like "certify" and "penalty of perjury" mean, or provide legal meaning for terms such as "business records." Defendants agreed with this conclusion up until the time they filed their opposition to this motion.

---

[2] Defendants complain that Plaintiff's brief failed to list the established elements of subject matter waiver reformed within Fed. R. Evid. 502(a). Their complaint is unfounded as Plaintiff's argument was similarly reliant on judicial application of these restated elements. § 2016.6 Privileged Matter—Putting Privileged Material in Issue, 8 Fed. Prac. & Proc. Civ. § 2016.6 (3d ed.) ("Evidence Rule 502—adopted in 2008—is not intended to alter this waiver doctrine in cases where the privilege holder attempts to make affirmative use of some privileged information. Although Rule 502(a) precludes subject–matter waiver in many situations, it does not foreclose arguments that such a waiver should be found because privileged material has been intentionally disclosed and, in fairness, the withheld material should be considered together with that which has been disclosed.")

For example, in the Nancy Kohls deposition, attached as Exhibit "F" to Plaintiff's opening memorandum, the affiant paralegal was questioned about the meaning of various terms in the Defendants' collection affidavit, as discussed in the related PowerPoint presentations. Dkt. No. 94, Exhibit "F", 181:6 -183:18. When details regarding the content of the PowerPoint-summarized training sessions were then questioned, Defendants' counsel objected and asserted both attorney-client and work product privilege objections. *Id*, at 183:19 – 184:12. Now however, Defendants argue that, "The affidavit training presentations did not disclose legal advice." Def. Mem. at 17. Defendants are similarly inconsistent when they attempt to impeach the competence of their in-house attorney, who in her deposition testified without reservation that the Affidavit PowerPoint's reflected and included major components of the Defendants' legal advice and work product presentations. Dkt. No. 94, Rita Melconian Dep. (Exhibit "H") 100:6-101:18, 115:15-116:9; 118:5-120:11. Defendants now assert that the Court should ignore the testimony – under oath – of Ms. Melconian. Def. Mem. at n. 11. Yet, Defendants take an entirely contrary position when defending the attorney-witness' ability and right to assert her own privilege objections in opposition to Plaintiff's Motion for Sanctions. Dkt. No. 108 at 8-9. While Ms. Melconian is apparently unqualified to determine whether the words she spoke to her paralegals constituted privileged information, she was apparently perfectly competent to determine whether the words she spoke at her deposition were privileged. Defendants claim,

> Melconian is an attorney in good standing in California who serves as Senior Compliance Counsel for the Midland Defendants. As such, she is both knowledgeable about the concept of attorney-client privilege and is involved in privileged discussions on a daily basis. […]

> Indeed, these decisions recognize that an attorney deponent is often best situated to know whether the answer to a question will require the disclosure of privileged information.

*Id*. Clearly, the documents and testimony regarding the affidavit process produced to date included substantial information that constituted attorney-client communications and/or work product.

Defendants suggest a tangential argument that draft documents are not subject to privilege waiver merely because the final draft is disclosed. The arguments and decisions offered in support of this position are inapplicable. Defendants do not understand the substance of the cases they offer on this point. Defendants insert this argument within their several arguments challenging the claim that the documents disclosed to trigger waiver were actually privileged in the first place. The "drafts are not disclosed" argument does not fit within that sequence. Instead, the decisions cited address the question of whether or not information is itself classifiable as confidential or privileged in the first place. If the drafts themselves do not provide legal advice, they are not privileged in the first place:

> Other federal courts agree that, as in *Tellier,* where clients engage attorneys for the purpose of preparing documents to "convey information to third parties rather than to provide legal advice for the client's own guidance," such communications and the related underlying details, including all preliminary drafts of documents prepared by counsel and counsel's drafting notes, are not considered confidential and thereby are not privileged. *See, e.g., United States v. (Under Seal),* 748 F.2d 871, 875 n. 7 (4th Cir.1984) (communications intended to facilitate tax attorney's preparation of proposed tax ruling and other documents relating to expected public corporate transactions not confidential and thus unprivileged because public "character" of document); *United States v. Oloyede,* 982 F.2d 133, 141 (4th Cir.1993) (communications to attorney intended for use to file fraudulent citizenship applications to INS not protected as confidential communications).

*Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 84 (W.D.N.Y. 2011).

Defendants' assertion that otherwise privileged drafts of a final disclosed version of a document should remain so ignores the context of this argument. Defendants are confused in asserting an analogy that filing of the final draft of a litigation brief would by Plaintiff's reasoning waive privilege as to all previous drafts. This is not the case of course because the final brief is itself not privileged. There is no waiver. Possibly, the analogy could fit if Plaintiff were arguing that all of the communications and planning documents to establish the challenged affidavit procedure were discoverable merely because an actual affidavit were disclosed. This would fit within the analysis of the respective cases cited by Defendants. But Plaintiff is not arguing that such otherwise privileged communications related to the confidential procedures is discoverable because of the affidavit's disclosure, but rather because the substance of these privileged procedures was already disclosed.

Defendants also defend their waiver of privilege regarding their control and governance of the relationship with Dominion Law Associates ("DLA"), asserting that disclosed provisions of DLA contract are not legal advice related. To make their stand, Defendants characterize the DLA contract as a mere engagement agreement. They inaccurately assert that disclosed portions of the document contain only business relationship details. But the Court can review the actual document. Its conclusion will not differ from that of its Compliance Attorney. Dkt. No. 94, Rita Melconian Dep. (Exhibit "H") at 58:24-59:24; 61:8-22; 61:25-67:6; 68:11-69:23; 71:13-20; 88:3-91:22. The disclosed information details parts of the relationship clearly otherwise privileged as attorney-client communications or work-product. DLA is instructed how to litigate and

14

how to attempt collection. A major portion of the relationship – the attorney-client relationship – is disclosed. Now Plaintiff merely asks to discover the remaining part of that relationship necessary to put the Defendant-friendly part in its honest context.[3]

Defendants next Alamo is an argument that even upon its intentional disclosure of otherwise privileged documents, related subject documents are still not discoverable unless their discovery were also "necessary to ensure a 'fair' trial." Def. Mem. at 22. Plaintiff is unsure where Defendants derive this conclusion, but it is certainly not the law.

Instead, Fed. R. Evid. 502(a) merely requires that the party advocating waiver show that the disclosed documents and the yet undiscovered documents "ought in fairness to be considered together." Plaintiff has met that modest burden. Defendants have produced a carefully redacted and polished set of documents to support its defense that it has not conspired to create deliberately misleading collection affidavits. It has disclosed several PowerPoint presentations that are not merely final drafts of process manuals. They are detailed descriptions and notes of the content of meetings in which attorneys exchanged advice and litigation instructions with one another and the Defendants' paralegals. Defendants acknowledges their intent to favorably use the limited set of documents so far disclosed and states, "[T]his is not a situation where the Midland Defendants will seek to introduce selective drafts into evidence in support of their defense while seeking to exclude other drafts and privileged material surrounding those drafts." Def. Mem. at 22. But the documents at issue are not sought because of

---

[3] Defendants imply that Plaintiff has elected not to present the redacted DLA contract to the Court based upon some strategic purpose. Defendants know this is untrue. Plaintiff has elected not to attempt to file such documents as part of these memoranda because Defendants have labeled – improperly labeled – nearly every page of their production either confidential or attorney-eyes-only confidential. Plaintiff will provide the document to the Court in person and thus avoid another unsupportable motion to seal.

15

their sequence.  They are sought because they provide the only complete and necessary context for the set of documents and testimony already revealed.   Their sequence is immaterial.  Like missing pieces of a jigsaw puzzle, the documents the Defendants' have withheld show a vastly different picture than in their truthful context.  "When a party puts privileged matter in issue as evidence in a case, it thereby waives the privilege as to all related privileged matters on the same subject. As Judge Learned Hand explained with regard to the Fifth Amendment, 'the privilege is to suppress the truth, but that does not mean that it is a privilege to garble it; … it should not furnish one side with what may be false evidence and deprive the other of the means of detecting the imposition.'"  § 2016.6 Privileged Matter—Putting Privileged Material in Issue, 8 Fed. Prac. & Proc. Civ. § 2016.6 (3d ed.).

Lastly, Defendants ask the Court, upon its finding of waiver, to narrowly construe the range of subject matter waiver.  They assert, "Here, the Midland Defendants' discussion of drafts of the training materials with their counsel bears no direct nexus to the wholesale revision of their affidavit process in light of the summary judgment opinion in the *Brent* action."  This as well is untrue.  Plaintiff does not seek a ruling that all privilege is waived in every regard. But certainly with respect to the narrow subject areas outlined herein – the creation of the Defendants' affidavit process and the generation and use of the affidavits in collection litigation In fact, he does not ask for documents or testimony for – there is no basis to draw an arbitrary and irrationally fine line to carve out the context for the subject areas Defendants have otherwise waived.  Defendants will address the jury and assert that their affidavit procedures were derived carefully and thoughtfully, with the objective of meeting the Brent injunction as completely as would

be feasible.  And it will present the testimony and documents that it has crafted to present this alleged façade.  Plaintiff is entitled to present those documents and that testimony in their truthful context.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully moves that the Court grant his motion for relief pursuant to Fed. Rs. Civ. P. 26 and 37.


                Respectfully submitted**,**
                **GILBERT JAMES**


                By:_____/s/_____
                          Of Counsel


LEONARD A. BENNETT, VSB #37523
SUSAN M. ROTKIS, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Tel:     (757) 930-3660
Fax:    (757) 930-3662
E-mail:  lenbennett@cox.net
E-mail:  srotkis@clalegal.com

MATTHEW J. ERAUSQUIN, VSB #65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7770
Fax:    (888) 892-3512
E-mail:  matt@clalegal.com


DALE W. PITTMAN, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A West Tabb Street
Petersburg, VA 23803-3212
Tel:     (804) 861-6000
Fax:    (804) 861-3368

17

E-mail:dale@pittmanlawoffice.com
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

**David Neal Anthony**
**Timothy St. George**
Troutman Sanders LLP
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122
Tel:     804-697-5410
804-698-5118 (fax)
david.anthony@troutmansanders.com

*Counsel for the Defendants*

                                           /s/
                              LEONARD A. BENNETT, VSB #37523
                              CONSUMER LITIGATION ASSOCIATES, P.C.
                              763 J. Clyde Morris Boulevard, Suite 1A
                              Newport News, VA 23601
                              Tel:     (757) 930-3660
                              Fax:    (757) 930-3662
                              E-mail:  lenbennett@cox.net
                              E-mail:  srotkis@clalegal.com