**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| GILBERT JAMES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:11cv221 |
| | ) | |
| ENCORE CAPITAL GROUP, INC., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO TEMPORARILY STAY CERTAIN LIMITED DISCOVERY**

COMES NOW the Plaintiff, Gilbert James, by counsel, and for his Opposition to Defendants' Motion for a Protective Order to Temporarily Stay Certain Limited Discovery, supplies the following memorandum of law.

**INTRODUCTION**

The Defendants' motion can be fairly characterized as a motion seeking the court's seal of approval for Defendant's gross non-compliance with discovery and the court's orders. Defendants have moved the court for a protective order to stay discovery of documents when the court has already overruled their objections and compelled them to produce the documents without limitation. (Order of Jan. 26, 2012)(Docket No. 131). The documents are responses to Plaintiff's Request for Production 9 & 10. Even as their motion is pending, Defendants are withholding the very documents that the court ordered them to produce more than a six weeks ago. (Defs' Mem. at 3)(Docket No. 145). The Defendants attempt to re-convince the court that the documents they are compelled to produce are "overly burdensome," while they admit all the documents they are required to produce are in counsel's possession. *Id.* Without any fanfare,

1

these documents could be burned to disc and turned over to the Plaintiff immediately at Plaintiff's expense. Instead of filing a motion for reconsideration of the court's January 26, 2012, Order, the Defendants have sought transparently to re-litigate this issue by moving for a protective order and stay. The motion should be denied because it is untimely and because the Defendant is in violation of the court's January 26, 2012, Order. *Lugo v. Alvarado*, 819 F.2d 5, 6-7 (1st Cir. 1987)(finding that the filing of the motion to stay took considerable *chutzpah* bordering on bad faith abuse given the movant's conduct in discovery that the remedy of estoppel would be appropriate, especially when the movant had engaged in discovery and acquiesced to the discovery plan).

**ARGUMENT**

While it is true that a Court has broad discretion in granting or denying a motion to stay discovery, "[m]otions for a protective order which seek to prohibit or delay discovery are not favored." *Kron Medical Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988); *see also Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) ("Such motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."). The moving party therefore bears the burden of showing good cause and reasonableness of the protective order or stay of discovery. *Simpson*, 121 F.R.D. at 263. The moving party must show by specific facts that the interests of justice and considerations of prejudice and undue burden to the parties require a protective order and that the benefits of a stay outweigh the costs of delay. *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 638 (M.D.N.C. 1988) In considering the motion, it remains the Court's responsibility to expedite

discovery and minimize delay. *Id.* (citing *Parkway Gallery Furn. v. Kittinger/Pennsylvania*, 116 F.R.D. 363, 365 (M.D.N.C. 1987)).

Additionally, the Court should not stay discovery where the discovery is necessary in defending against the motion. *See Wilderness Soc. v. Griles*, 824 F.2d 4 (D.C. Cir. 1987) (holding that the District Court abused its discretion in granting the Defendants' motion for a protective order permitting them not to respond to the Plaintiffs' interrogatories and document production requests and then ultimately granting summary judgment in favor of the Defendants on the issue for which the discovery was originally sought); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550 (11th Cir. 1985) (explaining that it is abuse of discretion for the court to stay discovery pending a summary judgment motion if the plaintiff has been denied discovery that relates to that summary judgment motion); *Simpson*, 121 F.R.D. at 263. Neither should the court grant the request where resolution of the motion will not dispose of the entire case. *Smith v. Waverly Partners, LLC*, No. 3:10cv28, 2010 WL 3943933, at *1 (W.D.N.C. Oct. 6, 2010) (citing *Simpson*, 121 F.R.D. at 263).

**I.  Defendant's Motion should be denied because it is untimely and seeks to re-litigate issues already decided.**

The standard for granting a protective order is a rigorous one for which the movant bears the burden. *Big Ernie's, Inc. v. United States*, 1:09-CV00122(LO/IDD), 2009 WL 3166839 (E.D. Va. Aug. 13, 2009)(citing *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C.1987) and applying the standard that a "protective order pursuant to Rule 26(c), however, "'should be sparingly used and cautiously granted.'"). Fed. R. Civ. P. 26(c) provides district courts with the authority to enter protective orders for good cause shown, generally to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense." *William Beaumont Hosp. v. Medtronic, Inc.*, No. 09-CV-11941, 2010 WL 2534207 (E.D. Mich. June 18, 2010). Courts have

3

also granted protection of trade secrets, confidential research, development or commercial information. *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991). A court is empowered to grant a protective order, but it should be drawn as narrowly as possible. *Id.* This court has observed that protective orders have overwhelmed the federal courts, causing litigation to be conducted in secret, which is abhorred by the Fourth Circuit and the United States Supreme Court. (Tr. at 143:21-25)(Docket No. 132 & Docket No. 149-2)[1]. The Defendant has failed to meet the stringent standard by failing to offer a cognizable reason that hasn't been decided thus far, failing to timely file its motion and otherwise for concealing its true purpose and engaging in prohibited gamesmanship.

> a. The Defendant seeks re-litigate the Court's January 26, 2012, Order compelling production of documents pursuant to the Plaintiff's Request for Production Nos. 9 & 10.

First, Defendant's motion repeats the exact same type and nature of arguments already addressed at length by the court's decision on Defendants' discovery objections. The court has already heard the argument of the parties as to setting a proper "burden vs. benefit" balance. (Tr. 36:13-49:16)(Docket No. 132 & Docket No. 149-2). The court has already ordered production of the documents responsive to Request for Production 9 & 10 not withstanding the exact same argument that it will take hundreds of thousands of dollars and countless client hours to find and produce the emails from ex-Encore employees containing the word "affidavit." (Tr. 49:12-16)(recognizing that there is a burden associated with the production, but not unduly so.).

The Defendants have the same obligation as all parties to litigation in this court: to proceed without gamesmanship in the conduct of discovery. They must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond.

---

[1] All references to "Tr." are to the transcript of the hearing held on January 23, 2012. The full transcript is attached to Docket No. 149. The entry for the transcript is Docket No. 132. The pages referenced in this pleading are attached as Ex. A.

*Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 220-21 (N.D.W. Va. 2007)(citing *Hansel v. Shell Oil Corp.,* 169 F.R.D. 303, 305 (E.D.Pa.1996)). Gamesmanship to evade answering as required is not allowed. *Id.* The very act of filing this motion is further evidence of Defendants' consistent lack of cooperation in discovery and outright disobedience of the court's order. As the court in *Ayers v. Cont'l Cas. Co.*, explained,

> a party may move the Court for a protective order to avoid "annoyance, embarrassment, oppression, or undue burden or expense." The moving party must certify he has attempted to resolve the dispute without judicial action. *(citation omitted)*. If the Court finds the Motion meritorious, it may order that the party requesting discovery not have the material, have discovery only upon certain terms, have discovery by a different method, have discovery only upon limited matters, have discovery with only certain persons allowed to access the material, have a deposition opened only upon court order, not have a trade secret opened to the public, or that the parties file simultaneous discovery of specified material that only a court order will open. *Id.* The moving party bears the burden of showing good cause why the protective order should be granted. *Lohrenz v. Donnelly,* 187 F.R.D. 1, 3 (D.D.C.1999).

240 F.R.D. at 221. In this case, Defendants have not argued one new reason justifying the protective order it requests other than to re-attempt to persuade the court that it is unduly burdensome to produce documents that it's counsel already has in its possession.

 b. The protective order was not filed at the earliest possible time or within a reasonable time.

Since a protective order must be sought at the "earliest possible time and certainly before the discovery procedure is to occur," it is untimely if it is sought after the discovery responses are due. *Maxey v. Gen. Motors Corp.*, No. 3:95CV6-D-A, 1996 WL 692222 (N.D. Miss. Nov. 18, 1996). In *Maxey*, not only was the motion for a protective order untimely because it was filed after the discovery period ended, the motion referred to documents and evidence that the movant would supplement at a later time. Id. The court found reference to future evidence, facts and legal argument to be an improper attempt to circumvent discovery. *Id.*

Discovery in this case has been ongoing more than ten months, with Defendants vigorously fighting discovery compliance. While there is no rule that sets forth an explicit time in which a motion for protective order must be filed, there are implicit limitations to timely filing and it is within the court's sound discretion to determine if the motion has been timely filed. *Ayers*, 240 F.R.D. at 221 (*citing Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991). A party's otherwise untimely motion may be excused for good cause such as the lack of opportunity to so move. *Ayers,* 240 F.R.D. at 221 (*quoting Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 487 (D.N.J. 1990)). In this case, the Defendants have argued that the protective order should be entered because producing it is unduly burdensome. (Defs' Mem. at 10-12). Not only is the argument without merit because the court has ruled on this issue, it specious since all the documents that the court ordered to be produced without limitation are currently in the possession of counsel. (Defs' Mem. at 8-9).

Defendants also argue that it would be very expensive and time-consuming to produce the documents because all their attorneys still have to sift through the documents. (Defs' Mem. at 12). There is no legitimate burden because not only have the e-mails been produced, they pertained to a small and defined group of people and a single topic, "affidavit." The documents were requested over five months ago, the court ordered production more than five weeks ago, and the order was without limitation. Defendant is attempting to now do what it otherwise could not do, which is to turn back time to allow it to review and censor the documents it should have reviewed prior to objecting to the discovery -- or any time in the five months since discovery was first served. The court has ordered the documents produced without limitation, therefore there is no justification for counsel to expend the complained-about resources to review the documents prior to producing them to the Plaintiff.

6

Since the inception of this case, the Defendant has known every fact upon which it now rests its motion. However, it has not moved for a protective order until the moment of truth – it must produce the documents responsive to Requests Nos. 9&10 or remain in flagrant violation of the court's order.[2] *See, Kolon Indus., Inc. v. E.I. du Pont de Nemours & Co.*, 3:11CV622, 2012 WL 560226, at *10 (E.D. Va. Feb. 21, 2012)(explaining that a recusal motion was untimely when the movant failed earlier to move for recusal despite that it had knowledge of all relevant facts for over a year but did not file a motion until it perceived the risk of an adverse ruling.). The Defendants have stated no legal reason it should be able to continue to withhold the emails it is under compulsion to produce. It has not identified a single document that should be withheld, has not attempted to even provide a privilege log of any kind, let alone with sufficient detail to withstand the rigor of the discovery standard deeming material subject to the privilege. (Tr. 34-49).

Considering all the circumstances facing the parties in this case, there is no doubt that the Defendant has failed to promptly seek the court's protection from production. *Brittain,* 136 F.R.D. at 413 (citing cases). The discovery from which the Defendants seek protection is the very same as that which was compelled pursuant to the hearing on January 23, 2012, when the Defendant was given every opportunity to argue the same position it argues now. (Docket Nos. 131-133; 146-2). Meanwhile, the Defendant has not complied with the court's order, continues to withhold documents, and moves for a protective order when its discovery responses are almost five months over due. (see Docket Nos. 136; 145). While the discovery cut-off has been extended by agreement and order of the court to be March 23, 2012, this case has been vigorously litigated for over ten months, which is far longer than most any other civil matter in

---

[2] Plaintiff is filing this day a renewed motion to overrule Defendant's privilege objections and compel discovery.

7

the Eastern District of Virginia. Having failed to avoid production by delay and withholding documents, the Defendants now move for a protective order that could have been sought months ago when discovery objections were due, when the many meet and confers were taking place, or even near the time that the Plaintiff's Motion to Compel was being argued. *Kolon Indus., Inc.,* 2012 WL 560226, at *10. Despite the court's admonition that Defendant must produce the documents, the Defendant files a motion it knows to be unseasonable. *Brittain*, 136 F.R.D. at 413.

An untimely motion for a protective order is sufficient grounds to deny the motion. *Id. (citing Nestle Foods Corp.,* 129 F.R.D. at 487); *accord Kolon Indus., Inc.,* 2012 WL 560226, at *10. In this case, there are additional factors that militate in favor of denying the motion, including that the Defendants are not in compliance with the court's order compelling production, that they improperly seek a protective order instead of challenging directly the court's ruling on the Plaintiff's motion to compel.

**II. There is no principled reason to stay discovery, even for a limited time, to await the Defendant's heretofore un-filed motion for summary judgment.**

a. The Plaintiff has not objected to the filing of a Motion for Summary Judgment by Defendant, which motion cannot prevail.

The Defendants offer as a reason to stay its court-ordered production that it intends to file a motion for summary judgment, but not before the close of discovery because the Plaintiff would object. (Defs' Mem. at 5). Defendants "stand ready to file their motion for summary judgment shortly after February 17, 2012." (Defs' Mem. at 5). Yet, no motion is filed.[3]

---

[3] Defendants suggest that Plaintiff agree that discovery is complete so that they can file a motion for summary judgment on the "face of the affidavit" used by Midland. Defs' Mem. at 5. Plaintiff welcomes Defendant's Motion for Summary Judgment, which it could have filed at any stage in this litigation on the issues it claims it is entitled to judgment. However, because the

Although it is generally accepted that a motion for summary judgment is premature prior to the close of discovery, it is not a rigid standard. Where a movant has undisputed or undisputable evidence of record that entitles it to summary judgment, a motion for summary judgment may be timely at any time prior to a trial on the merits. *See Ratledge v. Science Appl. Int'l Corp.,* 1:10-CV-239, 2011 WL 652274 (E.D. Va. Feb. 10, 2011)(relying on established summary judgment standards where "[t]he inferences drawn from the underlying facts must be construed in the light most favorable to the nonmoving party" and "Rule 56 mandates that summary judgment be entered against a party 'who fails to make a showing sufficient to establish the existence of an element essential to that party's case.'")(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) and quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). Based on the reasoning in their brief, Defendants could have filed a motion for summary judgment at any time, the denial of which would serve to narrow the chasm between the two sides in their understanding of the case and the possibility of resolving it by compromise. If the Defendants were to file a motion as they suggest, it could not vary from its unsuccessful motion to dismiss that has been already decided in Plaintiff's favor.

The Defendants not only argue, but presume, that its affidavit procedure will be found on summary judgment to be sufficient under the FDCPA and Virginia tort law. Defendants misunderstand not only the allegations against it, but also the state of the law concerning its affidavit procedure. Defendants continue to misguide the court by stating, "[i]n fact, the Midland Defendants revised 'business record' form of affidavit has been repeatedly upheld by courts nationwide." (Defs' Mem. at 2)(citing cases). In fact, no court has found Midland's procedure or so-called business records sufficient to withstand the allegations in this Complaint.

---

Defendant has supplied roughly ten percent of what it has been ordered to produce, the Plaintiff cannot agree that "discovery is complete relating to the face of the affidavit."

Midland's affidavit procedure has not been upheld in any of the cases cited, two of which were decided in the Southern District of Ohio, in from the Northern District of Illinois, and one from the District of Hawaii. None of the cases cited dealt with any material issue raised by the allegations of this Complaint concerning the use of its so-called business record. This exact argument was presented to the court in the January 23, 2012, hearing. (Tr. 26:18-29:5)(Docket Nos. 132; 149-2).

>	MR. LYNCH: I can address that, Judge. One fundamental issue in this case . . . [t]here was an affidavit, and attorneys generals are investigating Midland about the old affidavit . . .
>	THE COURT: And it was drafted by lawyers.
>	MR. LYNCH: It was drafted by lawyers.
>	THE COURT: Inside the house.
>	MR. LYNCH: Drafted by the lawyers inside the house; right?
>	MR. LYNCH: With outside counsel.
>	THE COURT: And it is alleged to be fraudulent.
>	MR. LYNCH: It is alleged to be fraudulent. That almost identical affidavit by – I don't know – four federal courts has been held to be a valid affidavit. His allegations in just saying, oh, I have a RICO case and they didn't file a motion to dismiss is not prima facie evidence of fraud.
>	THE COURT: You know the problem Mr. Lynch, you need to come to the reality that your client has some troubles. All right, Mr. Bennett, he says that all of these affidavits – that this affidavit, the one you are relying on, has been approved as appropriate by four different federal courts; is that right?
>	MR. LYNCH: Judge, just for the record, I'm not saying word for word.
>	THE COURT: No, no. That's what you said.
>	MR. LYNCH: No, Judge.
>	THE COURT: You said this affidavit, and you held it up.
>	MR. LYNCH: No, Judge.
>	THE COURT: Mr. Lynch, do you want to correct it?
>	MR. LYNCH: I do want to correct it.
>	THE COURT: All right.
>	MR. LYNCH: What I'm saying is the substance of this affidavit saying you can have an affidavit with someone that has personal knowledge of business records, not of the debt, of business records, and I've got four cases right here in front of me and I can hand up to the Court, and I'm not saying the affidavits are word for word the same. They're not.
>	MR. BENNETT: They're not Midland affidavits.
>	MR. LYNCH: They're not Midland affidavits.

10

>MR. BENNETT: He's just arguing that some courts have said that business record's affidavit can meet certain standards. No court has ever ruled that Midland's affidavit, which varies only slightly from the one that was --
>THE COURT: Excuse me, Mr. Lynch, I understood from your statement that you meant that a court had rule Midland's affidavits were sufficient. So from now on, please choose your words carefully.
>MR. LYNCH: Okay, Judge, and I did not mean to indicate that.
>THE COURT: But you did indicate that whether you intended or not.
>MR. LYNCH: I apologize.
>THE COURT: I don't think you would misrepresent anything to the Court, but I'm telling you, I pay attention to what you all say and rely on it.

If, in fact, the Defendants relied on the decisions in these cases to craft its procedure for creating the fraudulent affidavits it now uses, then the Plaintiff is entitled to those documents which may be found in response to Requests 9 & 10.

The state of the law is that courts have held that the employee of an assignee of a debt does not have the personal knowledge necessary to testify about events or documents pertaining to the original creditor. *Martinez v. Midland Credit Management*, 250 S.W.2d 481 (Tex. Ct. App. 2008); *Asset Acceptance v. Lodge*, 325 S.W.3d 525 (Mo. App. 2010); *Armstrong v. State*, 42 So.3d 315 (Fla. 2d D.C.A. 2010)(*citing Medlock v. State*, 537 So.2d 1030 (Fla. 2d D.C.A. 1988) for the holding that the account owner who downloaded and printed records from a bank cannot establish a foundation for admissibility of credit card transactions). This court has held that for a witness to be qualified, the witness must "have sufficient knowledge of the record-keeping system and the creation of the contested record to establish their trustworthiness." *Rambus v. Infineon Tech. AG*, 348 F.Supp.2d 698, 702-02 (E.D.Va. 2004).

The allegations and the evidence so far in this case demonstrates that the Defendants' continued reliance on the cases it cites is contrary to the law of this district, circuit and the court's own admonition. *See, e.g. United States v. Hernandez*, 1998 WL 841504, at *2 (4th Cir. 1998)(unpublished)(finding that a witness was not qualified because he failed to establish that he

was familiar with the creation and maintenance of records about which he testified); *United States v. Jacobs*, 1995 WL 434827, at *1-2 (4th Cir. 1995)(finding a record was inadmissible because the witness "did not testify that he was familiar with the creation and maintenance of the records). The Fourth Circuit has held the term "qualified witness" should be interpreted broadly and only requires an individual "who understands the system used to record and maintain the information . . . someone with knowledge of the procedure governing the creation and maintenance of the type of record to be admitted." *United States v. Sofidiya*, 1998 WL 743597, at *3 (4th Cir. 1998). Even under the broad standard allowed in the Fourth Circuit, the affiants have no knowledge of any business record because (1) the Defendants provide no business records to their affiants, let alone enough information for the affiant to attest to its creation or maintenance; (2) the affiant attests to knowledge of an idiosyncratic definition of business record not recognized by any court; (3) the affiant attests to personal knowledge of a document that they have never seen but is produced and attached by the local debt collection law firms and filed in court to collect a judgment. The allegations of the Complaint are that the affidavit is fraudulent, that the affiant's statement that she reviewed the relevant business records and attached the relevant documents for submission to the court is untruthful. Furthermore, and also dispositive, is that the affidavit is not created in normal course of business nor does is rely on documents created in the normal course of business. The validation screen used by the affiant and labeled "business record" is created for one purpose only: to prepare for litigation. There is no case that stands for the proposition that a fraudulent affidavit prepared for the purpose of litigation and submitted to a court is proper. *See, Palmer v. Hoffman*, 318 U.S. 109, 114 (1943).

      b.      Bifurcation of discovery makes no sense at this late stage of litigation.

Defendants propose to bifurcate discovery by staying electronic discovery while dispositive motions are being decided. In addition to all the reasons already discussed herein, bifurcation at this point in the litigation makes no sense except to deviate from the path this litigation has taken, the significant expenditure of resources by the parties and the court thus far. Defendants fully engaged in the Rule 16(b) and 26(f) process, have litigated vigorously their strategy of refusal to supply documents and answers in discovery. Most timing issues thus far have largely been achieved through collaboration. Plaintiff has acted in good faith and developed his strategy based on the tack this litigation has taken according to the rules and rulings of the court. Not one of the cases cited by the Defendant justifies a stay at this late stage of litigation based on facts such as these, especially where the Defendant is long overdue for producing documents it was compelled by the court to produce. In fact, the only Fourth Circuit case cited by the Defendants found a court properly exercised discretion to stay discovery while a Rule 12(b)(1) motion was pending. *Thigpen v. United States*, 800 F.2d 393, 396-97 (4th Cir. 1986). A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and would be dispositive of the entire case. That is certainly not the circumstance here, where there is virtually no chance the Defendants will prevail on a motion for partial summary judgment as they have described it.

    c.    It is immaterial to the Plaintiff that the Defendant has all the discovery it thinks it needs to support its motion for summary judgment.

The Defendant argues that it may continue to withhold the documents it has been ordered to produce because they are not necessary to support its motion for partial summary judgment on the Plaintiff's claims that rely on an allegation of fraudulent affidavit. First, there is no motion for summary judgment pending despite the fact that Defendant represented it would be filed soon after this motion was filed on February 16, 2012. (Defs' Mem. at 3). It is temporally out of

13

order for the court to stay production of discovery it has already ordered based on a promise of a forthcoming motion – a motion destined to fail.

Plaintiff is also entitled to move for summary judgment, but has been impaired in by the very stonewalling that Defendant seeks to have the court approve by granting a stay of discovery. Plaintiff has litigated the discovery disputes in good faith, has withdrawn discovery requests and agreed to limitations on others. Contemporaneously with the filing of this response, the Plaintiff is filing his Motion to Overrule Defendants' Privilege Objections and to Compel. The documents that the Defendants currently improperly withhold in contravention of the court's order contain e-mails that could lead to the discovery of admissible evidence that describe the actual process for generation of litigation affidavits. At a minimum, the information could bear on the Plaintiff's (1) abuse of process claim, where e-mails may prove the ulterior purpose of its process; (2) demand for non-economic and punitive damages by demonstrating that the Defendant intended to act as alleged in the Complaint; (3) demand for statutory damages, albeit modestly, by showing the Defendants' level of intent as a determinative factor in assessing the amount of statutory damages under the FDCPA.

    d.    Defendants' motion misconstrues the allegations of the Complaint, the nature of the allegations concerning the affidavit, and the Plaintiff's allegation of damages.

Defendants argue that the Plaintiff has stipulated his damages do not exceed $20,000.00. (Defs' Mem. at 13). To be clear, the Plaintiff has suggested that economic damages may not exceed $20,000.00. However, only a jury can determine the amount of non-economic and punitive damages to award. Plaintiff may present evidence both of non-economic and punitive damages at trial. The Defendant knows this well, for instance, in one recent case a jury returned a verdict against Midland in favor of a consumer for $100,000.00 in actual damages and

14

$623,180.00 in punitive damages on a claim for violation of the fair credit reporting act. *Brim v. Midland*, No. 5:10CV369-IPJ (N.D. Ala. Feb. 25, 2011).

The sought-after documents are reasonably likely to contain information that will lead to the discovery of admissible evidence of the Defendants' level of intent that goes to the measure of damages on each of Plaintiff's claims. Whether the court is considering revisiting the balance between the amount in controversy and the cost to produce the documents it has already ordered, it would be more accurate to consider the actual amount in controversy in this case.

## CONCLUSION

For all the reasons the Plaintiff has argued herein, the Plaintiff respectfully requests that the court deny Defendants' motion in its entirety.

                Respectfully submitted**,**
                **GILBERT JAMES**

                By:_____/s/_____
                              Of Counsel

Susan M. Rotkis, VSB#40693
Leonard A. Bennett, VSB #37523
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Tel:    (757) 930-3660
Fax:   (757) 930-3662
lenbennett@cox.net
srotkis@clalegal.com

Matthew J. Erausquin, VSB #65434
*Counsel for the Plaintiff*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:   (888) 892-3512
matt@clalegal.com

Dale W. Pittman, VSB#15673
*Counsel for the Plaintiff*
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A West Tabb Street
Petersburg, VA 23803-3212
Tel:     (804) 861-6000
Fax:    (804) 861-3368
dale@pittmanlawoffice.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 7th day of March, 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John C. Lynch
Troutman Sanders LLP
222 Central Park Ave, Suite 2000
Virginia Beach, VA 23462
Tel: 757-687-7765
Fax: 757-687-1504
john.lynch@troutmansanders.com

David N. Anthony
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23218-1122
Tel: 804-697-5410
Fax: 804-698-5118
david.anthony@troutmansanders.com

Timothy J. St. George
Troutman Sanders LLP
1001 Haxall Point
Richmond, VA 23218-1122
Tel: 804-697-5410
Fax: 804-698-5118
tim.stgeorge@troutmansanders.com

*Counsel for the Defendants*

               /s/
              Susan M. Rotkis, VSB #40693
              *Counsel for the Plaintiff*
              CONSUMER LITIGATION ASSOCIATES, P.C.
              763 J Clyde Morris Boulevard, Suite 1-A
              Newport News, VA 23601
              Tel: (757) 930-3660
              Fax: (757) 930-3662