**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**GILBERT JAMES,**

    **Plaintiff,**

v.                                                    **Civil Action No. 3:11cv00221**

**ENCORE CAPITAL GROUP, INC.,** *et al.*

    **Defendants.**

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR A
PROTECTIVE ORDER TO TEMPORARILY STAY CERTAIN LIMITED DISCOVERY**

Defendants, Encore Capital Group, Inc., Midland Funding, LLC, and Midland Credit Management, Inc. (collectively, the "Midland Defendants"), by counsel, submit the following reply memorandum in support of their Motion for a Protective Order to Temporarily Stay Certain Limited Discovery. (Dkt. No. 144).

### INTRODUCTION

At no point in Plaintiff's brief does he address the commonsense nature of the proposal advanced by the Midland Defendants, which, as set forth in their opening brief, has been embraced by numerous courts. Simply put, this action can be entirely resolved via a dispositive motion *even without* the Midland Defendants challenging Plaintiff's own asserted bases for the relevance of the over 71,000 documents implicated by his Request Nos. 9 and 10.[1] The review of such documents should, therefore, be stayed until that pending dispositive motion is resolved. The compelling nature of this proposal has particular force here, where Plaintiff has admitted that he has no damages as a result of the challenged affidavit, which he never even read prior to

---

[1] The Motion for Summary Judgment referenced in the Midland Defendant's initial brief has now been filed. (Dkt. No. 161). As represented in that brief, that motion does not seek the dismissal of Plaintiff's claims by reference to his asserted bases for the relevance of Request Nos. 9 and 10.

the filing of this action. Yet, Plaintiff seeks to compel extensive electronic discovery relative to his affidavit-related claims, the cost of which easily dwarfs the Midland Defendants' potential exposure to those claims.

Instead of addressing the substance of this proposal, Plaintiff spends virtually the entirety of his brief challenging the "timeliness" of the motion and the merits of the Midland Defendants' Motion for Summary Judgment. (Dkt. No 160). The well-documented merits of the Motion for Summary Judgment, which should serve to end this case, are evident. Plaintiff is, of course, free to oppose that motion in a responsive pleading, but not to assert his allegations as a non-*sequitur* to the arguments advanced by the Midland Defendants in this motion. Moreover, the undisputed facts before the Court, as set forth in the full chronology below, make plain that the Midland Defendants have moved with great speed in seeking this protective order, and that Plaintiff, if anyone, is the party who has delayed its resolution. Additionally, and tellingly, Plaintiff never mentions the asserted bases for the relevance of Requests Nos. 9 and 10 (*i.e.*, the status of the Midland Defendants' as an "enterprise," their "intent," and the existence of a fraudulent "pattern or practice"), which are not challenged in the pending Motion for Summary Judgment. *See id.*

Given the circumstances detailed below, the Court can readily infer the true reason for Plaintiff's unpersuasive opposition to the Midland Defendants' proposal: it will remove the non-merits-based leverage that Plaintiff is hiding behind and has been using to try to force a hefty settlement relative to unfounded claims. This motion should be granted. *See, e.g., Uniloc USA, Inc. v. Sony Corp. of Am.,* No. 6:10-CV-373-CA, 2011 U.S. Dist. LEXIS 54541, at *23 (E.D. Tex. May 20, 2011) (a stay in discovery is appropriate when "Defendants are faced with a Hobson's choice of spending more than the settlement range on discovery, or settling for less than their cost of defending the case, regardless of the merits of the case.").

## PROCEDURAL HISTORY

The Court is likely familiar with certain aspects of the procedural context of this motion. Other aspects, however, which Plaintiff simply fails to mention, require explication in light of Plaintiff's almost total focus in his brief on the "timeliness" of the Midland Defendants' request. To this end, the Midland Defendants set forth the following timeline of relevant events:

- **January 23, 2012**: After Plaintiff waited until late December 2011 to file a motion to compel, and after Plaintiff sought lengthy extensions to file his reply memorandum, the Court schedules a hearing on that motion. At that hearing, Plaintiff withdraws and narrows a number of requests, the Court sustains certain objections to other requests, and the Court indicates that a forthcoming Order will compel the Midland Defendants to produce certain documents, including in response to judicially-narrowed Request Nos. 9 and 10.

- **January 26, 2012**: The Court issues the written Order setting forth the substance of its rulings at the January 23 hearing. (Dkt. No 131).

- **Last week of January-First week of February 2012**: The Midland Defendants actively work with the members of their information technology and law departments, as well as with the information technology department of Troutman Sanders, LLP, in an effort to export for review and production the documents responsive to Request Nos. 9 and 10. This effort, however, is hampered by major technological issues within the Midland Defendants' email servers. The Midland Defendants bring to bear additional resources to try and solve these issues as quickly as possible.

- **February 9-13, 2012**: The Midland Defendants resolve their technological issues, and the relevant electronic data is sent by overnight mail to Troutman Sanders, LLP. Over the weekend, the data is processed by Troutman Sanders, LLP in order to discern the exact amount of electronic data implicated by the requests, and a potential budget and timeframe is developed for the review. This deliberative process reveals that Request Nos. 9 and 10 actually implicate over 71,800 documents-nearly twice the number of documents previously thought to be implicated by these requests, as set forth in the declaration attached to the opposition to the Motion to Compel-at a cost of hundreds of thousands of dollars to host, review, and process that data.

- **February 14-16, 2012**: The Midland Defendants draft and file their Motion for a Protective Oder to Temporarily Stay Certain Limited Discovery. (Dkt. No. 144). The Midland Defendants also set up the review process and begin staffing the review.

- **February 16, 2012**: The Midland Defendants file their Motion for Expedited Briefing on their Motion for a Protective Order. (Dkt. No. 144).

3

- **February 16, 2012**: Counsel for the Midland Defendants requests a conference call with the Court to discuss the expedited resolution of their Motion for a Protective Order. The Court schedules a call to be held on February 21, 2012.

- **February 6-21, 2012**: To provide total transparency to their efforts, the Midland Defendants file frequent status updates with the Court discussing the nature of the technological problems that they were encountering, the resolution of those issues, the amount of data implicated by Plaintiff's requests, and the status of the review. (*See* Dkt. Nos. 136, 142, 148, 150).

- **February 21, 2012**: A conference call is scheduled with the Court to discuss the motions filed by the Midland Defendants. During this conference call, counsel for Plaintiff *opposes* the expedited review of the motion. <u>The Court declines to grant expedited review, but simultaneously directs the parties to "work together" to "limit" the scope of Request Nos. 9 and 10 during the pendency of the motion.</u>

- **February 23, 2012**: In light of the Court's directive during the conference call, counsel for the Midland Defendants sends a letter to counsel for Plaintiff proposing a number of ways that the review of the documents implicated by Request Nos. 9 and 10 could be reasonably limited. See **Exhibit A**. The Midland Defendants also invited an active dialogue on any further ways to streamline the review for speed and efficiency purposes. *Id.*

- **February 23, 2012**: A mere *eight minutes* after receiving the thoughtful proposal of the Midland Defendants, counsel for Plaintiff summarily rejects the Midland Defendants' proposals *en masse* and refuses to offer any counter-proposals. See **Exhibit B**.

- **March 1, 2012**: Plaintiff requests additional time to file his memorandum in opposition to this motion, thereby slowing down the resolution of this motion. Nevertheless, the Midland Defendants agree to accommodate Plaintiff's counsel, and the opposition is filed after the close of business on March 7. (Dkt. No. 154).

- **March 2, 2012**: The parties attend a settlement meeting in Atlanta, Georgia. The Midland Defendants delay the filing of their Motion for Summary Judgment in light of that meeting and the prospects for settlement.

- **March 9, 2012**: The Midland Defendants file their motion for summary judgment by the deadline set forth in the prior Court's Order. *See* Dkt. 119. The motion does not contest any of Plaintiff's asserted bases for the relevance of the information requested under Request Nos. 9 and 10. (*See* Dkt. Nos. 160, 161).

- **February 14, 2012 – present**: The Midland Defendants assemble a team of 15 attorneys to work seven days per week to review the documents implicated by Request Nos. 9 and 10. By the time that the Court considers this motion, Plaintiff will have been provided with the results of the review of over 35,000 documents,

4

totaling hundreds of thousands of pages, as well as a privilege log for all such documents.[2] This process has so far cost approximately $150,000.

With this fully-informed context in mind, the Court should grant the Midland Defendants' reasonable request and reject Plaintiff's arguments.

### ARGUMENT

It is well settled that "discovery is generally considered inappropriate" when a dispositive motion could render such discovery moot. *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004). And, there is no question that the pending motion for summary judgment will potentially resolve all of the matters in dispute without reference to the asserted bases for the expansive discovery requested. Instead of addressing this reality, Plaintiff advances a number of misguided arguments which, if anything, confirm the necessity of the relief requested.

**I.    The Midland Defendants' request was timely.**

Plaintiff acknowledges, as he must, that "there is no rule that sets forth an explicit time in which a motion for protective order must be filed," and that "lack of opportunity to so move," is a valid basis for any purported delay. (Mem. Opp. at 6); *see also* 8A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2040 at 198 (2010) ("Ever since the days of the former equity bill for discovery there has been applied to discovery, 'the principle of judicial parsimony,' by which, when one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided."). Plaintiff asks the Court, however, to deny the motion for the asserted reason that it was not "timely." (Mem. Opp. at 6).

---

[2] Even as of the time Plaintiff filed his opposition to this motion, the Midland Defendants had produced 24,000 emails and attachments totaling over 100,000 pages. This belies Plaintiff's claim that "Even as their motion is pending, Defendants are withholding the very documents that the [C]ourt ordered them to produce more than a [sic] six weeks ago." (Mem. Opp. at 1).]

5

As set forth at length, *supra,* the Midland Defendants moved as quickly as possible to receive a decision on their motion, including seeking expedited briefing and attempting to work with the Plaintiff, as the Court commanded. In fact, it is *Plaintiff* who has steadfastly resisted these efforts at every turn, opposing expedited briefing and seeking an extension of his response time to file an opposition brief. Also, in violation of both the spirit and the letter of the Court's admonishment to them, Plaintiff's counsel refused even to consider the Midland Defendants' multiple, reasonable suggestions for ways to streamline their response to Request Nos. 9 and 10 or to suggest any counterproposals of his own. *See* Ex. A; Ex. B.

Moreover, aside from Plaintiff's machinations to delay the very process he now contends has taken too long, his position that the Midland Defendants' Motion is untimely rests on a flawed understanding of the reasons for the relief requested of the Court. Under established precedent, the Midland Defendants' Motion rests on the balancing of two factors: (1) the burden to respond to Plaintiff's Request Nos. 9 and 10; and (2) the reasonableness of the Midland Defendants' requested relief from that burden, which is a brief stay of discovery until after the Court decides the Midland Defendants' pending Motion for Summary Judgment. *See, e.g., Benge v. Eli Lilly & Co.*, 553 F. Supp. 2d 1049, 1050 (N.D. Ind. 2008). Indeed, the "breadth of the discovery sought and the burden of responding to it" is a critical factor in this analysis. *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 94 Civ. 2120, 1996 U.S. Dist. LEXIS 2684, at *7 (S.D.N.Y. Mar. 7, 1996).

As set forth above, the Motion was filed shortly after the Court's January 26, 2012 Order requiring the Midland Defendants – for the first time – to produce certain documents responsive to those requests. This Order also placed important temporal limitations on Plaintiff's requests

that Plaintiff would not previously agree to.[3] Even before the January 23, 2012 hearing that gave rise to this Order, the parties engaged in many discussions over several weeks in an effort to resolve as many of the discovery disputes as possible. Prior to these discussions, the January 23, 2012 hearing and, finally, the Court's Order, neither the Midland Defendants nor the Court could have adequately judged the relative burden on the Midland Defendants to produce the specific number of documents that were responsive to the Court's Order. Under the circumstances, the Midland Defendants were permitted to seek a protective order after this process. *See Kuhns v. City of Allentown*, 264 F.R.D. 223, 227-28 (E.D. Pa. 2010) (noting that Fed. R. Civ. P. 26(c) carries "a flexible time frame in which to seek a protective order"). Indeed, in *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 414 (M.D.N.C. 1991), cited with favor in Plaintiff's opposition, the court held that a motion for protective order was timely even though it was filed after the filing of a motion to compel because the party seeking the protective order noted its objections in response to the written discovery and attempted to resolve the dispute before the motion to compel was filed.

Simply put, without understanding the full burden that responding to Request Nos. 9 and 10 would entail, the Midland Defendants could not have communicated accurately that burden to the Court in moving for a stay. Once that burden was ascertained, however, the Midland Defendants moved within days for the relief sought herein.

---

[3] In particular, Plaintiff's initial Request Nos. 9 and 10 contained no time limitations whatsoever with respect to documents that were sought on the basis of a single, generic search term relative to custodians that had been employed by the Midland Defendants for a decade or more. At the January 23, 2012 hearing, the Court rejected these requests as propounded, and ordered that the requests be limited to documents that were generated beginning January 1, 2008. This fact also discredits Plaintiff's claim that "Defendant is attempting to now do what it otherwise could not do, which is to turn back to allow it to review and censor the documents it should have reviewed prior to objecting to the discovery – or any time in the five months since discovery was first served." (Mem. Opp. at 6). Through this argument, Plaintiff seems simply not to recognize that the Court found Request Nos. 9 and 10, as propounded, to be facially objectionable, and that the Midland Defendants' objections were largely well founded.

Rather than focus on these relevant events, Plaintiff uses as his benchmark the entire period of discovery. This flawed reference point ignores that the Midland Defendants were not required to seek a protective order against discovery requests to which they objected in good faith. *See*, *e.g.*, *Monogram Models v. Industro Motive Corp.*, 492 F.2d 1281, 1287 (6th Cir. 1974) ("If a party feels that interrogatories are objectionable he must *either* state his objections thereto *or* seek a protective order under Rule 26(c).") (emphases added); *Cain v. Liberty Mut. Ins. Co.*, No. 3:10-cv-109, 2011 U.S. Dist. LEXIS 51741, at *9 (N.D.W. Va. May 13, 2011) ("If Liberty Mutual believed the discovery requests to be objectionable, it had one of two options available: move for a protective order from the Court or provide timely specific and articulate objections to such requests"). Only after numerous efforts to resolve the dispute between the parties, a hearing before the Court, and an Order settling the dispute and setting parameters for the requests could the Midland Defendants expeditiously articulate the full burden associated with complying with the Court's ruling. Therefore, the Midland Defendants' Motion was in all respects "timely."

## II. The Midland Defendants' Motion does not re-argue any ruling in the Court's January Order on discovery.

Plaintiff also contends that the Midland Defendants' Motion is somehow an attempt to re-litigate the Court's January 26, 2012 Order. (Mem. Opp. at 1). This argument simply ignores the explicit premise for the relief sought – a short stay of discovery while the Court considers the Midland Defendants' Motion for Summary Judgment on issues unrelated to that discovery. The Midland Defendants' request for a stay is thus predicated on the open acknowledgement that the Midland Defendants would be required to produce this additional electronic discovery under the Court's Order unless the Court's ruling on summary judgment renders such additional discovery unnecessary. Any statement to the contrary is simply in error.

8

**III.    Plaintiff fails to address the merits of the Midland Defendants' Motion.**

Plaintiff's invocation of straw man arguments such as that the Midland Defendants acted in an untimely manner or that they now seek to re-litigate settled issues are nothing more than a calculated effort to mask the lack of any substantive rejoinder to the commonsense basis of the Midland Defendants' request for a stay.[4]  This failure to articulate a response on the merits to the Midland Defendants' approach, which is the most efficient avenue to complete discovery for all parties involved, is a tacit acknowledgment that Plaintiff steadfastly refuses to work with the Midland Defendants not on any principled basis, but for the sole purpose of maintaining leverage on the Midland Defendants to settle this action.  This is true in a number of respects.

**A.    The Midland Defendants' Motion presents a reasonable request to stay burdensome discovery that will likely be rendered wholly unnecessary by intervening events.**

As discussed in the Midland Defendants' opening memorandum, a brief stay of discovery relating solely to Plaintiff's Request Nos. 9 and 10 is a narrowly tailored remedy that could ameliorate a tremendous burden on the Midland Defendants to produce over 71,000 documents that, if summary judgment is granted, will be completely unnecessary to the disposition of this action.  Numerous federal courts have determined that such a stay is warranted to reduce such burdens on parties moving for summary judgment, even apart from the notable lack of actual

---

[4] These arguments also include Plaintiff's bizarre attacks on the pending Motion for Summary Judgment, which include the statement that the motion cannot "vary from its unsuccessful motion to dismiss that has been already decided in Plaintiff's favor."  Given the dramatically different standards governing the resolutions of motions under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(c), this statement has no basis in law.  And, even a cursory review of the Motion for Summary Judgment reveals that it also has no basis in fact.  Moreover, although largely irrelevant to this motion, Plaintiff's attempt to somehow distinguish the highly-analogous authority simply by virtue of the fact that those courts did not address a document prepared by the Midland Defendants fails for the reasons set forth in the Motion for Summary Judgment.  *See, e.g., Myers v. Asset Acceptance LLC*, 750 F. Supp. 2d 864 (S.D. Ohio 2010) ("[The affiant] did not state that his affidavit was based on personal knowledge, unlike the affiant in the distinguishable *Midland Funding LLC v. Brent*.  [Instead,] the [supervisor's] affidavit more likely epitomizes that case's recommended affidavit base[d]. . . on the accuracy of the records kept and the accuracy of the data."); *Jenkins v. Centurion Capital Corp.*, 2009 U.S. Dist. LEXIS 98123 (N.D. Ill. Oct. 20, 2009) (affidavit stating affiant keeps accurate records of the debt did not violate FDCPA).

damages present in this case. *See EEOC v. Mass.*, 864 F.2d 933, 936 (1st Cir. 1988) (affirming stay of discovery pending resolution of party's motion for partial summary judgment); *McKenzie v. Raines*, No. 6:11-559-TMC-KFM, 2012 U.S. Dist. LEXIS 2645, at *3, n.3 (D.S.C. Jan. 9, 2012) (approved a stay of discovery pending consideration of a potentially dispositive summary judgment motion due to the "needless expenditure of time, money, and resources"); *Blalock v. Eaker*, No. 5:11cv5-RJC, 2011 U.S. Dist. LEXIS 66301 (W.D.N.C. June 21, 2011) (granting stay of discovery while summary judgment motion was being decided).

In contrast, Plaintiff's pronouncement that the burden of this production is slight because the requests "pertained to a small and defined group of people and a single topic, 'affidavit,'" *see* Mem. Opp. at 6, ignores the sheer number of documents that "single topic" necessarily covers in corporations involved in debt collection and the undisputed burden to the Midland Defendants in complying with Request Nos. 9 and 10. With over 71,000 documents to review, process and produce, the suggestion that responding to Request Nos. 9 and 10 requires scant effort is simply wrong.

**B.      The discovery implicated by the Midland Defendants' instant Motion is not necessary to decide their now-filed Motion for Summary Judgment.**

As the Midland Defendants argued in their opening memorandum, documents responsive to Plaintiff's Request Nos. 9 and 10 are not responsive to the issue of whether the affidavit in question was "fraudulent," the *sine qua non* of each of Plaintiff's affidavit-related claims. However, this is not a situation where the Court must accept the Midland Defendants' reasoning on this issue. Specifically, in seeking to compel such discovery in the first instance, Plaintiff represented to the Court that these requests were targeted at the enterprise, "pattern," and intent elements of his RICO claim:

> This Request is relevant in that the materials requested tend to establish Defendants' systematic conduct during their affidavit process that constitutes a "pattern of racketeering activity" under Plaintiff's civil RICO claim that has been ongoing since at least 2009. Additionally, this Request tends to prove that Defendants operated and managed their "enterprise" in violation of Virginia and federal law.

*See* Plaintiff's Memorandum in Support of his Motion to Compel, at 9, Ex. A (Dkt. No. 99); *see also id.* at 10 (stating that Request No. 10 is related to "the 'enterprise' element of the civil RICO claim" and "Defendants knowledge and approval" of alleged violations of law).

Plaintiff never mentions these asserted bases for the relevance of Requests No. 9 and 10 in his briefing, but he is bound to such statements by which he argued to the Court that the discovery must be compelled. *Francis v. Woody*, 2009 U.S. Dist. LEXIS 43599, at *14 (E.D. Va. May 22, 2009) (a "plaintiff is bound by [his] pleading"). And, the Midland Defendants have not challenged those elements of Plaintiff's RICO claim in their pending motion for summary judgment. The motion should, therefore, be granted.

However, for the very first time in his opposition brief, Plaintiff now presents additional "reasons" why Request Nos. 9 and 10 are relevant. Plaintiff now contends that such documents:

> [C]ould bear on Plaintiff's (1) abuse of process claim, where e-mails may prove the ulterior purpose of its process; (2) demand for non-economic and punitive damages by demonstrating that the Defendant intended to act as alleged in the Complaint; [and] (3) demand for statutory damages, albeit modestly, by showing the Defendants' level of intent as a determinative factor in assessing the amount of statutory damages under the FDCPA.

(Memo. Opp. at 14). Plaintiff also contends that the discovery requested should not be stayed because of the potential for "punitive damages on [his] claim for a violation of the Fair Credit Reporting Act." *Id.* These arguments miss the mark entirely.

As a threshold matter, three of these four rationales address the issue of "damages." Of course, however, if the Midland Defendants' Motion for Summary Judgment is granted, there

11

will be no damages inquiry to speak of. *See, e.g., Doucett v. D.R. Horton, Inc.*, Civ. No. 08-826, 2010 U.S. Dist. LEXIS 25857, at *1-2 (D.N.M. Feb. 16, 2010) ("Because the Court grants Defendant summary judgment on the issue of liability, it finds Horton's second motion . . . addressing damages, to be moot."). That alone requires the rejection of those arguments.

Moreover, Plaintiff's attempt to justify the information sought in Request Nos. 9 and 10 by reference to the potential damages available under the FCRA is entirely misguided, as the information sought under those requests relating to the Midland Defendants' "affidavit" process has no relation *whatsoever* to that FCRA claim. Also, and perhaps most remarkably, Plaintiff now apparently also seeks to impose hundreds of thousands of dollars in discovery costs in an attempt to prove "statutory damages" under the FDCPA, which are capped at a mere $1,000. *See* 15 U.S.C. § 1692k(a)(2)(A). Plaintiff's attempt to justify the expansive discovery at issue by reference to these statutory damages, which are the only damages that he can even plausibly claim in light of his admission that he never even looked at the challenged affidavit prior to his deposition in October 2011, only underscores the propriety of the relief sought by the Midland Defendants. *See, e.g.*, *Johnson v. County of Douglas, Nebraska*, No. 8:09-cv-356, 2011 U.S. Dist. LEXIS 73324, at *3-6 (D. Neb. July 6, 2011) (granting stay of discovery pending of dispositive motion because "the plaintiff would suffer no prejudice by the limited stay as compared to the relatively heavy burden on the defendants").

Additionally, the asserted basis for the relevance of the information sought in Request Nos. 9 and 10 relating to the Midland Defendants' "intent" in filing the affidavit in question has no bearing on the resolution of the Midland Defendants' Motion for Summary Judgment, which does not challenge that aspect of Plaintiff's claims in light of the facial truth of the statements

made in the affidavit.[5]  (*See* Dkt. No. 161); *see also O'Ferral v. Trebol Motors Corp.*, 45 F.3d 561, 563 (1st Cir. 1995) (dismissing RICO claim where Plaintiff failed to identify a "false . . . express statement").

Finally, Plaintiff's stated rationale related to his abuse of process claim – raised for the first time in his opposition – is also flawed.  Plaintiff's own Amended Complaint identifies the Midland Defendants' alleged ulterior purpose as "obtaining a judgment on a debt . . . through the improper use of a false affidavit[.]"  Am. Compl., ¶ 151.  This concession, readily acknowledged by the Midland Defendants, is both binding and fatal to Plaintiff's abuse of process claim.  *See Glidewell v. Murray-Lacy & Co.*, 124 Va. 563, 570, 98 S.E. 665, 668 (1919) ("Regular and legitimate use of process, though with a bad intention, is not malicious abuse of process.").  Thus, there is no dispute on this issue, and Plaintiff cannot rise above the allegations in his Amended Complaint to oppose summary judgment.  *See Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998) ("While notice pleading does not demand that a complaint expound the facts, a plaintiff who does so is bound by such exposition.").  Also, and most fundamentally, if the Court grants summary judgment on the basis that the statements contained on the face of the affidavit were not false, Plaintiff's abuse of process claim, which is predicated on proof of the existence of a "false" affidavit, *see* Am. Compl., ¶ 151, fails regardless of the Midland Defendants' purported "purpose" for filing the affidavit.  Again, in making this argument, Plaintiff simply argues past, instead of arguing against, the compelling reasons in support of the present motion.

---

[5] For this same reason, Plaintiff's newly-stated desire under Request Nos. 9 and 10 to explore the "cases" that the Midland Defendants reviewed in revising their affidavit process, *see* Mem. Opp. at 11, has no relevance to the pending Motion for Summary Judgment.

## CONCLUSION

In short, even Plaintiff recognizes that the tremendously burdensome collection necessary to respond to Request Nos. 9 and 10 is not necessary for Plaintiff to oppose summary judgment on the face of the affidavit. Yet, despite the Court's admonition to "work together" to "limit" the scope of Request Nos. 9 and 10, and the Midland Defendants' good-faith efforts to do so, Plaintiff steadfastly refuses even to consider any accommodation. At bottom, the approach urged by the Midland Defendants will save the time and resources of the parties while returning the focus of the Court to the fundamental merits of this action, and this reasonable approach will not prejudice Plaintiff's position. Hence, the Court should employ "its inherent power to stay discovery," *Farouki v. Petra Int'l, Banking Corp.*, 683 F. Supp. 2d 23, 26 (D.D.C. 2010), pending resolution of the Midland Defendants' Motion for Summary Judgment.

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc., respectfully request that the Court: (1) grant their Motion for a Protective Order to Stay Certain Limited Discovery; and (2) grant the Midland Defendants such further relief that the Court deems appropriate.

        **ENCORE CAPITAL GROUP, INC.,**
        **MIDLAND FUNDING, LLC and**
        **MIDLAND CREDIT MANAGEMENT, INC.**


        By: /s/ Timothy J. St. George
                Of Counsel

David N. Anthony (VSB No. 31696)
Timothy J. St. George (VSB No. 77349)
*Attorneys for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1200
Facsimile:  (804) 698-5118
david.anthony@troutmansanders.com
tim.stgeorge@troutmansanders.com

John C. Lynch (VSB No. 39267)
*Attorney for Encore Capital Group, Inc., Midland Funding, LLC
and Midland Credit Management, Inc.*
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:   (757) 687-1504
john.lynch@troutmansanders.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of March 2012, I filed a true and correct copy of the foregoing on the Court's Electronic Case Filing System, which will send a notice of electronic filing to:

>Leonard A. Bennett, Esq.
>Susan M. Rotkis, Esq.
>CONSUMER LITIGATION ASSOCIATES, P.C.
>763 J. Clyde Morris Blvd, Suite 1A
>Newport News, VA 23601
>Telephone:  (757) 930-3660
>Facsimile:   (757) 930-3662
>Email:  lenbennett@cox.net
>
>Matthew J. Erausquin, Esq.
>CONSUMER LITIGATION ASSOCIATES, P.C.
>1800 Diagonal Road, Suite 600
>Alexandria, VA  22314
>Telephone:  (703) 273-6080
>Facsimile:   (888) 892-3512
>Email:  matt@clalegal.com
>
>Dale W. Pittman, Esq.
>THE LAW OFFICE OF DALE W. PITTMAN, P.C.
>The Eliza Spotswood House
>112-A West Tabb St.
>Petersburg, VA 23803
>Telephone:  (804) 861-6000
>Facsimile:   (804) 861-3362
>dale@pittmanlawoffice.com
>
>*Counsel for Plaintiff*

>/s/Timothy J. St. George
>Timothy J. St. George (VSB Bar No. 77349)
>*Attorney for Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc.*
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>Richmond, Virginia  23219
>Telephone:  (804) 697-1254
>Facsimile:   (804) 698-6013
>tim.stgeorge@troutmansanders.com

2139335v1